**IN THE UNITED STATE DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALLAN BARREDA, and all other Plaintiffs ) | | |
| similarly situated known and unknown, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | Case No. 08-CV-3239 |
| | ) | |
| PROSPECT AIRPORT SERVICES, INC., | ) | Hon. Judge Kennelly |
| | ) | |
| Defendant. | ) | Magistrate Judge Nolan |

**ANSWER TO FIRST AMENDED COMPLAINT AT LAW**

Defendant, PROSPECT AIRPORT SERVICES, INC. ("Prospect" or "Defendant"), by and through Arthur M. Holtzman and Lauren Blair, Pedersen & Houpt, for its Answer to the Amended Complaint at Law as follows:

**NATURE OF ACTION**

1.     This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. §201, et seq. ("FLSA"), the Portal-to-Portal Act, 29 U.S.C. §251 et seq., the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 et seq., ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 et seq. ("IWPCA"), for Defendant's failure to pay minimum, overtime, and other wages due to Plaintiff and other similarly situated employees.

**ANSWER:**     Defendant denies the allegations in paragraph 1 of the Amended Complaint.  Defendant asserts that the claims alleged in the Amended Complaint arise, if at all, out of the collective bargaining agreement entered into on February 13, 2004, between Prospect and District 8 of the International Association of Machinists and Aerospace Workers AFL-CIO ("Union") ("Collective Bargaining Agreement"), and are subject to the terms and provisions thereof, including, but not limited to, the mandatory grievance procedures.  A true and correct

483497

copy of the Collective Bargaining Agreement is attached hereto as Exhibit A.  Further,

Defendant objects to this action being brought as a collective action under §216(b) of the FLSA,

and states that Plaintiff cannot meet the standards to certify a collective action under §216(b) of

the FLSA or a class action under Fed. R. Civ. P. 23.

## JURISDICTION AND VENUE

2.    This court has jurisdiction of this action under the provisions of the FLSA
pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.  This court has supplemental jurisdiction
over the Illinois state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER:**    Defendant denies the allegations in paragraph 2 of the Amended

Complaint.  Defendant asserts that the claims alleged in the Amended Complaint arise, if at all,

out of the Collective Bargaining Agreement, and are subject to the terms thereof, including, but

not limited to, the mandatory grievance procedures.

3.     The unlawful employment practices described herein were committed at
Prospect's locations throughout the United States, including but not limited to O'Hare
International Airport ("O'Hare"), which is located in Chicago, Illinois.  Accordingly, venue in
the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

**ANSWER:**    Defendant denies the allegations in paragraph 3 of the Amended

Complaint.

## PARTIES

4.    Plaintiff resides in and is domiciled within this judicial district.

**ANSWER:**    Defendant lacks sufficient information to admit or deny the allegations in

paragraph 4 of the Amended Complaint.

5.    Plaintiff, and all other unnamed Plaintiffs of the class, known and unknown

(hereinafter referred to as "members of the Plaintiff Class"), are either present or past employees of Defendant who have not been paid and are due wages under the FLSA, Portal-to-Portal Act, IMWL, and IWPCA.

**ANSWER:**    Defendant admits that Plaintiff is a present employee.  Defendant denies

the remaining allegations in paragraph 5 of the Amended Complaint.  Further, Defendant objects

to this action being brought as a collective action under §216(b) of the FLSA, and states that

Plaintiff cannot meet the standards to certify a collective action under §216(b) of the FLSA or a

class action under Fed. R. Civ. P. 23.

6.    Defendant Prospect is an Illinois corporation.  Its corporate headquarters is located in this judicial district.

**ANSWER:**    Defendant admits the allegations in paragraph 6 of the Amended

Complaint.

## FACTUAL ALLEGATIONS

7.     Barreda is currently employed by Defendant. He began working for Prospect on or about July 24, 2007.

**ANSWER:**    Defendant admits that Plaintiff is currently employed by Prospect.

Defendant states affirmatively that Plaintiff's hire date was July 24, 2007, but that his start date

was July 29, 2007.

8.    Prospect currently delivers a variety of services, including but not limited to skycap services, to airlines in thirteen cities and fourteen airports around the United States.

**ANSWER:**    Defendant admits the allegations in paragraph 8 of the Amended

Complaint.

483497                                                 3

9.     Prospect has contracts with Delta Airlines ("Delta") and U.S. Airways to provide skycap services at O'Hare.

**ANSWER:**     Defendant admits the allegations in paragraph 9 of the Amended Complaint.

10.     Plaintiff Barreda works as a skycap at O'Hare. He is paid $4.50 per hour plus tips for work as a Delta skycap. He is paid $5.50 per hour plus tips for work as a U.S. Airways skycap.

**ANSWER:**     Defendant admits that Plaintiff works as a skycap at O'Hare International Airport.  Defendant states affirmatively that Plaintiff's wage is based on the minimum wage for tipped employees which includes wages of $4.50 per hour for work as a Delta skycap, and $5.50 per hour for work as a US Airways skycap.  Defendant states further that truthful and accurate tip reporting is Plaintiff's responsibility.

11.     Defendant employed, and still employs, other employees who perform[ed] the same job duties and responsibilities as Barreda.

**ANSWER:**     Defendant admits that it employs other skycaps, but objects to this action being brought as a collective action under §216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

12.     Many airlines that Prospect provides sky cap services for have instituted a service fee for curbside check-in.

**ANSWER:**     Defendant denies the allegations in paragraph 12 of the Amended Complaint.

13.    Prospect receives a portion of the airlines' curbside check-in fees.

**ANSWER:**    Defendant denies the allegations in paragraph 13 of the Amended

Complaint to the extent it is referring to purported "service fee[s] for curbside check-in" as

alleged in paragraph 12 of the Amended Complaint.


14.    In 2007 U.S. Airways began charging its customers a $2.00 service fee for
curbside check-in. Barreda and other members of the Plaintiff class are required to collect the
service fees and deposit them with the bank located at the airport.

**ANSWER:**    Defendant denies the allegations in paragraph 14 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.


15.    On or about April 15, 2008, Delta began charging its customers a $3.00 service
fee for curbside check-in. Barreda and other members of the Plaintiff Class are required to
collect the service fees and deposit them with the bank located at the airport.

**ANSWER:**    Defendant denies the allegations in paragraph 15 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

16.     Barreda, and other members of the Plaintiff Class, received fewer tips as a result of the airlines' respective service fees.

**ANSWER:**     Defendant denies the allegations in paragraph 16 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

17.     As a result of the policies and practices described above, Barreda and other members of the Plaintiff Class were not paid the applicable State and federal minimum wage for all hours worked while in Defendant's employ.

**ANSWER:**     Defendant denies the allegations in paragraph 17 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

18.     Barreda, and other members of the Plaintiff Class, were directed by Defendant to perform work prior to and after their regularly scheduled shift. For example, Prospect required them to deposit the service fees they collected for the airlines prior to or after their regularly scheduled shift.

**ANSWER:**     Defendant denies the allegations in paragraph 18 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

19.    Defendant refused to compensate Barreda or other members of the Plaintiff Class for any time prior to or following those employees' regularly scheduled shifts, even though Defendants required Barreda and other members of the Plaintiff Class to perform such work.

**ANSWER:**    Defendant denies the allegations in paragraph 19 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

20.    Barreda and other members of the Plaintiff Class are given a thirty (30) minute unpaid meal break each work day.

**ANSWER:**    Defendant denies the allegations in paragraph 20 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

21.    Barreda and other members of the Plaintiff Class regularly work during their unpaid meal break.

**ANSWER:**    Defendant denies the allegations in paragraph 21 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

22.    Prospect is aware of the fact that Barreda and other members of the Plaintiff Class regularly work during their unpaid meal break and allows them to perform such work.

**ANSWER:**    Defendant denies the allegations in paragraph 22 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

23.    Barreda and other members of the Plaintiff Class are not paid for the work performed during their meal break.

**ANSWER:**    Defendant denies the allegations in paragraph 23 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

24.    By refusing to compensate Plaintiff and other members of the Plaintiff Class for all time they were required or allowed to work for Defendant, Prospect failed to compensate Plaintiff and other members of the Plaintiff Class for all time worked, in violation of state and federal law.

**ANSWER:**    Defendant denies the allegations in paragraph 24 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

25.    As a result of the policies and practices of Prospect, described above, Barreda and other members of the Plaintiff Class worked in excess of forty (40) hours per week while in Defendant's employ, and were not paid overtime for portions of that time.

**ANSWER:**    Defendant denies the allegations in paragraph 25 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

26.    Barreda, and other members of the Plaintiff Class, are entitled to have been paid the applicable State and federal minimum wage for all hours worked, and one and one-half times their regular hourly rate for all hours worked in excess of forty (40) per work week (commonly known as "overtime").

**ANSWER:**    Defendant states that Plaintiff is entitled to compensation in accordance

with the terms of the collective bargaining agreement, which is compliant with applicable state

and federal laws.  Further, Defendant objects to this action being brought as a collective action

under §216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a

collective action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

27.    During the course of his employment with Defendant, Barreda, and other members of the Plaintiff Class, were not paid at the minimum wage for all hours worked, nor were they paid at the overtime rate for all hours worked in excess of forty (40) per week.

**ANSWER:**    Defendant denies the allegations in paragraph 27 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

483497                                                    9

28.    Defendant was aware of its obligation to pay employees the minimum wage and overtime pay, and intentionally chose not to pay Barreda or other members of the Plaintiff class accordingly. Defendant acted in bad faith in failing to compensate Barreda and other members of the Plaintiff class for the work they performed.

**ANSWER:**    Defendant denies the allegations in paragraph 28 of the Amended

Complaint.  Defendant states affirmatively that it has acted in good faith to comply with all

applicable state and federal laws  Further, Defendant objects to this action being brought as a

collective action under §216(b) of the FLSA, and states that Plaintiff cannot meet the standards

to certify a collective action under §216(b) of the FLSA or a class action under Fed. R. Civ. P.

23.

## COUNT I

### Violation of the Fair Labor Standards Act, 29 U.S.C. §20 1, et seq.

29.    Paragraphs 1-28 are re-alleged and incorporated as though set forth fully herein.

**ANSWER:**    Defendant's answers and objections to paragraphs 1-28 of the Amended

Complaint are re-alleged and incorporated as though set forth fully herein.

30.    Pursuant to 29 U.S.C. § 216(b), this action may be maintained by the Plaintiff Class, or by anyone for and on behalf of him/herself and other Plaintiffs similarly situated, who has been damaged by Defendant's failure to comply with 29 U.S.C. § 201 et seq. and 29 U.S.C. §251 et seq.  Plaintiff Barreda attaches as Group Exhibit A his Notice of Consent to Become a Party Plaintiff in a Collective Action under the Fair Labor Standards Act.

**ANSWER:**    Defendant denies the allegations in paragraph 30 of the Amended

Complaint.  Defendant asserts that the claims alleged in the Amended Complaint arise, if at all,

out of the collective bargaining agreement, and are subject to the terms of the collective

bargaining agreement between Prospect and the Union, including, but not limited to, the

mandatory grievance procedures.  Further, Defendant objects to this action being brought as a

collective action under §216(b) of the FLSA, and states that Plaintiff cannot meet the standards

to certify a collective action under §216(b) of the FLSA or a class action under Fed. R. Civ. P.

23.

31.    All past and present employees of Defendant employed as skycaps nationwide are similarly situated to the named Plaintiff in that Defendant has applied the compensation policies, which violate the FLSA, on a company-wide basis. All past and present skycaps, including Barreda are or were engaged in job duties and responsibilities integral and indispensable to the operation of Defendant's business, and all have been and/or are presently being denied proper compensation as required by the FLSA.

**ANSWER:**    Defendant denies the allegations in paragraph 31 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

32.    For all members of the Plaintiff Class to become fully aware of their right to join this cause of action, a certain period of time, as determined by this Court, is necessary to send notice to the entire Plaintiff Class, as well as certain additional time for those members to file consent forms with this Court as provided by 29 U.S.C. § 216(b).

**ANSWER:**    Defendant denies the allegations in paragraph 32 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

33.     In order to bring this cause of action, it has been necessary for the named Plaintiff and will become necessary for the other members of the Plaintiff Class, to employ attorneys to secure any judgment due to them with regard to back compensation.

**ANSWER:**     Defendant denies the allegations in paragraph 33 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

34.     At all relevant times, Plaintiff Barreda and all other members of the Plaintiff Class, known and unknown, were "employees" subject to the FLSA, who were not exempt from the maximum hour provisions of the FLSA, 29 U.S.C. § 207, and Defendant was an "employer" subject to the FLSA.

**ANSWER:**     Defendant admits that Plaintiff is an employee who is not exempt from the

provisions of the FLSA, and that Defendant is an "employer" as defined by the FLSA.

Defendant denies the remaining allegations in paragraph 34 of the Amended Complaint.  Further,

Defendant objects to this action being brought as a collective action under §216(b) of the FLSA,

and states that Plaintiff cannot meet the standards to certify a collective action under §216(b) of

the FLSA or a class action under Fed. R. Civ. P. 23.

35.     Pursuant to 29 U.S.C. § 207, for all weeks during which Plaintiff Barreda and all other members of the Plaintiff Class, known and unknown, worked in excess of forty (40) hours, they were entitled to be compensated at a rate of one and one-half times their normal hourly rate of pay.

**ANSWER:**     Defendant states that Plaintiff is entitled to compensation in accordance

with the terms of the collective bargaining agreement, which is compliant with standards set

forth in 29 U.S.C. §207.  Further, Defendant objects to this action being brought as a collective

action under §216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a

collective action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.


36.      Pursuant to 29 U.S.C. § 206, Plaintiff Barreda and all other members of the
Plaintiff Class, known and unknown, were entitled to receive at least the applicable federal
minimum wage rate for all hours worked.

**ANSWER:**      Defendant states that Plaintiff was entitled to receive the minimum tipped

wage for all hours worked.  Further, Defendant objects to this action being brought as a

collective action under §216(b) of the FLSA, and states that Plaintiff cannot meet the standards

to certify a collective action under §216(b) of the FLSA or a class action under Fed. R. Civ. P.

23.


37.      Defendant's failure to pay compensation to Plaintiff Barreda and all other
members of the Plaintiff Class, known and unknown, at the applicable federal minimum wage
rate is a violation of the FLSA.

**ANSWER:**      Defendant denies the allegations in paragraph 37 of the Amended

Complaint.  Further, Defendant objects to this action being brought as a collective action under

§216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective

action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.


38.      Defendant knew its obligations under the FLSA, but deliberately chose not to
heed them. Thus, Defendant's failure to pay minimum wages and overtime is a willful violation
of the FLSA.

**ANSWER:**      Defendant denies the allegations in paragraph 38 of the Amended

Complaint.

39.     As a direct and proximate result thereof, there is due to Barreda and other members of the Plaintiff Class back wages and liquidated damages, pursuant to the FLSA.

**ANSWER:**     Defendant denies the allegations in paragraph 39 of the Amended Complaint.  Further, Defendant objects to this action being brought as a collective action under §216(b) of the FLSA, and states that Plaintiff cannot meet the standards to certify a collective action under §216(b) of the FLSA or a class action under Fed. R. Civ. P. 23.

## COUNT II

**Violation of the Illinois Minimum Wage Law, 820 111. Comp. Stat. 105/1 et seq.**

40.     Paragraphs 1-39 are re-alleged and incorporated as though set forth fully herein.

**ANSWER:**     Defendant's answers and objections to paragraphs 1-39 of the Amended Complaint are re-alleged and incorporated as though set forth fully herein.

41.     The matters set forth in this Count arise from Defendant's violations of the minimum wage, 820 Ill. Comp. Stat. 105/4, and overtime compensation provisions of the IMWL, 820 Ill. Comp. Stat. 105/4(a).

**ANSWER:**     Defendant denies the allegations in paragraph 41 of the Amended Complaint.  Defendant asserts that the claims alleged in the Amended Complaint arise, if at all, out of the Collective Bargaining Agreement, and are subject to the terms and provisions thereof, including, but not limited to, the mandatory grievance procedures.  A true and correct copy of the Collective Bargaining Agreement is attached hereto as Exhibit A.

483497                                          14

42.     Barreda was an employee of Prospect who has not been paid minimum and overtime wages under the IMWL, 820 Ill. Comp. Stat. 105/1 et seq., during his employment with Defendant. Plaintiff brings this action pursuant to 820 Ill. Comp. Stat. 105/12(a).

**ANSWER:**    Defendant admits that Plaintiff attempts to bring this action pursuant to

820 Ill. Comp. Stat. 105/12(a).  Defendant denies the remaining allegations in paragraph 42 of

the Amended Complaint.


43.     At all relevant times herein, Defendant has been an "employer" as defined in the IMWL, 820 Ill. Comp. Stat. 105/3(c).

**ANSWER:**    Defendant admits the allegations in paragraph 43 of the Amended

Complaint.


44.     At all relevant times Barreda was employed by Prospect as an "employee" within the meaning of the IMWL, 820 Ill. Comp. Stat. 105/1 et seq.

**ANSWER:**    Defendant admits the allegations in paragraph 44 of the Amended

Complaint.


45.     Pursuant to 820 Ill. Comp. Stat. 105/4(a), for all weeks during which Barreda worked in excess of forty hours, Barreda is entitled to be compensated at one and one-half times his normal hourly rate of pay for his excess hours.

**ANSWER:**    Defendant states that Plaintiff is entitled to compensation in accordance

with the terms of the collective bargaining agreement, which is compliant with standards set

forth in the IMWL.

46.     Defendant failed to pay overtime wages to Barreda for all hours worked in excess of forty (40) per work week, at the rate of one and one-half times their regular rate of pay.

**ANSWER:**     Defendant denies the allegations in paragraph 46 of the Amended Complaint.

47.     Prospect violated the maximum hours provision of the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/4(a), by refusing to compensate Barreda at one and one-half times his normal hourly rate of pay for all hours worked in excess of forty (40) hours per week.

**ANSWER:**     Defendant denies the allegations in paragraph 47 of the Amended Complaint.

48.     Pursuant to 820 Ill. Comp. Stat. 105/4, Barreda was entitled to be compensated at the applicable State minimum wage rate for all hours worked.

**ANSWER:**     Defendant states that Plaintiff is entitled to compensation in accordance with the terms of the collective bargaining agreement, which is compliant with standards set forth in the IMWL.

49.     Defendants violated the minimum wage provisions of the IMWL by compensating Barreda at a rate of less the applicable State minimum wage.

**ANSWER:**     Defendant denies the allegations in paragraph 49 of the Amended Complaint.

50.     Pursuant to 820 Ill. Comp. Stat. 105/12(a), Barreda is entitled to recover unpaid wages for three years prior to the filing of this suit, plus punitive damages in the amount of two percent (2%) per month of the amount of underpayments.

**ANSWER:**     Defendant denies the allegations in paragraph 50 of the Amended

Complaint.

## COUNT III

**Violation of the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 et seq.**

51.     Paragraphs 1-50 are re-alleged and incorporated as though set forth fully herein.

**ANSWER:**     Defendant's answers and objections to paragraphs 1-50 of the Amended

Complaint are re-alleged and incorporated as though set forth fully herein.

52.     At all relevant times, Defendant was an "employer" as defined in the IWPCA, 820 Ill. Comp. Stat. 115/1 et seq.; and Barreda was an "employee" within the meaning of the IWPCA.

**ANSWER:**     Defendant admits the allegations in paragraph 52 of the Amended

Complaint.

53.     Defendant promised to pay Barreda a certain hourly rate for all hours worked.

**ANSWER:**     Defendant admits the allegations in paragraph 53 of the Amended

Complaint to the extent that Defendant promised to pay in accordance with the Collective

Bargaining Agreement.

483497                                          17

54.    During the course of Barreda's employment, Prospect has not paid Barreda the promised compensation for all of the hours he worked each week.

**ANSWER:**    Defendant denies the allegations in paragraph 54 of the Amended Complaint.

55.    Prospect violated the IWPCA by failing to pay Barreda for all of the hours he worked each week.

**ANSWER:**    Defendant denies the allegations in paragraph 55 of the Amended Complaint.

56.    Prospect requires its skycaps to pay the Company the difference between the amount actually collected and the amount that allegedly should have been collected if it believes a skycap failed to collect the proper amount of curbside check-in fees.

**ANSWER:**    Defendant denies the allegations in paragraph 56 of the Amended Complaint. Defendant states affirmatively that it requires the reimbursement of misappropriated administrative fees and that said requirement does not violate the IWPCA.

57.    On or about July 6, 2008, Barreda was required to pay the Company $30 in allegedly uncollected curbside check-in fees.

**ANSWER:**    Defendant denies the allegations in paragraph 57 of the Amended Complaint. Defendant states affirmatively that Plaintiff was required to reimburse Prospect $30 for misappropriated administrative fees, and that said requirement does not violate the IWPCA.

483497

18

58.      Prospect violated the IWPCA by requiring Barreda to pay the Company for the allegedly uncollected curbside check-in fees.

**ANSWER:**     Defendant denies the allegations in paragraph 58 of the Amended Complaint.

59.      Barreda was damaged by Defendant's violations of the IWPCA.

**ANSWER:**     Defendant denies the allegations in paragraph 59 of the Amended Complaint.

WHEREFORE, Defendant, PROSPECT AIRPORT SERVICES, INC., respectfully requests that this Honorable Court enter judgment in its favor and against Plaintiff, and grant any other and further relief deemed fair and just.

## AFFIRMATIVE DEFENSES

Defendant, PROSPECT AIRPORT SERVICES, INC., ("Prospect" or "Defendant"), by and through its attorneys, hereby asserts the following affirmative defenses to Plaintiff's Amended Complaint:

## FLSA CLAIMS BARRED BY COLLECTIVE BARGAINING AGREEMENT

1.      Plaintiff is a member of a bargaining unit represented by District 8 of the International Association of Machinists and Aerospace Workers AFL-CIO ("Union").

2.      Plaintiff's terms and conditions of employment, including provisions relating to hours of work and overtime pay and wages consistent with and beyond that required by the FLSA, are set out in the collective bargaining agreement entered into on February 13, 2004, between Prospect and District 8 of the International Association of Machinists and Aerospace Workers AFL-CIO ("Union") ("Collective Bargaining Agreement").  A true and correct copy of the Collective Bargaining Agreement is attached hereto as Exhibit A.

483497                                    19

3.     Plaintiff's overtime and wage claims are dependent upon and require interpretation and application of the corresponding provisions of the Collective Bargaining Agreement which also contains a mandatory grievance-arbitration procedure for resolving all issues arising thereunder.

4.     Count I, therefore, is barred by the Collective Bargaining Agreement with respect to his overtime and minimum wage claims.

## STATE CLAIMS PREEMPTED BY COLLECTIVE BARGAINING AGREEMENT

5.     Paragraphs 1 through 4 of the Affirmative Defense are re-alleged and incorporated as though set forth fully herein.

6.     Counts II and III, therefore, are preempted by §301 of the Labor-Management Relations Act, 29 U.S.C. §185(a).

## FAILURE TO EXHAUST REMEDIES

7.     Paragraphs 1 through 4 of the Affirmative Defense are re-alleged and incorporated as though set forth fully herein.

8.     Counts II and III, therefore, are barred because Plaintiff failed to exhaust his contractual remedies under the Collective Bargaining Agreement with respect to his overtime and minimum wage claims.

## GOOD FAITH

9.     Defendant has acted in good faith to comply with all applicable state and federal wage and compensation laws.

483497

20

**DOUBLE RECOVERY PROHIBITED**

10.     Plaintiff may not recover damages for the same time period under both the FLSA and the IMWL, and he should be barred from any such double recovery.

**FAILURE TO STATE A CLAIM FOR COLLECTIVE ACTION OR CLASS ACTION**

11.     Plaintiff has failed to allege facts demonstrating that Defendant implemented a common policy or plan that violated the FLSA, IMWL, or IWPCA.

12.     Plaintiff has failed to allege facts demonstrating that Plaintiff and the other Delta and US Airways skycaps at O'Hare International Airport are similarly situated.

13.     Plaintiff has failed to allege facts demonstrating that numerosity, commonality, typicality of claims and defenses, and adequacy of representation.

14.     Plaintiff's purported collective and/or class allegations, therefore, should be stricken.


                                        Respectfully submitted,
                                        PROSPECT AIRPORT SERVICES, INC.

                              By:     /s/ Lauren Blair
                                        One of Its Attorneys


Arthur M. Holtzman (A.R.D.C. #1252844)
Lauren Blair (A.R.D.C. #6224489)
PEDERSEN & HOUPT
161 North Clark Street
Suite 3100
Chicago, Illinois  60601
(312) 641-6888


483497                                      21

Exhibit A

# AGREEMENT

between

District 8 of the
International Association of Machinists and Aerospace Workers AFL-CIO

-and-

Prospect Airport Services, Inc.

INDEX OF ARTICLES

| ARTICLE | PAGE |
|---------|------|
| PREAMBLE | 2 |
| ARTICLE 1 RECOGNITION | 2 |
| ARTICLE 2 MANAGEMENT | 3 |
| ARTICLE 3 GRIEVANCE PROCEDURE | 3 |
| ARTICLE 4 SENIORITY | 5 |
| ARTICLE 5 BID PROCEDURE | 6 |
| ARTICLE 6 HOURS OF WORK AND OVERTIME | 6 |
| ARTICLE 7 SECURITY OF EQUIPMENT AND INVESTIGATION | 7 |
| ARTICLE 8 UNIFORM SHIRTS | 8 |
| ARTICLE 9 PAID SICK DAYS | 8 |
| ARTICLE 10 VACATIONS | 8 |
| ARTICLE 11 HOLIDAYS | 10 |
| ARTICLE 12 UNIFORMS AND PERSONAL APPEARANCE | 10 |
| ARTICLE 13 SUBCONTRACTING AND DIVERSION OF WORK | 12 |
| ARTICLE 14 JURY DUTY | 13 |
| ARTICLE 15 LEAVE OF ABSENCE | 13 |
| ARTICLE 16 GENERAL MISCELLANEOUS | 14 |
| ARTICLE 17 BEREAVEMENT | 14 |
| ARTICLE 18 WORKMENS COMPENSATION INSURANCE | 15 |
| ARTICLE 19 SOLICITATION AND PARKING OF CARS | 15 |
| ARTICLE 20 DISCRIMINATION | 15 |
| ARTICLE 21 WAGES | 15 |
| ARTICLE 22 NO STRIKES AND NO LOCKOUTS | 16 |
| ARTICLE 23 TERM OF THE AGREEMENT | 16 |
| SIGNATURE PAGE | 17 |
| EXIBIT A | 17 |

## PREAMBLE

This Agreement is made and entered into this Thirteenth day of February, 2004, by and between Prospect Airport Services, Inc., hereinafter referred to as the "Company" and District 8 of the International Association of Machinists and Aerospace Workers, AFL-CIO hereinafter referred to as the "Union".

This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. The parties hereto shall not use any leasing device to a third party to evade this Agreement. The Company shall give notice of the existence of this Agreement to any purchaser, transferee, lessee, assignee, etc., of the operation covered by this Agreement or of any part thereof. Such notice shall be in writing with a copy to the Union at the time the seller, transferee, or lessor executes a contract or transaction as herein described.

## PURPOSE

The purpose of this Agreement is in the mutual interest of the Parties to provide for the operation of services of the Company under methods which will further to the fullest extent possible the efficiency of operation, the continuity of service and the continuation of employment under condition of reasonable hours, proper compensation and reasonable working conditions at O'Hare International Airport, Chicago, Illinois.

## ARTICLE 1 RECOGNITION

The Company recognized the Union as the sole and exclusive collective bargaining agency for all its Employees covered by the Certification of Representative issued by the National Labor Relations Board on March 31, 2000 in Case No. 13-RC-20270

All present Employees who are or become members of the Union shall remain members in good standing as a condition of their employment. All present Employees who are not members of the Union and all Employees hired hereafter shall, on the thirtieth (30th) day following the beginning of their employment or the effective date of this Agreement, whichever is later, become and remain

members in good standing of the Union as a condition of their employment. The Company agrees that when a new Employee is hired, the terms and conditions of this Agreement will be explained to such Employee by a Steward or Business Representative of the Union.

Authorized Representatives of the Union shall have access to the work place at all reasonable times for the purpose of adjusting disputes, investigating working conditions, collecting dues and ascertaining compliance with this Agreement. Union representatives will not conduct business at the curb when there are customers present.

# CHECK-OFF

The Company agrees to deduct from the pay of each Employee who has executed and caused to be delivered to the Company, a signed authorization, a copy of the form of such signed authorization is attached hereto as Exhibit A hereof, the regular monthly dues, the initiation or reinstatement fee as may be established by the Union, if due and owing, which are necessary to keep the Employee as a member in good standing in accordance with the Constitution and bylaws of the Union, as certified in writing to the Company by the Union. Such deductions shall be made from the Employee's pay for the first pay period ending in each month and shall be remitted, to the official of the Union designated by the Union in writing, within approximately ten (10) business days from the date such deductions are made.

# ARTICLE 2 MANAGEMENT

Subject to the provisions of this Agreement, the Company shall have the exclusive right to direct the Employees covered by this Agreement. Among the exclusive rights of management, but not intended as a wholly inclusive list of them, are the rights to plan, direct, and control all operations performed by Sky Caps at O'Hare International Airport for Delta, U.S. Air, and International Carriers, to hire, to transfer, to demote, to promote, to discipline, suspend or discharge for just cause, to relieve Employees from duty because of lack of work or for any other legitimate reason.

# ARTICLE 3 GRIEVANCE PROCEDURE

The Union and the Company agree that there shall be no strike, lockout, tie-up or legal proceedings without first using all possible means of a settlement as provided for in this Agreement, for any controversy that might arise.

All grievances or disputes arising under the terms of this Agreement shall be handled in the manner provided by this Article. In the case of any such grievance or dispute, the Union Steward shall take the matter up with the Company's representative, and every effort shall be made to reach a mutually satisfactory solution. If no solution can be reached, the Union shall take the matter up with the Company in an endeavor to adjust the matter amicably. All grievances must be presented within ten (10) days from the date of the occurrence.

No Employee shall be suspended for more than the balance of the shift, except in case of FAA violations and progressive discipline, and shall return to work on their next regularly scheduled work day and continue to work until such time that the Company and the Union set a hearing date; which shall not exceed ten (10) days from the date of the occurrence unless mutually agreed to by the Company and the Union to extend the time limits (Exclusions from the procedure are: Discharge for just Cause, Security of Equipment, and Uniforms and Personal Appearance Violations.)

If the grievance is not settled in the above Step, the matter shall be discussed between the Union's Business Representative and the Local Manager.

If a grievance cannot be resolved in the above steps, then within thirty (30) calendar days, and in no event later than forty-five (45) days after the date of the occurrence unless otherwise agreed by the Union and the Company, said grievances shall be submitted to a Joint Grievance Committee which shall consist of two (2) Company designated representatives and two (2) Union designated representatives. This Joint Grievance Committee shall consider the grievance and shall render a resolution of said grievance by majority vote which shall be final and binding upon the Employee, the Company and the Union. If the Joint Grievance Committee is deadlocked on the matter of the resolution of the grievance, then either party may invoke the arbitration provision as set forth below.

If the foregoing procedure fails to result in an Agreement on the settlement of the grievance or dispute, then the matter may proceed to arbitration in accordance with the following procedure: the Parties shall meet to select an arbitrator. If they are unable to agree, the parties shall request a list of seven (7) potential arbitrators from Federal Mediation and Conciliation Service. Upon the

receipt of said list the parties shall alternatively strike a name until only one (1) name is left. The fees and expenses of the arbitrator shall be borne equally by the Company and the Union and his/her decision shall be binding on both Parties.

# ARTICLE 4 SENIORITY

For the first ninety (90) days, Employees shall be on probation and the Company may discharge probationary Employees for any reason without recourse to the grievance procedure. Probationary Employees shall be covered by all other terms and conditions of this Agreement.

Seniority shall date from the first day of employment covered by this Agreement. In the event Employees are hired on the same date, their relative position on the seniority list shall be determined by lottery conducted by the job manager and an authorized representative of the Union. The Union acknowledges that it has received, reviewed and accepted the Company's current seniority list.

Full-time and regular part-time Employees seniority shall govern in any type of shift bid. Full-time Company seniority shall govern in all cases of lay-off or recall after lay-off and choice of vacation period.

Employees shall lose all seniority rights under this Agreement in the event they resign, are discharged for cause or fail to report within five (5) days of notification by the Company that work is available (i.e., if a laid off Employee has taken other employment). Offers of temporary employment shall not affect the Employee's seniority status.

The Company shall post a seniority list on January 1ˢᵗ and July 1ˢᵗ of each year, with a copy mailed to the Union.

For purposes of this Agreement, a full-time Employee shall be defined as any Employee who is scheduled to work in excess of thirty-two (32) hours per week and is available to do so fifty-two (52) weeks per year, excluding vacation time, approved sick time, approved personal off time or on approved leave of absence.

A regular part-time Employee shall be defined an any Employee who is available to be scheduled to work in excess of sixteen (16) hours per week and less than thirty-three hours per week and is available to do so fifty-two (52) weeks per year, excluding vacation time, approved sick time, approved personal off time or on approved leave of absence.

# ARTICLE 5 BID PROCEDURE

When permanent vacancies (60 days or more) exist or new positions are created, Employees will be entitled to bid such vacancies and the senior qualified Employee will be awarded the job. Permanent vacancies created by reduction in work shall not be filled, so long as the Company shall not utilize this provision to evade the intent of this Article.

Employees (excluding Captains) promoted to better jobs shall have a probationary period of thirty (30) days on such new jobs and if during such time he does not qualify he shall be returned to his original job without loss of seniority or any other rights.

Shifts and days off shall be bid every three (3) months, on the basis of the Employees' seniority. Bids will be effective on the first Sunday of the month. Bid Sheets will be posted for the purpose of employees to select bid positions every three months. Upon completion of the bid process, the finalized bid sheet will be posted.

All Captain vacancies will be bid on the basis of seniority and relative ability to perform the job. An Employee who bids for a Captain's vacancy and is not awarded the position and has more seniority than the Employee selected shall have the right to file a grievance as outlined in the Grievance Procedure.

Employees returning from prolonged medical leaves will be given senior hours available until the next bid. Work demands and absences of those regularly scheduled Employees may necessitate a temporary reassignment.

# ARTICLE 6 HOURS OF WORK AND OVERTIME

Overtime hours shall be deemed to be any hours worked in excess of forty (40) hours per week for part-time Employees and in excess of eight (8) hours per bid shift for full-time Employees. For employees assigned to work Delta, their eight (8) hours includes a thirty (30) minute paid lunch.

A work week shall be defined as consisting of seven (7) day period commencing at midnight on Sunday and ending at 11:59 p.m. on Saturday.

All work performed in excess of forty (40) hours in one (1) week and eight (8) hours per bid shift shall be paid at the rate of time and one-half (1½).

There shall be no pyramiding of benefits under this Agreement and under no circumstances shall any pay be granted in excess of time and one-half (1½).

An Employee who has completed his regular shift and leaves the job and is recalled to work, and Employees who are called in on either of their regularly scheduled days off shall receive a minimum of four (4) hours work at the applicable rate, to include all Company training programs or any type of meetings.

If an Employee is on a shift and is taking care of a customer, he shall continue to refinish with that customer even if it goes beyond his quitting time. No Employee will have the right to grieve seniority for that incident.

## ARTICLE 7 SECURITY OF EQUIPMENT AND INVESTIGATION

The Union may select and designate such representatives at O'Hare Field as may be necessary for the purpose of representing the Employees under the terms of this Agreement. The Union shall notify the Company in writing of the names of its accredited representatives. The Company shall inform the Union in writing of the supervisors with whom said accredited representatives shall deal and any changes in Personnel thereof. Sky Cap carts, when not in active use, are to be locked up and put in their proper designated area.

Wheelchairs - At no time are wheelchairs to be left unattended in the passenger areas. They are to be secured in the proper designated area. They are not be to stacked. They are not to be used to transport people's luggage.

No equipment of any type is to be taken on the escalator under any circumstances. When someone is on break or lunch it is to be secured in the specified areas. At no time are they to be left in the Gate areas or any other place in the airport other than the specified areas.

| | | |
|---|---|---|
| 1st Offense | - | Verbal Warning |
| 2nd Offense | - | Suspended for the remainder of the day and a letter |
| 3rd Offense | - | A maximum of a five (5) day suspension and a letter |

# ARTICLE 8 UNIFORM SHIRTS

It is agreed that the Company will provide four (4) Prospect Airport Services Logo short sleeve shirts paid for by the Company per year as referenced in Article 12.

# ARTICLE 9 PAID SICK DAYS

It is agreed that each employee shall receive two (2) paid sick days per year at the rate of $5.15 per hour.

# ARTICLE 10 VACATIONS

Every regular full-time and regular part-time Employee who has been continuously in the employ of the Company for a period of one (1) year or more shall be entitled to the following unpaid vacation time:

| | | |
|---|---|---|
| One (1) year employment | - | One (1) week |
| Two (2) years employment | - | Two (2) weeks |
| Five (5) years employment | - | Three (3) weeks |
| Ten (10) years employment | - | Four (4) weeks |

The vacation year shall be from calendar year to succeeding calendar year. Vacation cannot be cumulative or carried over from year to year.

Part-time Employees with one (1), two (2), five (5), ten (10) or more years of continuous service shall receive unpaid vacation time on a pro-rated yearly average basis.

To qualify for an unpaid vacation, an Employee, in addition to having been continuously employed by the Company for one (1), two (2), five (5), or ten (10) years prior to the anniversary date of the year in which the vacation is to be granted, must not have been absent from work during each year for more than thirty (30) days on which he or she was afforded the opportunity to work by the Company, provided that absence caused by legitimate illness, or an accident, shall not be counted.

If an Employee loses less than three (3) calendar months or less than sixty-five (65) working days, (and has returned to work) because of proven illness, accident, or layoff in the twelve (12) months since his last vacation, he or she shall be entitled to a pro-rated share of his or her vacation.

The vacation period shall extend over the entire year. Some time slots may be blocked due to business demands. Employees within a particular classification may select their vacation during the vacation period according to their seniority, provided such selection will not interfere with the efficient operation of the Company's business. Employees will be awarded accrued vacation benefits at time of separation.

Upon permanent layoff, any regular Employee with one (1) or more years of service shall be entitled to unpaid vacation on a pro-rate basis.

No Employee shall have the right to change vacation time once it is scheduled, except in unusual and unforeseen circumstances, and only upon the written approval of management.

Returning servicemen, who would be entitled to receive a vacation under the Soldiers' and Sailors' Relief Act by virtue of this Agreement, shall receive a vacation, as set forth above. The number of days after his return prior to January 1 of the year in which the vacation is to be granted, which a serviceman may have missed from work and still qualify for the vacation shall be apportioned to the time since his return to work. For example, if a serviceman has returned to work six (6) months prior to January 1 of the year in which the vacation is to be granted, he shall not have missed work more than twenty-five (25) days on which work has been made available to him. If he returned three (3) months prior to January 1 of the year in which the vacation is to be granted, he shall not have missed more than twelve (12) days on which work was made available (if a fraction results in any computation of the percentage, the next lower number of days shall be considered).

# ARTICLE 11 HOLIDAYS

The following are considered as holidays:

| | |
|---|---|
| New Year's Day | Independence Day |
| Good Friday | Labor Day |
| Memorial Day | Thanksgiving Day |
| Dr. Martin Luther King's Birthday | Christmas Day |

Employees will work their regular schedule, but for each holiday receive an alternate day off with pay which must be taken within three (3) months of the holiday.

To be eligible for the holiday, an Employee must work at least two (2) of his regularly scheduled shifts, in the calendar week in which the holiday occurs, one of which shall be the day before the holiday if it is scheduled within his work week, unless authorized to have personal time off by management in advance.

The Company shall post a list showing the number of people who will be off on a given holiday. Those interested in getting the day off will sign such a list. If too many Employees request the day off, the Company will assign the people off on a rotational seniority basis by shift, location and previous holidays granted. The notice will be posted seven (7) days prior to the holiday and the list of the people allowed to be off shall be posted at least three (3) days prior to the holiday, except when the Company cannot meet both of these factors.

# ARTICLE 12 UNIFORMS AND PERSONAL APPEARANCE

The Company will pay the total cost of <u>certain parts</u> of the first (1") uniform that consists of and replace the same as follows:

(1)    I.D. - Every year, to be issued by City

(1)    Outdoor Parka - Every two (2) years

(1)    Cap - Every two (2) years

(2)   Ties - Every two (2) years

(1)   Sweater - Every year

(1)   Name Tag - Every four (4) years

(4)   Shirts – Must be of uniform specification and may be purchased from the Company (buy two, get one free). Employees may also purchase their own shirts – the Company will logo them for free.

The Employee shall be required to provide all other parts of their uniform at the Company's cost. Employees will be expected to provide certain non-distinctive elements of their uniform. Any logos or distinctive uniform components that could not be considered ordinary street wear will be provided by the Company.

Each Sky Cap is responsible for the upkeep of his specified uniforms. The uniform must be kept clean and neat, pressed and brushed as necessary, and replaced when it becomes worn to the degree of reflecting a degrading appearance. Any Employee may be disciplined who reports for duty wearing a torn, stained or unsightly uniform. The Company reserves the right to inspect and insist on a uniform that is free and void of rips and tears.

The hair must compliment the wearing of the hat and not present the impression that the hat is too small.

The following uniform components of latest uniform specified are to by maintained by each Sky Cap:

1)   Sky Cap parka – uniform issue.

2)   Shirts, white, 65% polyester, 35% cotton. You are to wear long sleeves or short sleeves as will be designated in advance by posted notice. Sleeves are not to be rolled.

3)   Tie – uniform issue

4)   Name tag – worn on hat – uniform issue

5)   Laminated Airport I.D.

6)   Shoes – all black leather with plain toe – shined

7)   Hat – uniform issue, with inside form inserted

8)   Belt – plain black leather, with plain buckle

9)   Socks – plain, black

10)   Gloves – black leather or wool

11)   Sweater – Black v-neck pullover. This must be worn with your tie and have a company logo on the upper left hand side.

12)    Trousers – Black or uniform specifications

The Employee shall be required to properly maintain and care for their uniform and all component parts thereof. In the event that any part of the uniform and component parts thereof of an Employee need to be replaced prior to the scheduled replacement set forth above, the Employee shall be required to replace the same at the Employee's sole cost and expense.

The uniform requirements for part-time Employees will be at the discretion of management and cost will be absorbed by the Employee.

The new Employee who has not yet received his new uniform will also be the exception to the uniform requirement, but his dress requirements will be exacted by management and he will be expected to conform to that standard as will the part-time Employee.

Losses and repairs are the individuals responsibility and items are expected to be replaced before they are too worn to be used.

Disciplinary action (for not adhering to the dress code):

|  |  |  |
|---|---|---|
| 1st offense | - | Employee suspended from work for the remainder of that day and will receive a written letter |
| 2nd offense | - | Same as first offense |
| 3rd offense | - | Three (3) days suspension and a written letter |
| 4th offense | - | One (1) week suspension and a written letter |
| 5th offense | - | Discipline up to and including discharge |

Employees must punch into and out of work fully dressed.

# ARTICLE 13 SUBCONTRACTING AND DIVERSION OF WORK

For the purpose of preserving work and job opportunities for the Employees covered by this Agreement, the Company agrees that no operation, work or services of any kind, nature or type covered by, or presently performed or hereafter assigned to the collective bargaining unit by the Company will be subcontracted, transferred, leased, diverted, assigned or conveyed in whole or in

part, (hereinafter referred to as "divert" or "subcontract"), by the Company to any other plant, business, person, or non-unit Employees, or to any other mode of operation, unless specifically provided for and permitted by this Agreement.

In addition, the Company agrees that it will not, as hereinafter set forth, subcontract or divert the work presently performed by, or hereafter assigned to, its Employees to other business entities owned and/or controlled by the Company or its parent, subsidiaries or affiliates.

The parties agree that for the purpose of this Article, it shall be presumed that a diversion of work in violation of this Agreement occurs when work presently and regularly performed by, or hereafter assigned to, Employees of the Company has been lost and the lost work is being performed in the same manner by an entity owned and/or controlled by the Company, its parent, or a subsidiary, within sixty (60) days of the loss of the work.

The Company may articulate a legitimate reason for such apparent diversion of work and the burden of proving such reason shall be upon the Employee.

## ARTICLE 14 JURY DUTY

Employees who are required to serve on jury and do so serve shall receive a full week's pay for each week serving. Any payments which the Employee receives for such jury service shall be turned over to the Company.

## ARTICLE 15 LEAVE OF ABSENCE

The Company will abide by the terms of the Selective Service Act of 1948, as amended, with regard to absence for military service.

Leave of absence will be granted by the Company in writing for good and sufficient reason as determined by the Company to Employees who request such leaves of absence in writing. Employees who take gainful employment during such leaves of absence will be discharged and lose all seniority under this Agreement.

When an Employee returns to work after prolonged sickness or injury, the Company reserves the right to get medical clearance from a doctor of the Company's choice where it will endanger the

Employee or others because of physical work duties. This cost shall be borne by the Company and shall be on company time. The Company may require written verification of illness from a physician when the Employee demonstrates a suspicious pattern of absences.

When an Employee is off work due to a prolonged sickness or injury, the Employee must call in on a weekly basis (prior to Thursday), as to his work status for the next work week or provide a doctor's certificate with an expected return to work date on it.

Employees must call in to the Company at least three (3) hours prior to the start of their work shift for any absenteeism.

## ARTICLE 16 GENERAL MISCELLANEOUS

Any Employee leaving the service of the Company will, upon request of the Employee, be furnished with a letter setting forth the individual's dates of service.

If new equipment is put into service by the Company, affected Employees shall be given every opportunity to become familiar with new equipment without change of rate.

All orders, or notices to an Employee under this Agreement, involving a change in assignment, promotion, demotion and furlough shall be given in writing, a copy of which shall be mailed to the Union. When an Employee is suspended or discharged, he shall be provided with a letter setting forth the reason (e.g. violation of company policies) for such suspension or discharge.

Each Employee covered by this Agreement will be furnished with a copy of the Agreement by the Union upon request. All letters of warning or suspension shall be rescinded twelve (12) months from the date of occurrence.

## ARTICLE 17 BEREAVEMENT

Employees will be granted up to a maximum of three (3) consecutive days off for time lost with pay in the event of death in an Employee's immediate family (immediate family shall mean; mother,

Prospect Airport Services - Page 14

father, wife, children, brother, sister, grandchildren, and current mother-in-law and current father-in-law).

## ARTICLE 18 WORKMENS COMPENSATION INSURANCE

The Company shall provide Workmen's Compensation protection for all Employees as required by law.

## ARTICLE 19 SOLICITATION AND PARKING OF CARS

Under no circumstances shall an Employee engage in solicitation, directly or indirectly. No Employee shall ever accept responsibility of any kind for a passenger's automobile. This shall include accepting keys or agreeing to inform others of the whereabouts of the driver while he is away from his car. Any Employee who violates these rules is subject to discharge.

## ARTICLE 20 DISCRIMINATION

The Company will not interfere with, restrain, or coerce the Employees covered by this Agreement because of membership in, or activity on behalf of, the Union. The Company will not discriminate with respect to hire, tenure of employment, or any term or condition of employment against any Employee covered by this Agreement because of membership in, or activity on behalf of the Union. The provisions of the Agreement shall apply to all Employees covered by this Agreement, without discrimination on account of race, color, national origin, sex or creed. Any Employee member of the Union acting in any official Union capacity whatsoever shall not be discriminated against for his acts on behalf of the Union so long as such acts do not interfere with the conduct of the Company's business, nor shall there by any discrimination against any Employee because of Union membership or activities.

## ARTICLE 21 WAGES

In Year 2004
Sky cap Wages: $3.30 per hour.
Captain Wages: $3.45 per hour.

In Year 2005 and in Year 2006
Minimum Tipped Wage
Minimum Tipped Wage plus $ .15

In the event the minimum wage is increased, Prospect Airport Services, Inc. employees covered by this agreement will receive the increase without any further negotiations between the Union and the Company.

Prospect Airport Services - Page 15

## ARTICLE 22 NO STRIKES AND NO LOCKOUTS

The Union will not call or sanction any strike or concerted work stoppage during the term of this Agreement except for the Company's failure to abide by the Arbitration Clause of this Agreement, or the Company's failure to comply with any decision of the (Arbitrator) (Arbitration Board) established hereunder within five (5) working days after such decision.

Should a strike or concerted stoppage of work by Employees of the Company other than those permitted above hereof occur during the term of this Agreement, the Union, within forty-eight (48) hours after receipt of written notice from the Company, shall be obligated to do the following things only:

1. Advise the Company in writing that the strike or stoppage has not been called or sanctioned by the Union.
2. Advise the workers that, inasmuch as no such strike or stoppage has been called or sanctioned by the Union, they are engaged in an illegal strike or stoppage and will instruct the workers to return to work immediately.

The obligation of the Union shall be limited to the performance of the acts required above and upon compliance by the Union with the provisions of this Article of this Agreement, the Union and its officers, agents, and members shall have no further liability during the term of this contract or thereafter, for any damage suffered by the Company arising from or out of any stoppage or strike. The Company will not lock out any or all of its Employees during the term of this Agreement.

## ARTICLE 23 TERM OF THE AGREEMENT

This Agreement shall become effective February 13, 2004 and shall remain in full force and effect through the last day of February 2007. This Agreement shall remain in effect from year to year thereafter unless either party gives written notice to the other party of termination ( and request to negotiate a new agreement) or a desire to modify the Agreement not less than sixty (60) days prior to the last day of February 12, 2007 or the expiration of any subsequent yearly period.

Either party may, within sixty (60) days prior to the expiration date of this Agreement, notify the other party of its desire to reopen this Agreement for the purpose of amending or renegotiating this Agreement.

In witness whereof, the parties hereto have set their hands and seals as of the day and year indicated.

FOR THE UNION:

District Lodge NO. 8
IAM & AW

Karl D. Sarpolis, Jr.
Business Representative
Date: Feb. 26, 2004

FOR THE COMPANY:

Prospect Airport Services, Inc.
2130 South Wolf Road
Des Plaines, IL 60018

Vicki L. Strobel,
President
Date: 2/26/04