**IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALLAN BARREDA, and all other Plaintiffs similarly situated known and unknown, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | Case No. 08-CV-3239 |
| PROSPECT AIRPORT SERVICES, INC., | ) ) | Hon. Judge Kennelly |
| Defendant. | ) | Magistrate Judge Nolan |

**DEFENDANT'S LOCAL RULE 56.1(a)(3) STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE ARE NO GENUINE ISSUES**

Defendant, PROSPECT AIRPORT SERVICES, INC. ("Prospect"), by and through its

attorneys, Arthur Holtzman and Lauren Blair of Pedersen & Houpt, and pursuant to N.D. Ill.

Local Rule 56.1(a)(3), submits this Statement of Material Facts as to which there are no genuine

issues in support of its Motion for Summary Judgment.

**I.     DESCRIPTION OF PARTIES PURSUANT TO LR 56.1(a)(3)(A)**

    **A.     Plaintiff Barreda**

1.     From July 29, 2007 until July 31, 2008, Mr. Allan Barreda, the plaintiff in the

above-captioned case, was employed by Prospect as a skycap at O'Hare International Airport to

service Delta Air Lines ("Delta") and US Airways ("USAir").  (Claypool Declaration, ¶3;

Claypool Supp. Declaration, ¶3.)

2.     During that time, Mr. Barreda was one out of fifteen skycaps that Prospect

employed at O'Hare International Airport to service Delta and/or USAir (collectively referred to

herein as "Skycaps"). Four out of the fifteen Skycaps worked primarily with Delta, three out of

the fifteen Skycaps worked primarily with USAir, and the remaining eight Skycaps, including

Mr. Barreda, worked with both Delta and USAir.  (Claypool Declaration, ¶¶3, 7.)

     3.     USAir recently announced its decision to discontinue its use of skycaps

nationwide.  On July 1, 2008, USAir ceased using skycaps at the U.S. airports that it services,

with the exception of skycaps working out of the Phoenix Sky Harbor and Chicago O'Hare

airports, which were given a 30-day extension to July 31, 2008.  As of July 31, 2008, Mr.

Barreda and the other ten Skycaps who used to service USAir at O'Hare no longer served as

skycaps for USAir.   (Claypool Supp. Declaration, ¶4.)

     4.     In anticipation of USAir's decision to discontinue its use of skycaps, Prospect

offered to skycaps who serviced USAir at O'Hare the following employment options: Delta

skycap and T-5 skycap; USAir baggage handler; USAir baggage runner; Delta and T-5 baggage

handler; wheelchair pusher for terminals 2, 3, and 5; and Delta or American cabin service.

(Claypool Supp. Declaration, ¶5.)

     5.     On or about July 24, 2008, Mr. Barreda notified Prospect that he had elected to

change his position and work as a USAir baggage runner.  As of August 7, 2008, Mr. Barreda is

still working as a Delta skycap due to a shortage of employees as a result of vacations of

qualified personnel.  Mr. Barreda is scheduled to work Delta skycap though August 16, 2008,

after which time he will work as a USAir baggage runner.  (Claypool Supp. Declaration, ¶6.)

     **B.**     **Defendant Prospect**

6.     Prospect is headquartered in Des Plaines, Illinois.  Prospect provides skycap, wheelchair, and other services to airlines and airline passengers at various airports, including O'Hare International Airport.  (Claypool Declaration, ¶2.)

**II.**     **FACTS CONCERNING VENUE AND JURISDICTION PURSUANT TO LR 56.1 (a)(3)(B)**

7.     These facts are in dispute as Prospect maintains that the claims alleged in the First Amended Complaint arise, if at all, out of the collective bargaining agreement entered into on February 13, 2004, between Prospect and District 8 of the International Association of Machinists and Aerospace Workers AFL-CIO ("Union") ("CBA"), and are subject to the terms and provisions thereof, including, but not limited to, the mandatory grievance procedures. (Answer, ¶¶1-3.)

**III.**     **UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

     **A.**     **Skycaps**

8.     As stated above, prior to July 31, 2008, Prospect employed a total of fifteen Skycaps at O'Hare International Airport, including Mr. Allan Barreda.  Four out of the fifteen Skycaps worked primarily with Delta, three out of the fifteen Skycaps worked primarily with USAir, and the remaining eight Skycaps, including Mr. Barreda, worked with both Delta and USAir.  One of the four Skycaps who worked primarily with Delta, Mr. Theodore Pappas, is the Union representative.  (Claypool Declaration, ¶7.)

9.     The Skycaps, including Mr. Barreda, belong to the Union and are subject to the CBA.  (Claypool Declaration, ¶3.)

10.     The CBA, among other things, provides Prospect and the Union's agreement with respect to hours of work and overtime, wages, and mandatory grievance procedures.  (Claypool Declaration, Ex. 3.)

11.     The Skycaps are also subject to Prospect's Job Orientation Guide and Work Rules ("Employee Handbook") that contains the company's policies concerning, among other things, work and overtime hours, break and meal periods, and tip reporting requirements.  (Claypool Declaration, Ex. 1.)

**B.      Hours of Work and Overtime**

12.     Article 6 of the CBA, entitled "Hours of Work and Overtime," states in full:

> Overtime hours shall be deemed to be any hours worked in excess of forty (40) hours per week for part-time Employees and in excess of eight (8) hours per bid shift for full-time Employees.  For employees assigned to work Delta, their eight (8) hours includes a thirty (30) minute paid lunch.

> A work week shall be defined as consisting of seven (7) day period commencing at midnight on Sunday and ending at 11:59 p.m. on Saturday.

> All work performed in excess of forty (40) hours in one (1) week and eight (8) hours per bid shift shall be paid at the rate of time and one-half (1½).

> There shall be no pyramiding of benefits under this Agreement and under no circumstances shall any pay be granted in excess of time and one-half (1½ ).

> An employee who has completed his regular shift and leaves the job and is recalled to work, and Employees who are called in on either of their regularly scheduled days off shall receive a minimum of four (4) hours work at the applicable rate, to include all Company training programs or any type of meetings.

> If an Employee is on shift and is taking care of a customer, he shall continue to refinish with that customer even if it goes beyond his

quitting time.  No employee will have the right to grieve seniority
for that incident.

(Claypool Declaration, ¶11; Ex. 3, Art. 6, pp. 6-7.)

13.    The Employee Handbook contains a section on Overtime that states, in full:

A member of management must authorize all overtime.  Overtime
hours can be mandatory during extreme increases in service
volume and due to the needs of the operation.  Mandatory overtime
will be assigned at the discretion of management.  All hours
worked will be paid.  Hours in excess of 40 per week is considered
overtime which is paid at **one and a half** times your pay rate.

(Claypool Declaration, Ex. 1, §II.7.)

14.    The CBA and the Employee Handbook both provide that all work performed in

excess of forty hours in one week shall be paid at the rate of time and one-half.  (Claypool

Declaration, ¶11.)

15.    From July 29, 2007 until July 31, 2008, the Skycaps had morning and afternoon

shifts.  There are three individual morning shifts (one per skycap) for Delta Skycaps: 4:15 a.m.

to 11:30 a.m.; 4:30 a.m. to 11:45 a.m.; and 5:30 a.m. to 1:30 p.m.  There are three individual

afternoon shifts for Delta Skycaps: 12:00 p.m. to 6:15 p.m.; 12:45 p.m. to 6:15 p.m.; and 1:30

p.m. to 11:30 p.m.  The two individual morning shifts for USAir Skycaps were: 4:00 a.m. to

12:30 p.m.; and 4:30 a.m. to 1:00 p.m., and the two afternoon shifts for USAir Skycaps were:

12:30 p.m. to 9:00 p.m.; and 3:30 p.m. to midnight.  (Claypool Declaration, ¶8.)

C.    **Break/Meal Period Policies**

16.    For Skycaps assigned to Delta, their eight (8) hours includes a thirty (30) minute

*paid* lunch.  (Claypool Declaration, ¶9.)

17.    For Skycaps that used to be assigned to USAir, their shifts of seven and one-half

484395                                    5

hours or more included one half-hour _unpaid_ meal period.  (Claypool Declaration, Ex. 1, §II.2.)

18.     The Employee Handbook addresses breaks and meal period as follows:

> Shift of seven and one-half hours or more include one half-hour
> unpaid meal period.  Operation permitting, paid break(s) are
> offered.  Break/Meal periods must be taken prior to the last
> scheduled hour of a shift.  Work duties take precedence over
> break/meal periods.  All break/meal periods are to be coordinated
> with a representative of the leadership team, as they need to know
> of scheduling problems in order to rectify any concerns.  All time
> worked will be paid.

(Claypool Declaration, Ex. 1, §II.2.)

19.     In November 2004, Prospect implemented a time-card policy to ensure that

employees are taking and recording their break/meal periods accurately.  Prospect's time cards

have a space on them designated "Yes __ Lunch No __" that employees are required to use to

verify whether they received their meal period.  (Claypool Declaration, Exs. 2 and 4.)

20.     Prospect disseminated a written memo, entitled Break/Meal Period Policy to Mr.

Barreda on or about July 19, 2007, clearly stating that employees are responsible for reporting

when they take their meal period or have to work in lieu of a meal period so that all time worked

will be paid.  (Claypool Declaration, ¶¶ 5, 9.)

21.     The Break/Meal Period Policy memo states, in pertinent part:

> To ensure that employees are taking their meal period, there is an
> area on the time card where you place **your initial** (no check mark,
> etc) when you punch-out each work day.  A 30-minute deduction
> will be taken and [it] is therefore mandatory you initial your card
> "Yes" acknowledging receiving your meal period.  Failure to
> initial your time card each workday can lead to disciplinary action.
>
> ***     ***          ***     ***          ***     ***
>
> If for any acceptable/passenger services reason you do not get your
> meal period, initial your timecard "No" and bring to the attention

484395                                    6

> of a member of the leadership team for their signature before you
> leave work.  This action will ensure that all time worked will be
> paid.

(Claypool Declaration, Ex. 2.)

22.     Based on Mr. Barreda's time cards, for every instance in which his time card was

clearly marked "Lunch No" to indicate that he worked a shift without taking a meal period, he

was paid for that time. (Claypool Declaration, ¶10.)

23.     Mr. Barreda's time cards show only two occasions when both "Yes" and "No"

were checked.  In both instances, he was working as a USAir Skycap.  In one instance, both

"Yes" and "No" were checked, but the "Yes" was also circled, so a 30-minute deduction was

taken.  In the other instance, both "Yes" and "No" were checked, but neither entry was circled, so

a 30-minute deduction was _not_ taken.  (Claypool Declaration, Ex. 4.)

### D.     Minimum Tipped Wages and Tip Reporting

24.     Article 21 of the CBA, entitled "Wages," states that skycap wages are the

minimum tipped wage, and provides further that:

> In the event the minimum wage is increased, Prospect Airport
> Services, Inc. employees covered by the agreement will receive the
> increase without any further negotiations between the Union and
> the Company.

(Claypool Declaration, ¶12; Ex. 3, Art. 21, p. 15.)

25.     At the time Mr. Barreda filed his Complaint, Skycaps assigned to Delta earned

$4.50 per hour plus tips, and Skycaps assigned to USAir earned $5.50 per hour plus tips.  (Am.

Complt. ¶10.)

26.     Section II.11. of the Employee Handbook, entitled "Tip Reporting," sets forth

Prospect's policy with regard to tip reporting, and states in full:

> If you are being paid less than $5.50 per hour, ($6.50 effective Jan.
> 2005) your wage is based on the minimum wage for tipped
> employees.  The remainder of your wage is to be made up in tips
> and declared as such by law.  IRS Publication 1244 is available to
> you through the office, which explains the rules and the use of
> Form 4070 and Form 4070A provided to report tips to your
> employer.  We will automatically figure the minimum tip amount
> on your paycheck and make this claim on your behalf unless you
> fill out an alternate amount on a tip report form and submit it to the
> office prior to the last Sunday of the two-week payroll period.  Tip
> reporting is your responsibility.

(Claypool Declaration, ¶13; Ex. 1, §II.11.)

27.     Located directly next to the time-clocks in Prospect's O'Hare offices is a sign

notifying employees that Publication 1244, including Forms 4070 and 4070A, are available.  IRS

Publication 1244 is entitled "Employee's Daily Record of Tips and Report to Employer."

Publication 1244 includes a copy of Form 4070 (Employee's Report to Tips to Employer) and

Form 4070A (Employee's Daily Record of Tips).  (Claypool Declaration, ¶14; Ex. 5.)

28.     Throughout Mr. Barreda's employment with Prospect, he has never submitted a

tip report form or any other evidence of the tips he receives.  (Claypool Declaration, ¶15.)

### E.     Airline-Imposed Curbside Baggage Check Administrative Fee

29.     Sometime in or around July 2007, USAir designated and instituted an

administrative fee for curbside checked baggage.  (Claypool Declaration, ¶16.)  Sometime in or

around April 2008, Delta also designated and instituted an administrative fee for curbside

checked baggage.  (Claypool Declaration, ¶16.)  These airline-imposed administrative fees do

not constitute or represent a tip, gratuity or service charge for Skycaps, and tips are not included

in the administrative fee. (Claypool Declaration, ¶16.)  Skycaps are expected to deposit the

administrative fees with Delta and USAir during their shifts so that all time worked will be paid.

(Claypool Declaration, ¶16.)

30.    Each Skycap is accountable for the administrative fees he collects during his shift.

As set forth in the written Accountability Policy dated August 2007 ("Accountability Policy"),

misappropriated administrative fees must be reimbursed.  (Claypool Declaration, ¶17.)  Mr.

Barreda acknowledged his receipt of the Accountability Policy. (Claypool Declaration, Ex. 6.)

### F.    Grievance Procedures

31.    Article 3 of the CBA, entitled "Grievance Procedure," provides, in part, as

follows:

> The Union and the Company agree that there shall be no strike,
> lockout, tie-up or legal proceedings without first using all possible
> means of a settlement as provided for in this Agreement, for any
> controversy that might arise.
>
> All grievances or disputes arising under the terms of this
> Agreement shall be handled in the manner provided by this Article.
> In the case of any such grievance or dispute, the Union Steward
> shall take the matter up with the Company's representative, and
> every effort shall be made to reach a mutually satisfactory solution.
> If no solution can be reached, the Union shall take the matter up
> with the Company in an endeavor to adjust the matter amicably.
> All grievances must be presented within ten (10) days from the
> date of the occurrence.
>
> ***    ***                    ***    ***
>
> If the grievance is not settled in the above Step, the matter shall be
> discussed between the Union's Business Representative and the
> Local Manager.
>
> If the grievance cannot be resolved in the above steps, then within
> thirty (30) calendar days, and in no event later than forty-five (45)
> days after the date of the occurrence unless otherwise agreed by
> the Union and the Company, said grievance shall be submitted to a
> Joint Grievance Committee which shall consist of two (2)
> Company designated representatives and two (2) Union designated
> representatives.  This Joint Grievance Committee shall consider

the grievance and shall render a resolution of said grievance by majority vote which shall be final and binding upon the Employee, the Company and the Union.  If the Joint Grievance Committee is deadlocked on the matter of the resolution of the grievance, then either party may invoke the arbitration provision as set forth below.

If the foregoing procedure fails to result in an Agreement on the settlement of the grievance or dispute, then the matter may proceed to arbitration in accordance with the following procedure: the Parties shall meet to select an arbitrator.  If they are unable to agree, the parties shall request a list of seven (7) potential arbitrators form Federal Mediation and Conciliation Service.  Upon the receipt of said list the parties shall alternatively strike a name until only one (1) name is left.  The fees and expenses of the arbitrator shall be borne equally by the Company and the Union and his/her decision shall be binding on both parties.

(Claypool Declaration, Ex. 3, Art. 3, pp. 3-5.)

32.     According to the Union representative, although Mr. Barreda is subject to the grievance provisions of the CBA, he has not followed any of the grievance procedures.

(Claypool Declaration, ¶19), (Pappas Declaration, ¶¶5, 7.)

Respectfully submitted,

PROSPECT AIRPORT SERVICES, INC.

By:    /s/ Lauren Blair
       One of Its Attorneys

Arthur M. Holtzman (A.R.D.C. #1252844)
Lauren Blair (A.R.D.C. #6224489)
PEDERSEN & HOUPT
161 North Clark Street
Suite 3100
Chicago, Illinois  60601
(312) 641-6888

# DECLARATION OF

# RONALD E. CLAYPOOL

**IN THE UNITED STATE DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALLAN BARREDA, and all other Plaintiffs similarly situated known and unknown, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | Case No. 08-CV-3239 |
| PROSPECT AIRPORT SERVICES, INC., | ) ) | Hon. Judge Kennelly |
| Defendant. | ) | Magistrate Judge Nolan |

## DECLARATION OF RONALD E. CLAYPOOL

The undersigned, Ronald E. Claypool, declares and states as follows:

1.      I am above the age of 21 years old and under no disability.  If called to a hearing

before the Court, I am capable of competently testifying to the facts stated herein based upon

personal knowledge.

2.      I am the Human Resources Manager for Prospect Airport Services, Inc.

("Prospect"), the named defendant in the above-captioned case.  I have been Prospect's Human

Resources Manager since 1995.  Prospect is headquartered in Des Plaines, Illinois, and I work

primarily out of O'Hare International Airport, in Chicago, Illinois.  Prospect provides skycap,

wheelchair, and other services to airlines and airline passengers at various airports, including

O'Hare International Airport.

3.      Mr. Allan Barreda, the plaintiff in the above-captioned case, is employed by

Prospect as a skycap at O'Hare International Airport.  His start date was July 29, 2007.  Mr.

Barreda is one out of a total of fifteen skycaps that Prospect employs at O'Hare International

Airport to service Delta Air Lines ("Delta") and US Airways ("USAir") (collectively referred to herein as "Skycaps"). The Skycaps are unionized employees belonging to District 8 of the International Association of Machinists and Aerospace Workers AFL-CIO ("Union").

4.      As Prospect's Human Resources Manager, my duties, generally speaking, concern the management and handling of employment-related issues. I am involved in the creation and implementation of Prospect's employment policies and practices, including those concerning hours of work and overtime, break and meal periods, wage compensation, and tip reporting requirements.

5.      I am familiar with Prospect's Job Orientation Guide and Work Rules that was disseminated to Mr. Barreda on or about July 19, 2007 ("Employee Handbook"). Mr. Barreda acknowledged receipt of his copy of the Employee Handbook. A true and correct copy of the Employee Handbook is attached hereto as Exhibit 1. I am familiar with Prospect's break and meal period policy as articulated in Section II.2 of the Employee Handbook, as well as in Prospect's written Break/Meal Period Policy dated November 2004 ("Break/Meal Period Policy"). On or about July 19, 2007, Mr. Barreda acknowledged receipt of his copy of the Break/Meal Period Policy. A true and correct copy of the Break/Meal Period Policy is attached hereto as Exhibit 2.

6.      I am also familiar with the collective bargaining process and the contractual grievance and arbitration procedures set forth in the collective bargaining agreement between Prospect and the Union ("Collective Bargaining Agreement"). A true and correct copy of the Collective Bargaining Agreement is attached hereto as Exhibit 3.

7.      As stated above, Prospect employs a total of fifteen Skycaps at O'Hare

International Airport, including Mr. Allan Barreda. Four out of the fifteen Skycaps work

primarily with Delta, three out of the fifteen Skycaps work primarily with USAir, and the

remaining eight Skycaps, including Mr. Barreda, work with both Delta and USAir. One of the

four Skycaps who works primarily with Delta, Mr. Theodore Pappas, is the Union representative.

      8.      The Skycaps have morning and afternoon shifts. There are three individual

morning shifts (one per skycap) for Delta Skycaps: 4:15 a.m. to 11:30 a.m.; 4:30 a.m. to 11:45

a.m.; and 5:30 a.m. to 1:30 p.m. There are three individual afternoon shifts for Delta Skycaps:

12:00 p.m. to 6:15 p.m.; 12:45 p.m. to 6:15 p.m.; and 1:30 p.m. to 11:30 p.m. The two

individual morning shifts for USAir Skycaps are: 4:00 a.m. to 12:30 p.m.; and 4:30 a.m. to 1:00

p.m., and the two afternoon shifts for USAir Skycaps are: 12:30 p.m. to 9:00 p.m.; and 3:30 p.m.

to midnight.

      9.      All Delta Skycap shifts include a 30-minute paid lunch. USAir Skycap shifts

include a 30-minute unpaid meal period. Prospect's Break/Meal Period Policy states:

> Prospect offers a break(s) in the work period, operation permitting.
> Issues are created when employees take excessive breaks and time.
> Employees are not permitted to link breaks together to create one
> extended break-meal period. The problem created by this type of
> action causes a late break for an employee who is dependent on the
> timely return of their fellow employee.
>
> To ensure that employees are taking their meal period, there is an
> area on the time card where you place **your initial** (no check mark,
> etc) when you punch-out each work day. A 30-minute deduction
> will be taken and is therefore mandatory you initial your card
> "Yes" acknowledging receiving your meal period. Failure to initial
> your time card each workday can lead to disciplinary action.
>
> Employees are not permitted to take more than their allotted break
> time and under no circumstance allowed to work-thru their meal
> period unless, it is due to a passenger related issue. Assistance to a

passenger in a wheelchair takes priority over any break/meal period. All assistance must be completed and a break/meal period can be taken later by coordinating with a member of the leadership team.

If for any acceptable/passenger services reason you do not get your meal period, initial your timecard "No" and bring to the attention of a member of the leadership team for their signature before you leave work. This action will ensure that all time worked will be paid.

(*See* Ex. 2.) (Emphasis in original.) The Employee Handbook also states that "All time worked will be paid." (*See* Ex. 1, §II.2.)

10.    When Mr. Barreda marks his timecards "Lunch No" to indicate that he has worked a shift without taking a break/meal period, he is paid for the time worked during meal period. True and correct copies of Mr. Barreda's time cards for the periods of July 29, 2007 through July 19, 2008, are attached hereto as Exhibit 4.

11.    Article 6 of the Collective Bargaining Agreement, entitled "Hours of Work and Overtime," states:

Overtime hours shall be deemed to be any hours worked in excess of forty (40) hours per week for part-time Employees and in excess of eight (8) hours per bid shift for full-time Employees. For employees assigned to work Delta, their eight (8) hours includes a thirty (30) minute paid lunch.

A work week shall be defined as consisting of seven (7) day period commencing at midnight on Sunday and ending at 11:59 p.m. on Saturday.

All work performed in excess of forty (40) hours in one (1) week and eight (8) hours per bid shift shall be paid at the rate of time and one-half (1½).

There shall be no pyramiding of benefits under this Agreement and under no circumstances shall any pay be granted in excess of time

and one-half (1½ ).

An employee who has completed his regular shift and leaves the job and is recalled to work, and Employees who are called in on either of their regularly scheduled days off shall receive a minimum of four (4) hours work at the applicable rate, to include all Company training programs or ay type of meetings.

If an Employee is on shift and is taking care of a customer, he shall continue to refinish with that customer even if it goes beyond his quitting time. No employee will have the right to grieve seniority for that incident.

(*See* Ex. 3, Art. 6, pp. 6-7.) The Employee Handbook also states that "All hours worked will be paid. Hours in excess of 40 per week is considered overtime which is paid at **one and a half** times your pay rate." (*See* Ex. 1, §II.7.) (Emphasis in original.)

12.    Article 21 of the Collective Bargaining Agreement, entitled "Wages," states that skycap wages are the minimum tipped wage. (*See* Ex. 3, Art. 21, p. 15.)

13.    Section II.11. of the Employee Handbook, entitled "Tip Reporting," sets forth Prospect's policy with regard to tip reporting, and states:

If you are being paid less than $5.50 per hour, ($6.50 effective Jan. 2005) your wage is based on the minimum wage for tipped employees. The remainder of your wage is to be made up in tips and declared as such by law. IRS Publication 1244 is available to you through the office, which explains the rules and the use of Form 4070 and Form 4070A provided to report tips to your employer. We will automatically figure the minimum tip amount on your paycheck and make this claim on your behalf unless you fill out an alternate amount on a tip report form and submit it to the office prior to the last Sunday of the two-week payroll period. Tip reporting is your responsibility.

(*See* Ex. 1, §II.11.)

14.    Attached hereto as Exhibit 5 is a true and correct copy of the front and back pages

of IRS Publication 1244, entitled "Employee's Daily Record of Tips and Report to Employer,"
and a copy of Form 4070 (Employee's Report to Tips to Employer) and Form 4070A (Employee's
Daily Record of Tips), which are contained within Publication 1244. Located directly next to the
time-clocks in Prospect's O'Hare offices is a sign notifying employees that Publication 1244 is
available.

15.    Since Mr. Barreda has been employed by Prospect, he has never submitted a tip
report form.

16.    Sometime in or around July 2007, USAir designated and instituted an
administrative fee for curbside checked baggage. Sometime in or around April 2008, Delta also
designated and instituted an administrative fee for curbside checked baggage. These airline-
imposed administrative fees do not constitute or represent a tip, gratuity or service charge for
Skycaps, and tips are not included in the administrative fee. Skycaps are expected to deposit the
administrative fees with Delta and USAir during their shifts so that all time worked will be paid.

17.    Each Skycap is accountable for the administrative fees he collects during his shift.
As set forth in the written Accountability Policy dated August 2007 ("Accountability Policy"),
misappropriated administrative fees must be reimbursed. A true and correct copy of the
Accountability Policy signed by Mr. Barreda is attached hereto as Exhibit 6.

18.    Article 3 of the Collective Bargaining Agreement, entitled "Grievance Procedure,"
provides, in part, as follows:

> The Union and the Company agree that there shall be no strike,
> lockout, tie-up or legal proceedings without first using all possible
> means of a settlement as provided for in this Agreement, for any
> controversy that might arise.

All grievances or disputes arising under the terms of this Agreement shall be handled in the manner provided by this Article. In the case of any such grievance or dispute, the Union Steward shall take the matter up with the Company's representative, and every effort shall be made to reach a mutually satisfactory solution. If no solution can be reached, the Union shall take the matter up with the Company in an endeavor to adjust the matter amicably. All grievances must be presented within ten (10) days from the date of the occurrence.

          \*\*\*    \*\*\*          \*\*\*   \*\*\*  \*\*\*\*\*\*

If the grievance is not settled in the above Step, the mater shall be discussed between the Union's Business Representative and the Local manager.

If the grievance cannot be resolved in the above steps, then within thirty (30) calendar days, and in no event later than forty-five (45) days after the date of the occurrence unless otherwise agreed by the Union and the Company, said grievance shall be submitted to a Joint Grievance Committee which shall consist of two (2) Company designated representatives and two (2) Union designated representatives.  This Joint Grievance Committee shall consider the grievance and shall render a resolution of said grievance by majority vote which shall be final and binding upon the Employee, the Company and the Union.  If the Joint Grievance Committee is deadlocked on the matter of the resolution of the grievance, then either party may invoke the arbitration provision as set forth below.

If the foregoing procedure fails to result in an Agreement on the settlement of the grievance or dispute, then the matter may proceed to arbitration in accordance with the following procedure: the Parties shall meet to select an arbitrator.  If they are unable to agree, the parties shall request a list of seven (7) potential arbitrators form Federal Mediation and Conciliation Service.  Upon the receipt of said list the parties shall alternatively strike a name until only one (1) name is left.  The fees and expenses of the arbitrator shall be borne equally by the Company and the Union and his/her decision shall be binding on both parties.

(*See* Ex. 3, Art. 3, pp. 3-5.)

19.    Although Mr. Barreda is subject to the terms of Article 3 of the Collective

Bargaining Agreement, he has not followed any of the grievance procedures.


I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND
CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION.

_____
RONALD E. CLAYPOOL

# EXHIBIT 1

**RECEIPT SLIP:**

Please sign and present to the Employer Representative.

-----------------------------------------------------------------------------------------

I have received my copy of the "Job Orientation Guide and Work Rules." The Employer Representative whose signature appears below has reviewed this information with me. The Company has given me opportunity to ask questions concerning the material contained in this orientation guidebook. I am familiar with the Company Rules and Regulations as set forth in this orientation guidebook and I understand that it constitutes the rules and policies of this Company, and that I will be governed by it.

Since the information in this guidebook is necessarily subject to change without notice by action of the Company, it is understood that any changes in the policies listed may be made by management, provided that the employees are notified of such changes through the usual channels and once so notified that all Company Employees shall be bound by any such changes.

PRINTED NAME

EMPLOYEE SIGNATURE                                    DATE   7·19·07

SIGNATURE OF EMPLOYER REPRESENTATIVE            DATE   7/31/07

EXHIBIT

tabbies'

1



**O'HARE
INTERNATIONAL
AIRPORT (DL)**

**TO:**        **PASSENGER SERVICE ASSISTANT (PSA)**

**SUBJECT:    JOB ORIENTATION GUIDE AND WORK RULES**

You have been selected for employment with Prospect Airport Services, Inc. and will be expected to report for work on the first day of your scheduled work shift as specified by management.

Your first ninety days of employment will be a probationary period. During this time your performance, dependability, and your general attitude with respect to the job will be closely monitored. You will be expected to learn all aspects of the job and become proficient in your assigned duties. Failure to do so will constitute an unsatisfactory probation period resulting in your dismissal. During this first ninety days, you may be dismissed at any time without recourse or specific reason; the only reason needed is failure to successfully complete the probation period.

By presenting a comprehensive job orientation guide, we hope to avoid some of the confusion normally associated with the start of a new job. Please read this handbook to make sure you understand the material contained herein as you will be held accountable for following policies and procedures. Occasionally, new guidelines will be developed to improve our efficiency. Any revisions will be posted so you will be fully aware of changes or new procedures. If you have any questions, please ask.

Working as a team at Prospect Airport Services can be rewarding. We welcome your suggestions and will give consideration to ideas, which show initiative and merit.

# O'HARE INTERNATIONAL AIRPORT (DL)

## PASSENGER SERVICE ASSISTANT (PSA)

## JOB ORIENTATION GUIDE AND WORK RULES

**CONTENTS:**

I.   UNIFORMS AND PERSONAL APPEARANCE

    1.   THE COMPANY WILL PROVIDE
    2.   THE EMPLOYEE WILL PROVIDE
    3.   GROOMING IN GENERAL

II.   GENERAL EMPLOYEE INFORMATION

    1.   FULL TIME / PART TIME EMPLOYEES
    2.   BREAK/MEAL PERIODS
    3.   SICKNESS / EXCESSIVE ABSENCE
    4.   TARDINESS
    5.   REQUEST FOR ADDITIONAL DAYS OFF
    6.   FAMILY AND MEDICAL LEAVE ACT (FMLA)
    7.   OVERTIME
    8.   HOLIDAYS
    9.   VACATION
    10.   PAYDAY
    11.   TIP REPORTING
    12.   SCHEDULES
    13.   DRUG TESTING
    14.   PARKING
    15.   WAGE ASSIGNMENTS / GARNISHMENTS

III.   PROFESSIONAL CONDUCT
    1.   CONDUCT
    2.   SAFETY
    3.   SOLICITATION
    4.   SEXUAL HARASSMENT
    5.   DISCRIMINATION AND/OR HARASSMENT
    6.   PLEASE NOTE THESE IMPORTANT POINTS (DO'S AND DON'TS)

POLICY ON: DRUG AND ALCOHOL TESTING, SEXUAL HARASSMENT, RANDOM SECURITY AND INSPECTION, DISCRIMINATION AND / OR HARASSMENT, SOLICITATION AND BREAK/MEAL PERIOD  (Documents will require signature).

**"This handbook represents the personnel policies of the company at the time of its distribution. These policies are only guidelines. They do not represent an employment contract, and should not be construed as such. The company remains free, in its sole discretion, to change or amend these policies at any time, with or without notice. It is also free not to follow these guidelines in any particular case.**

**No member of company management has the authority to bind the company to any of the terms or provisions of this handbook."**

# I. UNIFORMS AND PERSONAL APPEARANCE

## 1. THE COMPANY WILL PROVIDE:

All employees will be expected to provide certain elements of their uniform. You may choose to purchase additional uniform items, which will be handled through a Company payroll deduction plan.

### A. VEST

The Company will provide one uniform vest. Additional vests are available for purchase. Vests must be clean and kept in good repair. Vest damage due to negligence will be replaced at your expense. Vest will be worn buttoned at all times.

### B. TIES

The Company will provide one uniform tie. Tie will be kept neat and clean. Damaged ties due to negligence will be replaced at your expense.

### C. NAMETAG

The Company will provide one nametag. The nametag will be worn on the right chest portion of the vest and must be visible to the passenger while on duty. Lost nametags will be replaced at your expense.

### D. AIRPORT I.D.

Airport I.D. will be provided by the city of Chicago through the Department of Aviation. It is mandatory that you wear it on your outer most garment above the waist at all times while on duty. Employees are not permitted to work without their Airport I.D. In the event that you should loose your I.D., call the office immediately to report this loss **(773) 686-7561**. If your I.D. is lost, the Department of Aviation will charge the employee for the costs of its replacement (currently $50).

Airport I.D. badges have an expiration date. It is the employees' responsibility to renew their I.D. badge by reporting the information to a supervisor/manager before the date of expiration. An employee is not charged for Airport I.D. renewal.

The Security I.D. is used to open security doors within the airport leading to restricted areas. You must not allow anyone to follow you through a secured door unless they swipe their badge and enter their pin number.

### E. UNIFORM RETURN POLICY

In the event your employment with Prospect is separated, the uniform items provided must be returned professionally cleaned and in good condition. The cost of any Company owned components not returned would be deducted from your last paycheck.

## 2. EMPLOYEE WILL PROVIDE:

### A.  SHIRTS

Shirts must be white, Oxford style with button down collar, long sleeve (short sleeve for summer) un-patterned with no epaulettes. The shirts are to be clean, free of wrinkles, not yellowed or gray, free of noticeable wear. Sleeves are not to be rolled or folded up.

### B.  PANTS

Plain black dress pants with pockets and belt loops. Pants should be properly sized. Baggy or tight fitting pants will not be acceptable No shiny material or trendy designs. The material of choice is a cotton/polyester blend. It is suggested that you purchase two pairs initially and replace them as they show wear. They are to be cleaned and free of noticeable wear and tear at all times. Skirts and/or shorts will not be permitted as uniform components at any time.

### C.  SHOES

Well-healed and soled plain black leather shoes with closed toes. No high heels, clogs, cork soles, different colored soles, sandals, or toeless shoes are allowed.  Understand, you will be doing a lot of walking, comfort is a must. Women should keep their heels at a maximum of one inch. Shoes must be sturdy, not ballet type or suede shoes.

### D.  SOCKS

Black plain socks or dark nylons.

### E.  BELTS

Black, plain leather belt with a small plain belt buckle.

### F.  GLOVES

Only black full-fingered gloves will be authorized when necessary during cold inclement weather.

### G.  SWEATER/PARKA

Uniform sweater and/or parka with the Company logo will be available for purchase if you wish to wear one during cold weather. Sweaters/Parkas must fit properly, be clean and in good repair.

### H. LANYARDS

Lanyards used to display an airport ID should be basic, not florescent in color, woven material with restriction on religious or ethnic wording.

### 3. GROOMING IN GENERAL:

- ❏ You are responsible for your appearance; you should punch into work each day dressed in your full uniform. You should be neat and clean, with a clean uniform.

- ❏ Keep makeup to a minimum. Proper appearance includes a clean well-groomed conservative hairstyle: no excessive greases, gels, unnatural coloring, or hair spray. Fingernails must be kept clean and trimmed.

- ❏ Men must be clean-shaven daily with no long hair, side burns or beards, goatees, or excessive mustaches.

- ❏ Women must wear bras that are <u>not</u> obviously visible through their shirts. Hair must be worn away for the face so that it does not get in the way.

- ❏ Jewelry is to be kept to a minimum and to be in conservative taste, one ring per hand only. You are not to wear chains on the outside of your shirts. If women wear earrings, they must be small and discreet. Men are not allowed to wear earrings. If this creates a double standard some object to, then bring it up and we will change the policy to no earrings.

- ❏ Body and/or tongue piercing as well as tattoos that are visible are not permitted.

- ❏ No employee shall have an odor generally offensive to others when reporting to work. An offensive body odor may result from a lack of good hygiene, from an excessive application of a fragrant aftershave or cologne, or from other cause.

- ❏ Ultimate decisions on hairstyles and other aforementioned items would be at the discretion of management. Our intent is to present a professional, well-groomed appearance to the airport community and the traveling public.

Our intent is that you take some pride in the way you appear at work and that the incentive rests with the regularity that your personal uniform items are clean and maintained.

## II. GENERAL EMPLOYEE INFORMATION

### 1. FULL TIME / PART TIME EMPLOYEES

Employees will be considered full time if they work at least 36 hours per week. All other employees will be considered to be part time.

### 2. BREAK/MEAL PERIODS

Shift of seven and one-half hours or more include one half-hour unpaid meal period. Operation permitting, paid break(s) are offered. Break/Meal periods must be taken prior to the last scheduled hour of a shift. Work duties take precedence over break/meal periods. All break/meal periods are to be coordinated with a representative of the leadership team, as they need to know of scheduling problems in order to rectify any concerns. All time worked will be paid.

### 3. SICKNESS / EXCESSIVE ABSENCE

Sick days are not paid nor are they condoned. If you are sick, call in at least 3 hours prior to your shift, if not earlier. This allows us time to replace you.  If a Supervisor is not available leave a message on the telephone recorder (**773) 686-7561**. Very important; you must call in and speak to a Supervisor **each day** you are out sick. If you fail to call in and speak to a Supervisor or leave a message on the telephone recorder, you will be subject to dismissal. Excessive days absent will be cause for termination of employment.

### 4. TARDINESS

You are expected to report for work on time each workday. This is not a flexible rule. Even one minute late is considered to be tardy.  In an extreme case, if you are going to be more that 15 minutes late, call the office and inform a member of the staff or leave a message on the recorder (**773) 686-7561**. If it becomes apparent that you have a problem with punctuality, you will be disciplined up to and including termination of employment.

### 5. REQUEST FOR ADDITIONAL DAYS OFF

Addition(s) to scheduled days off will be considered if requested in writing two weeks in advance.  This is a privilege. Do not abuse the system! We try to fill special requests but this is **not** guaranteed. Check your schedule; do not assume your requested day(s) off has been granted.

### 6. FAMILY AND MEDICAL LEAVE ACT  (FMLA)

This act provides for eligible employees to receive up to 12 weeks of unpaid, job-protected leave for certain family and medical reasons. Full disclosure of this act is available to you through the office and is also available through a required posting in your work area.

### 7. OVERTIME

A member of management must authorize all overtime. Overtime hours can be mandatory during extreme increases in service volume and due to the needs of the operation. Mandatory overtime will be assigned at the discretion of management. All hours worked will be paid. Hours in excess of 40 per week is considered overtime which is paid at **one and a half** times your pay rate.

### 8. HOLIDAYS

Company recognized holidays for which you will be paid premium pay at time and one half for hours worked are: **New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day**.  A holiday falling on employees scheduled day off is unpaid. Requests for a holiday off must be submitted at least two weeks in advance. You will not be paid premium pay if you fail to cover a scheduled shift the day before or after a holiday worked; regular pay rate would apply.

To be eligible for holiday premium pay, you must have been employed with Prospect for at minimum of thirty days.

## 9. VACATION

Vacation time is awarded based on length of employment.
One year-One week vacation
Three years - Two Weeks Vacation
Vacation time must be taken during the 12 months following the anniversary date of hire.
No carry-over vacation time will be allowed.

## 10. PAYDAY

You will be paid every two weeks. Your workweek begins on Sunday and ends on Saturday. Payday is every other week on Thursday unless otherwise posted.

## 11. TIP REPORTING

If you are being paid less than $5.50 per hour, ($6.50 effective Jan.2005) your wage is based on the minimum wage for tipped employees. The remainder of your wage is to be made up in tips and declared as such by law. IRS Publication 1244 is available to you through the office, which explains the rules and the use of Form 4070 and Form 4070A provided to report tips to your employer. We will automatically figure the minimum tip amount on your paycheck and make this claim on your behalf unless you fill out an alternate amount on a tip report form and submit it to the office prior to the last Saturday of the two-week payroll period. Tip reporting is your responsibility.

## 12. SCHEDULES

Schedules will be available on Thursday for the following week, which starts on Sunday. Check that your schedule matches your time card. If it does not, immediately check with a Supervisor. It is your responsibility to pickup and to know your schedule.

## 13. DRUG TESTING

In order to promote a drug free environment and to ensure the safety of our employees, pre-employment drug testing is required. Periodic drug testing will also be performed. An independent firm on a random basis, ensuring an unbiased selection of individuals, will do drug testing. Inability to pass the test or failure to comply will result in the termination of your employment. Acceptance of the position with Prospect Airport Services, Inc. ensures your cooperation and compliance with such tests. During your orientation, you signed a release to this effect.

## 14. PARKING

Parking is currently available at the employee parking lot. The employee will be required to pay a monthly fee (currently $40), which will be deducted from your check on a monthly basis.

## 15. WAGE ASSIGNMENTS / GARNISHMENTS

If the Company receives three different wage garnishments on an employee within a one-year period, you will be subject to termination of employment. You will be given a verbal warning after the first garnishment and a written warning after the second garnishment.

# III. PROFESSIONAL CONDUCT

## 1. CONDUCT

Employees are required to conduct themselves in a professional manner while on duty and/or in uniform. The following activities are prohibited while on duty and/or in uniform:

- Eating, drinking, chewing gum or smoking is not permitted while performing your work duties. This includes time spent while on any vehicle (vans or trucks). Smoking is permitted in airport-approved areas only.
- Avoid conversation of an indiscreet nature while in uniform. Do not congregate with fellow employees for other than work related reasons.
- TV's, pagers, walkman, radios, and cell phones use are not allowed while on the job.
- The drinking of alcoholic beverages or any substances that affect your ability to perform your duties while at work or in uniform is not permitted. Employees shall abstain from the consumption of alcoholic beverages for such period of time prior to reporting for duty as will permit all evidence of such consumption to have disappeared. **The employment of any employee found to be under the influence or the after affects of alcohol or drugs will be terminated.**
- After punching in for work you must immediately report to your assigned work area. Due to the flight activity each day it is mandatory that you be punctual and arrive in uniform and ready to work.

## 2. SAFETY

You are expected to be safety conscious at all times. Keep alert to prevent accidents that could cause injury to you, your fellow employees, or damage to airline facilities and equipment. **Any accidents/incident must be reported immediately to your Supervisor**. Unreported accidents will result in disciplinary measures. **Negligence can result in termination of your employment. Safety is always our first priority.**

## 3. SOLICITATION

Prospect has a policy prohibiting solicitation. If an employee engages in solicitation for gratuities, employment will be immediately terminated. Solicitation in any form will not be tolerated. Some examples of solicitation are:

- Money visible to the customer either in the hand or in vest pocket.
- Making hand gestures with the intent of receiving money or more money.
- Attempting to insult, intimidate, or embarrass a passenger in order to receive a gratuity or increase a gratuity.
- Under no circumstances do we insinuate in any way that there is a charge for service. The service is free.
- Charging a passenger for services or suggesting a price to them is considered solicitation.

## 4. SEXUAL HARASSMENT

Prospect Airport Services, Inc. expressly prohibits any form of sexual harassment and strongly support the right of all its employees to work in an environment that is free from all forms of discrimination, including what has been called "sexual harassment." The Company will not tolerate, condone, or subject anyone to sexual harassment.

Conduct of a sexual nature which is unwelcome or unwanted, whether verbal or physical, is sexual harassment when:

   a)  Submission to or rejection of this conduct by an individual is used as a factor in decisions affecting hiring, evaluation, promotion or other aspects of employment.

   b)  This conduct substantially interferes with an individual's employment or creates an intimidating, hostile, or offensive work environment.

Some examples of sexual harassment may include unwanted sexual advances; demands for sexual favors in exchange for favorable treatment or continued employment; repeated sexual jokes; sexually explicit language or comments; or the display of offensive sexual material in the work place. This should include making known to any offender that his or her conduct is unwelcome or unwanted.

## 5.  DISCRIMINATION AND / OR HARASSMENT

Prospect Airport Services Inc. will not tolerate, condone, or subject anyone to workplace discrimination and / or harassment. Prospect prohibits discrimination and/or harassment in any form based on race, color, religion, sex, national origin, age and disability. Conduct of this nature is inappropriate and illegal.

Any incident, which may be in violation of this policy, should be immediately reported to a supervisor. If a complaint is determined to have merit, the Company will take appropriate disciplinary action against the offending employee.

**Any conduct that may be a violation of discrimination and/or any form of harassment should be reported immediately to a member of the Leadership Team for review with prompt and remedial action for resolution.**

## 6.  PLEASE NOTE THESE IMPORTANT POINTS

A. **DO's:**

- Report any accident or unusual situation to your Lead / Supervisor **immediately.** Do <u>not</u> remove or disturb any equipment involved in any accident.
- Do always be on time.
- Have a friendly and cooperative attitude towards your fellow employees, leads, supervisors and any airline / airport personnel.
- Do report any unusual activity or people in the area, or on the aircraft.
- Do call the office if you are late or sick at **(773) 686-7561.**
- Do keep your equipment secure and clean at all times.
- Do immediately turn in any items found while on the aircraft or airport property. Items not reported found will be grounds for termination of employment.
- Challenge any individual or group not displaying proper ID. Escort out of the restricted area and report anyone not able to produce proper identification.
- Do report any broken equipment, i.e. radios, wheelchair seatbelt, hand brakes, footrests, etc.

- **DON'T's:**

- <u>**Do not solicit for tips. Your employment will be immediately terminated**</u>.
- Do not receive or make personal calls while on duty.
- Do not use cell phones or pager while on duty.
- Never use the airline phones (including aircraft phones).
- Do not utilize the Airline Paging System.
- Do not punch a fellow employee time card in or out. Each employee must punch his/her time card each workday. Disciplinary action will be taken if you punch another employee time card.
- Do not sit or lounge in public contact areas, even while on break.
- Do not use wheelchairs for personal seating.
- Do not deface equipment, Company, airline, or airport property.
- Do not smoke, chew gum, or eat in view of the public while on duty. Avoid creating a negative image of Prospect Airport Services, Inc. while in uniform.
- Do not meet with or congregate with friends while on duty.
- Do not have a conversation of an indiscreet nature with fellow employees.
- Do not leave the work area without supervisory approval.
- Do not get your car from parking or park your car while on duty.
- Do not park passenger cars while on duty. This will be cause for termination of employment. Do not accept responsibility for passenger's cars, keys, and rental returns or watch their cars while they go into the airport terminal.
- Do not sleep while at work, this includes time on breaks.
- Do not loiter on an aircraft, i.e. no breaks are allowed on an aircraft.
- Do not remove items from an aircraft without authorization. **This is considered theft and grounds for termination of employment.**
- Horseplay is not allowed. Do not argue with the customer or fellow employees.
- Do not consume or remove leftover food from an aircraft.
- Do not take any of the cleaning / provisional supplies of the job for personal use (soda, liquor, paper products, etc.)

**RECEIPT SLIP:**

Please sign and present to the Employer Representative

-----------------------------------------------------------------------------------------

      I have received a copy of Prospects O'Hare International Airport (DL) "PSA Job Orientation Guide and Work Rules". I have been given the opportunity to ask questions concerning the material contained in this guide. I am familiar with the Company Rules and Regulations as set forth in this orientation guide and I understand that it constitutes the policies of the Company, and that I will be governed by it.

      Since the information in this guide is necessarily subject to change without notice by action of the Company, it is understood that management may make any changes in the policies listed, provided that the employees are notified of such changes through the usual channels and once so notified that all employees shall be bound by any such changes.

-----------------------------------------------------------------------------------------

_____

EMPLOYEE PRINTED NAME

_____        _____

EMPLOYEE SIGNATURE                                                      DATE

_____        _____

EMPLOYER REPRESENTATIVE SIGNATURE                   DATE

Please sign and present to the Employer Representative.

-----------------------------------------------------------------------------------

### DRUG AND ALCOHOL TESTING POLICY

In order to insure the safety of the customers we service, the safety of our employees, as well as to promote a drug free environment, Prospect Airport Services, Inc., has adopted and implemented a DRUG AND ALCOHOL TESTING PROGRAM.

**DRUG AND ALCOHOL TESTING WILL BE CONDUCTED ON A RANDOM BASIS BY AN INDEPENDENT, OUTSIDE FIRM.  ALL EMPLOYEES OF THE COMPANY ARE SUBJECT TO THIS TESTING.   IN ADDITION TO THE RANDOM   DRUG   AND   ALCOHOL   TESTING,   MANDATORY   AND IMMEDIATE TESTING WILL BE REQUIRED OF ANY EMPLOYEE WHO (1) IS INJURED WHILE AT WORK, OR (2) WHO IS SUSPECTED TO BE UNDER THE INFLUENCE OF EITHER DRUG OR ALCOHOL.  IN THE CASE OF MANDATORY OR IMMEDIATE DRUG AND ALCOHOL TESTING, OUR TESTING WILL BE CONDUCTED AT THE UIC MEDICAL CENTER LOCATED IN TERMINAL 2 -O'HARE AIRPORT.**

**IF YOU FAIL TO COMPLY WITH THIS DRUG AND ALCOHOL TESTING POLICY OR IF YOU FAIL THE TEST, THEN YOUR EMPLOYMENT WITH PROSPECT AIRPORT SERVICES, INC. IS SUBJECT TO IMMEDIATE TERMINATION.**

I agree to submit to a drug and alcohol test if and when one should be required. I understand that selection is completely random and that failure to pass or to take the test will lead to separation of employment with Prospect Airport Services, Inc. I also agree that any involvement in an accident at work or on the job injury may be cause for drug or alcohol testing and I agree to comply.

_Allan W. Barreda_
PRINTED NAME

_[signature]_
EMPLOYEE SIGNATURE

_7. 19·07_
DATE

_[signature]_
EMPLOYER REPRESENTATIVE SIGNATURE

_7/3/07_
DATE

NOV 2004

Please sign and present to the Employer Representative.

-------------------------------------------------------------------------------

## SEXUAL HARASSMENT POLICY

Prospect Airport Services, Inc. expressly prohibits any form of sexual harassment and strongly support the right of all its employees to work in an environment that is free from all forms of discrimination, including what has been called "sexual harassment". The Company will not tolerate, condone, or subject anyone to sexual harassment.

Conduct of a sexual nature which is unwelcome or unwanted, whether verbal or physical, is sexual harassment when:

    a) Submission to or rejection of this conduct by an individual is used as a factor in decisions affecting hiring, evaluation, promotion or other aspects of employment.

    b) This conduct substantially interferes with an individual's employment or creates an intimidating, hostile, or offensive work environment.

Some examples of sexual harassment may include unwanted sexual advances; demands for sexual favors in exchange for favorable treatment or continued employment; repeated sexual jokes; sexually explicit language or comments; or the display of offensive sexual material in the workplace. This should include making known to any offender that his or her conduct is unwelcome or unwanted.

## COMPLAINT PROCEDURE:

Any incident, which may be a violation of this policy, should be promptly reported to your Supervisor. The Company will investigate each complaint in a prompt and proper fashion. Your complaint will be kept confidential to the extent possible. If the complaint is determined to have merit, the Company will take appropriate disciplinary action against the offending employee.

The Company prohibits any form of retaliation against an employee(s) for filing a legitimate complaint under this policy or for assisting in a complaint investigation.

_Allan W. Barreda_

**PRINTED NAME**

_(signature)_

**EMPLOYEE SIGNATURE**        7.09.07

**DATE**

_(signature)_

**EMPLOYER REPRESENTATIVE SIGNATURE**    7/31/02

**DATE**

NOV 2004

Please sign and present to the Employer Representative.

-----------------------------------------------------------------------

## RANDOM SECURITY AND INSPECTION

### OF

### EMPLOYEE'S PERSONAL PROPERTY AND OTHER ITEMS POLICY

To protect the integrity of the employees of Prospect Airport Services, Inc. and of the airlines which we service, as well as for the purpose of airport security, Prospect Airport Services, Inc. has adopted a Random Security and Inspection of Employee's Personal Property Policy.

**PURSUANT TO THIS POLICY, RANDOM INSPECTIONS SHALL BE MADE OF EMPLOYEE'S PERSONAL ITEMS WHICH ARE CARRIED ON OR WITH THE EMPLOYEE, AS WELL AS AN EMPLOYEE'S LOCKER AND/OR AUTOMOBILE. UPON REQUEST FROM SECURITY PERSONNEL OR THE MANAGEMENT OF PROSPECT AIRPORT SERVICES, INC., AN EMPLOYEE SHALL BE REQUIRED TO OPEN ANY AND ALL PERSONAL BAGS, ITEMS, THEIR LOCKER OR AUTOMOBILE FOR INSPECTION.**

**COMPLIANCE WITH THIS RANDOM SECURITY AND INSPECTION OF EMPLOYEE'S PERSONAL PROPERTY IS MANDATORY. FAILURE TO MAKE ANY OF YOUR PERSONAL BELONGS AVAILABLE FOR INSPECTION WILL BE CONSIDERED AS "NON-COMPLIANCE." IF YOU FAIL TO COMPLY WITH THE REQUIRED INSPECTION OR IF YOU FAIL THE INSPECTION, YOUR EMPLOYMENT WITH PROSPECT AIRPORT SERVICES, INC. IS SUBJECT TO TERMINATION.**

_Allan W. Barada_
PRINTED NAME

_[signature]_                                    7.19.07
EMPLOYEE SIGNATURE                       DATE

_[signature]_                                    7/3/07
EMPLOYER REPRESENTATIVE SIGNATURE     DATE

NOV 2004

Please sign and present to the Employer Representative

-----------------------------------------------------------------------------------------------------------------

## DISCRIMINATION AND/OR HARASSMENT POLICY

Prospect Airport Services, Inc. expressly prohibits discrimination, strongly supporting the right of all employees to work in an environment free from all forms of discrimination or harassment.  The Company will not tolerate, condone, or subject anyone to workplace discrimination and/or harassment.

Prospect prohibits discrimination and/or harassment in any form based on race, color, religion, sex, national origin, age and disability.  Conduct of this nature is inappropriate and illegal.

**COMPLAINT PROCEDURE:**

Any incident which may be in violation of this policy should be immediately reported to a Supervisor.  Prospect will investigate each complaint in a prompt and proper manner.  A complaint will be kept confidential to the extent possible.  If the complaint is determined to have merit, the Company will take appropriate disciplinary action against the offending employee.

The Company prohibits any form of retaliation against an employee(s) for filing a legitimate complaint under this policy and for assisting in a complaint investigation.

_Allan w. Barreda_
PRINTED NAME

_[signature]_                          7·19·07
EMPLOYEE SIGNATURE                     DATE

_[signature]_                          7/31/02
EMPLOYER REPRESENTATIVE SIGNATURE      DATE

NOV 2004

Please sign and present to the Employer Representative

---------------------------------------------------------------------------------------------------

## SOLICITATION POLICY

Prospect Airport Services, Inc. and our airline clients expressly prohibit any form of solicitation of tips and/or gratuities.  Prospect provides the following services to airline passengers:

> Skycap Baggage Service
> Baggage Handling
> Electric Cart Transportation
> Wheelchair Attendants

The Department of Transportation (DOT) Air Carrier Access Act has implemented a rule prohibiting the solicitation of tips from airline passengers with disabilities.  Violation of this rule is subject to a substantial fine.

Tipping is a voluntary gesture on the part of the passenger. Charging for services to passengers is strictly prohibited and enforced.  Tips and/or gratuities, which are voluntarily offered by the passenger, are acceptable.

ASKING FOR A TIP IS STRICTLY PROHIBITED.  Solicitation in any manner, directly or indirectly, is grounds for immediate termination of employment.

Signature below acknowledges understanding of Prospect's policy on solicitation and the action that will be taken should there be a failure to comply.

*Allan W. Barreda*
PRINTED NAME

_____
EMPLOYEE SIGNATURE          DATE  7·19·07

_____
EMPLOYER REPRESENTATIVE SIGNATURE          DATE  7/31/07

NOV 2004

Please sign and present to the Employer Representative

-----------------------------------------------------------------------------------------------------------

## BREAK/MEAL PERIOD POLICY

Prospect offers a break(s) in the work period, operation permitting. Issues are created when employees take excessive breaks and time. Employees are not permitted to link breaks together to create one extended break-meal period. The problem created by this type of action causes a late break for an employee who is dependent on the timely return of their fellow employee.

To ensure that employees are taking their meal period, there is an area on the time card where you place **your initials** (no check mark, etc) when you punch-out each work day. A 30-minute deduction will be taken and is therefore mandatory you initial your card "Yes" acknowledging receiving your meal period. Failure to initial your time card each workday can lead to disciplinary action.

Employees are not permitted to take more than their allotted break time and under no circumstance allowed to work-thru their meal period unless, it is due to a passenger service related issue. Assistance to a passenger in a wheelchair takes priority over any break/meal period. All assistance must be completed and a break/meal period can be taken later by coordinating with a member of the leadership team.

If for any acceptable/passenger services reason you do not get your meal period, initial your timecard "No" and bring to the attention of a member of the leadership team for their signature before you leave work. This action will ensure that all time worked will be paid.

_Allan W. Barreda_
PRINTED NAME

_[signature]_
EMPLOYEE SIGNATURE                                   7.19.07
                                                     DATE

_[signature]_
EMPLOYER REPRESENTATIVE SIGNATURE                    4/3/07
                                                     DATE

NOV 2004

## FEDERAL INSPECTION STATION POLICY

Federal Inspection Station (FIS) at airports have strict rules that employees approved to work within these facilities must follow. These facilities include US Customs, Immigrations, and Agriculture, operating under the directives from Department of Homeland Security. Federal policies and procedures can lead to fines if violated. Employees working in the FIS must submit an application and when approved will be granted a clearance designator which is affixed to the Airport ID Badge.

The following are some of the most common Federal and Prospect policies that must be followed when entering the FIS area:

- Never enter these restricted work areas unless your badge has a customs hologram, if a supervisor or shift lead assigns you a task in the FIS advise them if you do not have a customs hologram.
- No use of cameras, cell phones, or pagers are allowed in the Customs Hall.
- Do not follow, or allow anyone to follow you (piggybacking) through a security door unless the individual badge is swiped and their pin number is entered.
- Do not enter this facility using your badge unless; you are on duty, in proper uniform and have an assignment or work related reason to be in the area.
- Do not use your badge to assist/escort a friend, acquaintance, or relative in the FIS. This includes meeting them at a gate.
- Do not change and/or discuss with a passenger any markings on documents placed there a FIS representative.
- Do not bring anyone back into the FIS once they have cleared the areas.
- You are not allowed to board or provide pre-board service to passengers on an International flight unless you have the required customs hologram.
- Never board an aircraft unless for business purposes (assisting a passenger with disability, etc.).
- Do not consume or remove left over food/beverage from an aircraft, even when offered by the flight crew.
- Never remove items from an aircraft.

Signature below acknowledges understanding of Federal and Prospect policies that have a potential for fines. **Employees in violation are responsible for fines** and subject to disciplinary action up to and including termination of employment.

_Allan W. Barreda_
PRINTED NAME

_[signature]_
EMPLOYEE SIGNATURE

_[signature]_
EMPLOYER REPRESENTATIVE SIGNATURE

_7·19·07_
DATE

_7/3//07_
DATE

FEB 2006

Please sign and present to the Employer Representative

-------------------------------------------------------------------------------------------------------

## AIRPORT ID BADGE POLICY

Prospect employees must follow all rules and regulations associated with the Airport Identification (ID) Badge.  Employees cited for ID and/or Security violations are responsible for any fines and may be liable for any civil penalties.

Confiscation/suspension and /or termination by authorities of an employees airport ID badge for violation(s) of access control regulation is a mandatory Prospect "NO-WORK" status for our employee.  Specifically, Prospect will not permit an employee to work in any capacity at an airport until such time the badging issue is resolved and the employees airport ID badge is reinstated.

During the "No-Work" period, employees are not permitted to attempt to gain airport access by:

- Any Temporary Visitors Badge procedures
- Any Lost/Stolen Badge procedures

Either will be treated as a serious and intentional security violation.  When any violation is determined to have occurred, the Company will take appropriate disciplinary action against the offending employee(s), up to and including the termination of employment.

_Allan w. Barreda_
PRINTED NAME

_____     7.19.07
EMPLOYEE SIGNATURE                           DATE

_____     7/31/07
EMPLOYER REPRESENTATIVE SIGNATURE     DATE

SEPT 2005

Please sign and present to the Employer Representative

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### THEFT POLICY

Prospect Airport Services, Inc. expressly prohibits any form of misappropriation of company and client funds, property and material, and/or theft of any type. The company will not tolerate, condone, or except conduct of this nature that is inappropriate and illegal.

All allegations of theft will be thoroughly investigated. When determined to have merit, violators will subject their employment to immediate termination.

Signature below acknowledges understanding of Prospect's policy on theft and the action that will be taken against the offending employee should there be a violation.

_Allan W. Barreda_
PRINTED NAME

_signature_                          7·19·07
EMPLOYEE SIGNATURE                   DATE

_signature_                          7/31/07
EMPLOYER REPRESENTATIVE SIGNATURE    DATE

MAY 2006

# EXHIBIT 2

Please sign and present to the Employer Representative

## BREAK/MEAL PERIOD POLICY

Prospect offers a break(s) in the work period, operation permitting. Issues are created when employees take excessive breaks and time. Employees are not permitted to link breaks together to create one extended break-meal period. The problem created by this type of action causes a late break for an employee who is dependent on the timely return of their fellow employee.

To ensure that employees are taking their meal period, there is an area on the time card where you place **your initials** (no check mark, etc) when you punch-out each work day. A 30-minute deduction will be taken and is therefore mandatory you initial your card "Yes" acknowledging receiving your meal period. Failure to initial your time card each workday can lead to disciplinary action.

Employees are not permitted to take more than their allotted break time and under no circumstance allowed to work-thru their meal period unless, it is due to a passenger service related issue. Assistance to a passenger in a wheelchair takes priority over any break/meal period. All assistance must be completed and a break/meal period can be taken later by coordinating with a member of the leadership team.

If for any acceptable/passenger services reason you do not get your meal period, initial your timecard "No" and bring to the attention of a member of the leadership team for their signature before you leave work. This action will ensure that all time worked will be paid.

_Allan W. Barreda_
PRINTED NAME

_[signature]_                                      _7·19·07_
EMPLOYEE SIGNATURE                         DATE

_[signature]_                                      _7/31/07_
EMPLOYER REPRESENTATIVE SIGNATURE     DATE

NOV 2004

EXHIBIT
2

# EXHIBIT 3

# AGREEMENT

between

## District 8 of the
International Association of Machinists and Aerospace Workers AFL-CIO

-and-

## Prospect Airport Services, Inc.

**EXHIBIT**

3

tabbies®

## INDEX OF ARTICLES

| ARTICLE | PAGE |
|---|---|
| PREAMBLE | 2 |
| ARTICLE 1 RECOGNITION | 2 |
| ARTICLE 2 MANAGEMENT | 3 |
| ARTICLE 3 GRIEVANCE PROCEDURE | 3 |
| ARTICLE 4 SENIORITY | 5 |
| ARTICLE 5 BID PROCEDURE | 6 |
| ARTICLE 6 HOURS OF WORK AND OVERTIME | 6 |
| ARTICLE 7 SECURITY OF EQUIPMENT AND INVESTIGATION | 7 |
| ARTICLE 8 UNIFORM SHIRTS | 8 |
| ARTICLE 9 PAID SICK DAYS | 8 |
| ARTICLE 10 VACATIONS | 8 |
| ARTICLE 11 HOLIDAYS | 10 |
| ARTICLE 12 UNIFORMS AND PERSONAL APPEARANCE | 10 |
| ARTICLE 13 SUBCONTRACTING AND DIVERSION OF WORK | 12 |
| ARTICLE 14 JURY DUTY | 13 |
| ARTICLE 15 LEAVE OF ABSENCE | 13 |
| ARTICLE 16 GENERAL MISCELLANEOUS | 14 |
| ARTICLE 17 BEREAVEMENT | 14 |
| ARTICLE 18 WORKMENS COMPENSATION INSURANCE | 15 |
| ARTICLE 19 SOLICITATION AND PARKING OF CARS | 15 |
| ARTICLE 20 DISCRIMINATION | 15 |
| ARTICLE 21 WAGES | 15 |
| ARTICLE 22 NO STRIKES AND NO LOCKOUTS | 16 |
| ARTICLE 23 TERM OF THE AGREEMENT | 16 |
| SIGNATURE PAGE | 17 |
| EXIBIT A | 17 |

## PREAMBLE

This Agreement is made and entered into this Thirteenth day of February, 2004, by and between Prospect Airport Services, Inc., hereinafter referred to as the "Company" and District 8 of the International Association of Machinists and Aerospace Workers, AFL-CIO hereinafter referred to as the "Union".

This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. The parties hereto shall not use any leasing device to a third party to evade this Agreement. The Company shall give notice of the existence of this Agreement to any purchaser, transferee, lessee, assignee, etc., of the operation covered by this Agreement or of any part thereof. Such notice shall be in writing with a copy to the Union at the time the seller, transferee, or lessor executes a contract or transaction as herein described.

## PURPOSE

The purpose of this Agreement is in the mutual interest of the Parties to provide for the operation of services of the Company under methods which will further to the fullest extent possible the efficiency of operation, the continuity of service and the continuation of employment under condition of reasonable hours, proper compensation and reasonable working conditions at O'Hare International Airport, Chicago, Illinois.

## ARTICLE 1 RECOGNITION

The Company recognized the Union as the sole and exclusive collective bargaining agency for all its Employees covered by the Certification of Representative issued by the National Labor Relations Board on March 31, 2000 in Case No. 13-RC-20270

All present Employees who are or become members of the Union shall remain members in good standing as a condition of their employment. All present Employees who are not members of the Union and all Employees hired hereafter shall, on the thirtieth (30th) day following the beginning of their employment or the effective date of this Agreement, whichever is later, become and remain

members in good standing of the Union as a condition of their employment. The Company agrees that when a new Employee is hired, the terms and conditions of this Agreement will be explained to such Employee by a Steward or Business Representative of the Union.

Authorized Representatives of the Union shall have access to the work place at all reasonable times for the purpose of adjusting disputes, investigating working conditions, collecting dues and ascertaining compliance with this Agreement. Union representatives will not conduct business at the curb when there are customers present.

## CHECK-OFF

The Company agrees to deduct from the pay of each Employee who has executed and caused to be delivered to the Company, a signed authorization, a copy of the form of such signed authorization is attached hereto as Exhibit A hereof, the regular monthly dues, the initiation or reinstatement fee as may be established by the Union, if due and owing, which are necessary to keep the Employee as a member in good standing in accordance with the Constitution and bylaws of the Union, as certified in writing to the Company by the Union. Such deductions shall be made from the Employee's pay for the first pay period ending in each month and shall be remitted, to the official of the Union designated by the Union in writing, within approximately ten (10) business days from the date such deductions are made.

## ARTICLE 2 MANAGEMENT

Subject to the provisions of this Agreement, the Company shall have the exclusive right to direct the Employees covered by this Agreement. Among the exclusive rights of management, but not intended as a wholly inclusive list of them, are the rights to plan, direct, and control all operations performed by Sky Caps at O'Hare International Airport for Delta, U.S. Air, and International Carriers, to hire, to transfer, to demote, to promote, to discipline, suspend or discharge for just cause, to relieve Employees from duty because of lack of work or for any other legitimate reason.

## ARTICLE 3 GRIEVANCE PROCEDURE

The Union and the Company agree that there shall be no strike, lockout, tie-up or legal proceedings without first using all possible means of a settlement as provided for in this Agreement, for any controversy that might arise.

All grievances or disputes arising under the terms of this Agreement shall be handled in the manner provided by this Article. In the case of any such grievance or dispute, the Union Steward shall take the matter up with the Company's representative, and every effort shall be made to reach a mutually satisfactory solution. If no solution can be reached, the Union shall take the matter up with the Company in an endeavor to adjust the matter amicably. All grievances must be presented within ten (10) days from the date of the occurrence.

No Employee shall be suspended for more than the balance of the shift, except in case of FAA violations and progressive discipline, and shall return to work on their next regularly scheduled work day and continue to work until such time that the Company and the Union set a hearing date; which shall not exceed ten (10) days from the date of the occurrence unless mutually agreed to by the Company and the Union to extend the time limits (Exclusions from the procedure are: Discharge for just Cause, Security of Equipment, and Uniforms and Personal Appearance Violations.)

If the grievance is not settled in the above Step, the matter shall be discussed between the Union's Business Representative and the Local Manager.

If a grievance cannot be resolved in the above steps, then within thirty (30) calendar days, and in no event later than forty-five (45) days after the date of the occurrence unless otherwise agreed by the Union and the Company, said grievances shall be submitted to a Joint Grievance Committee which shall consist of two (2) Company designated representatives and two (2) Union designated representatives. This Joint Grievance Committee shall consider the grievance and shall render a resolution of said grievance by majority vote which shall be final and binding upon the Employee, the Company and the Union. If the Joint Grievance Committee is deadlocked on the matter of the resolution of the grievance, then either party may invoke the arbitration provision as set forth below.

If the foregoing procedure fails to result in an Agreement on the settlement of the grievance or dispute, then the matter may proceed to arbitration in accordance with the following procedure: the Parties shall meet to select an arbitrator. If they are unable to agree, the parties shall request a list of seven (7) potential arbitrators from Federal Mediation and Conciliation Service. Upon the

receipt of said list the parties shall alternatively strike a name until only one (1) name is left. The fees and expenses of the arbitrator shall be borne equally by the Company and the Union and his/her decision shall be binding on both Parties.

## ARTICLE 4 SENIORITY

For the first ninety (90) days, Employees shall be on probation and the Company may discharge probationary Employees for any reason without recourse to the grievance procedure. Probationary Employees shall be covered by all other terms and conditions of this Agreement.

Seniority shall date from the first day of employment covered by this Agreement. In the event Employees are hired on the same date, their relative position on the seniority list shall be determined by lottery conducted by the job manager and an authorized representative of the Union. The Union acknowledges that it has received, reviewed and accepted the Company's current seniority list.

Full-time and regular part-time Employees seniority shall govern in any type of shift bid. Full-time Company seniority shall govern in all cases of lay-off or recall after lay-off and choice of vacation period.

Employees shall lose all seniority rights under this Agreement in the event they resign, are discharged for cause or fail to report within five (5) days of notification by the Company that work is available (i.e., if a laid off Employee has taken other employment). Offers of temporary employment shall not affect the Employee's seniority status.

The Company shall post a seniority list on January 1" and July 1" of each year, with a copy mailed to the Union.

For purposes of this Agreement, a full-time Employee shall be defined as any Employee who is scheduled to work in excess of thirty-two (32) hours per week and is available to do so fifty-two (52) weeks per year, excluding vacation time, approved sick time, approved personal off time or on approved leave of absence.

A regular part-time Employee shall be defined an any Employee who is available to be scheduled to work in excess of sixteen (16) hours per week and less than thirty-three hours per week and is available to do so fifty-two (52) weeks per year, excluding vacation time, approved sick time, approved personal off time or on approved leave of absence.

## ARTICLE 5 BID PROCEDURE

When permanent vacancies (60 days or more) exist or new positions are created, Employees will be entitled to bid such vacancies and the senior qualified Employee will be awarded the job. Permanent vacancies created by reduction in work shall not be filled, so long as the Company shall not utilize this provision to evade the intent of this Article.

Employees (excluding Captains) promoted to better jobs shall have a probationary period of thirty (30) days on such new jobs and if during such time he does not qualify he shall be returned to his original job without loss of seniority or any other rights.

Shifts and days off shall be bid every three (3) months, on the basis of the Employees' seniority. Bids will be effective on the first Sunday of the month. Bid Sheets will be posted for the purpose of employees to select bid positions every three months. Upon completion of the bid process, the finalized bid sheet will be posted.

All Captain vacancies will be bid on the basis of seniority and relative ability to perform the job. An Employee who bids for a Captain's vacancy and is not awarded the position and has more seniority than the Employee selected shall have the right to file a grievance as outlined in the Grievance Procedure.

Employees returning from prolonged medical leaves will be given senior hours available until the next bid. Work demands and absences of those regularly scheduled Employees may necessitate a temporary reassignment.

## ARTICLE 6 HOURS OF WORK AND OVERTIME

Overtime hours shall be deemed to be any hours worked in excess of forty (40) hours per week for part-time Employees and in excess of eight (8) hours per bid shift for full-time Employees. For employees assigned to work Delta, their eight (8) hours includes a thirty (30) minute paid lunch.

A work week shall be defined as consisting of seven (7) day period commencing at midnight on Sunday and ending at 11:59 p.m. on Saturday.

All work performed in excess of forty (40) hours in one (1) week and eight (8) hours per bid shift shall be paid at the rate of time and one-half (1½).

There shall be no pyramiding of benefits under this Agreement and under no circumstances shall any pay be granted in excess of time and one-half (1½).

An Employee who has completed his regular shift and leaves the job and is recalled to work, and Employees who are called in on either of their regularly scheduled days off shall receive a minimum of four (4) hours work at the applicable rate, to include all Company training programs or any type of meetings.

If an Employee is on a shift and is taking care of a customer, he shall continue to refinish with that customer even if it goes beyond his quitting time. No Employee will have the right to grieve seniority for that incident.

## ARTICLE 7 SECURITY OF EQUIPMENT AND INVESTIGATION

The Union may select and designate such representatives at O'Hare Field as may be necessary for the purpose of representing the Employees under the terms of this Agreement. The Union shall notify the Company in writing of the names of its accredited representatives. The Company shall inform the Union in writing of the supervisors with whom said accredited representatives shall deal and any changes in Personnel thereof. Sky Cap carts, when not in active use, are to be locked up and put in their proper designated area.
Wheelchairs - At no time are wheelchairs to be left unattended in the passenger areas. They are to be secured in the proper designated area. They are not be to stacked. They are not to be used to transport people's luggage.

No equipment of any type is to be taken on the escalator under any circumstances. When someone is on break or lunch it is to be secured in the specified areas. At no time are they to be left in the Gate areas or any other place in the airport other than the specified areas.

| | | |
|---|---|---|
| 1st Offense | - | Verbal Warning |
| 2nd Offense | - | Suspended for the remainder of the day and a letter |
| 3rd Offense | - | A maximum of a five (5) day suspension and a letter |

## ARTICLE 8 UNIFORM SHIRTS

It is agreed that the Company will provide four (4) Prospect Airport Services Logo short sleeve shirts paid for by the Company per year as referenced in Article 12.

## ARTICLE 9 PAID SICK DAYS

It is agreed that each employee shall receive two (2) paid sick days per year at the rate of $5.15 per hour.

## ARTICLE 10 VACATIONS

Every regular full-time and regular part-time Employee who has been continuously in the employ of the Company for a period of one (1) year or more shall be entitled to the following unpaid vacation time:

| | | |
|---|---|---|
| One (1) year employment | - | One (1) week |
| Two (2) years employment | - | Two (2) weeks |
| Five (5) years employment | - | Three (3) weeks |
| Ten (10) years employment | - | Four (4) weeks |

The vacation year shall be from calendar year to succeeding calendar year. Vacation cannot be cumulative or carried over from year to year.

Part-time Employees with one (1), two (2), five (5), ten (10) or more years of continuous service shall receive unpaid vacation time on a pro-rated yearly average basis.

To qualify for an unpaid vacation, an Employee, in addition to having been continuously employed by the Company for one (1), two (2), five (5), or ten (10) years prior to the anniversary date of the year in which the vacation is to be granted, must not have been absent from work during each year for more than thirty (30) days on which he or she was afforded the opportunity to work by the Company, provided that absence caused by legitimate illness, or an accident, shall not be counted.

If an Employee loses less than three (3) calendar months or less than sixty-five (65) working days, (and has returned to work) because of proven illness, accident, or layoff in the twelve (12) months since his last vacation, he or she shall be entitled to a pro-rated share of his or her vacation.

The vacation period shall extend over the entire year. Some time slots may be blocked due to business demands. Employees within a particular classification may select their vacation during the vacation period according to their seniority, provided such selection will not interfere with the efficient operation of the Company's business. Employees will be awarded accrued vacation benefits at time of separation.

Upon permanent layoff, any regular Employee with one (1) or more years of service shall be entitled to unpaid vacation on a pro-rate basis.

No Employee shall have the right to change vacation time once it is scheduled, except in unusual and unforeseen circumstances, and only upon the written approval of management.

Returning servicemen, who would be entitled to receive a vacation under the Soldiers' and Sailors' Relief Act by virtue of this Agreement, shall receive a vacation, as set forth above. The number of days after his return prior to January 1 of the year in which the vacation is to be granted, which a serviceman may have missed from work and still qualify for the vacation shall be apportioned to the time since his return to work. For example, if a serviceman has returned to work six (6) months prior to January 1 of the year in which the vacation is to be granted, he shall not have missed work more than twenty-five (25) days on which work has been made available to him. If he returned three (3) months prior to January 1 of the year in which the vacation is to be granted, he shall not have missed more than twelve (12) days on which work was made available (if a fraction results in any computation of the percentage, the next lower number of days shall be considered).

# ARTICLE 11 HOLIDAYS

The following are considered as holidays:

| | |
|---|---|
| New Year's Day | Independence Day |
| Good Friday | Labor Day |
| Memorial Day | Thanksgiving Day |
| Dr. Martin Luther King's Birthday | Christmas Day |

Employees will work their regular schedule, but for each holiday receive an alternate day off with pay which must be taken within three (3) months of the holiday.

To be eligible for the holiday, an Employee must work at least two (2) of his regularly scheduled shifts, in the calendar week in which the holiday occurs, one of which shall be the day before the holiday if it is scheduled within his work week, unless authorized to have personal time off by management in advance.

The Company shall post a list showing the number of people who will be off on a given holiday. Those interested in getting the day off will sign such a list. If too many Employees request the day off, the Company will assign the people off on a rotational seniority basis by shift, location and previous holidays granted. The notice will be posted seven (7) days prior to the holiday and the list of the people allowed to be off shall be posted at least three (3) days prior to the holiday, except when the Company cannot meet both of these factors.

# ARTICLE 12 UNIFORMS AND PERSONAL APPEARANCE

The Company will pay the total cost of certain parts of the first (1") uniform that consists of and replace the same as follows:

(1)    I.D. - Every year, to be issued by City
(1)    Outdoor Parka - Every two (2) years
(1)    Cap - Every two (2) years

(2)    Ties - Every two (2) years
(1)    Sweater - Every year
(1)    Name Tag - Every four (4) years
(4)    Shirts – Must be of uniform specification and may be purchased from the Company (buy two, get one free). Employees may also purchase their own shirts – the Company will logo them for free.

The Employee shall be required to provide all other parts of their uniform at the Company's cost. Employees will be expected to provide certain non-distinctive elements of their uniform. Any logos or distinctive uniform components that could not be considered ordinary street wear will be provided by the Company.

Each Sky Cap is responsible for the upkeep of his specified uniforms. The uniform must be kept clean and neat, pressed and brushed as necessary, and replaced when it becomes worn to the degree of reflecting a degrading appearance. Any Employee may be disciplined who reports for duty wearing a torn, stained or unsightly uniform. The Company reserves the right to inspect and insist on a uniform that is free and void of rips and tears.

The hair must compliment the wearing of the hat and not present the impression that the hat is too small.

The following uniform components of latest uniform specified are to by maintained by each Sky Cap:

1)    Sky Cap parka – uniform issue.
2)    Shirts, white, 65% polyester, 35% cotton. You are to wear long sleeves or short sleeves as will be designated in advance by posted notice. Sleeves are not to be rolled.
3)    Tie – uniform issue
4)    Name tag – worn on hat – uniform issue
5)    Laminated Airport I.D.
6)    Shoes – all black leather with plain toe - shined
7)    Hat – uniform issue, with inside form inserted
8)    Belt – plain black leather, with plain buckle
9)    Socks – plain, black
10)    Gloves – black leather or wool
11)    Sweater – Black v-neck pullover. This must be worn with your tie and have a company logo on the upper left hand side.

12)    Trousers – Black or uniform specifications

The Employee shall be required to properly maintain and care for their uniform and all component parts thereof. In the event that any part of the uniform and component parts thereof of an Employee need to be replaced prior to the scheduled replacement set forth above, the Employee shall be required to replace the same at the Employee's sole cost and expense.

The uniform requirements for part-time Employees will be at the discretion of management and cost will be absorbed by the Employee.

The new Employee who has not yet received his new uniform will also be the exception to the uniform requirement, but his dress requirements will be exacted by management and he will be expected to conform to that standard as will the part-time Employee.

Losses and repairs are the individuals responsibility and items are expected to be replaced before they are too worn to be used.

Disciplinary action (for not adhering to the dress code):

| | | |
|---|---|---|
| 1st offense | - | Employee suspended from work for the remainder of that day and will receive a written letter |
| 2nd offense | - | Same as first offense |
| 3rd offense | - | Three (3) days suspension and a written letter |
| 4th offense | - | One (1) week suspension and a written letter |
| 5th offense | - | Discipline up to and including discharge |

Employees must punch into and out of work fully dressed.

# ARTICLE 13 SUBCONTRACTING AND DIVERSION OF WORK

For the purpose of preserving work and job opportunities for the Employees covered by this Agreement, the Company agrees that no operation, work or services of any kind, nature or type covered by, or presently performed or hereafter assigned to the collective bargaining unit by the Company will be subcontracted, transferred, leased, diverted, assigned or conveyed in whole or in

part, (hereinafter referred to as "divert" or "subcontract"), by the Company to any other plant,
business, person, or non-unit Employees, or to any other mode of operation, unless specifically
provided for and permitted by this Agreement.

In addition, the Company agrees that it will not, as hereinafter set forth, subcontract or divert the
work presently performed by, or hereafter assigned to, its Employees to other business entities
owned and/or controlled by the Company or its parent, subsidiaries or affiliates.

The parties agree that for the purpose of this Article, it shall be presumed that a diversion of work
in violation of this Agreement occurs when work presently and regularly performed by, or
hereafter assigned to, Employees of the Company has been lost and the lost work is being
performed in the same manner by an entity owned and/or controlled by the Company, its parent,
or a subsidiary, within sixty (60) days of the loss of the work.

The Company may articulate a legitimate reason for such apparent diversion of work and the
burden of proving such reason shall be upon the Employee.

## ARTICLE 14 JURY DUTY

Employees who are required to serve on jury and do so serve shall receive a full week's pay for
each week serving.  Any payments which the Employee receives for such jury service shall be
turned over to the Company.

## ARTICLE 15 LEAVE OF ABSENCE

The Company will abide by the terms of the Selective Service Act of 1948, as amended, with
regard to absence for military service.

Leave of absence will be granted by the Company in writing for good and sufficient reason as
determined by the Company to Employees who request such leaves of absence in writing.
Employees who take gainful employment during such leaves of absence will be discharged and lose
all seniority under this Agreement.

When an Employee returns to work after prolonged sickness or injury, the Company reserves the
right to get medical clearance from a doctor of the Company's choice where it will endanger the

Employee or others because of physical work duties. This cost shall be borne by the Company and shall be on company time. The Company may require written verification of illness from a physician when the Employee demonstrates a suspicious pattern of absences.

When an Employee is off work due to a prolonged sickness or injury, the Employee must call in on a weekly basis (prior to Thursday), as to his work status for the next work week or provide a doctor's certificate with an expected return to work date on it.

Employees must call in to the Company at least three (3) hours prior to the start of their work shift for any absenteeism.

## ARTICLE 16 GENERAL MISCELLANEOUS

Any Employee leaving the service of the Company will, upon request of the Employee, be furnished with a letter setting forth the individual's dates of service.

If new equipment is put into service by the Company, affected Employees shall be given every opportunity to become familiar with new equipment without change of rate.

All orders, or notices to an Employee under this Agreement, involving a change in assignment, promotion, demotion and furlough shall be given in writing, a copy of which shall be mailed to the Union. When an Employee is suspended or discharged, he shall be provided with a letter setting forth the reason (e.g. violation of company policies) for such suspension or discharge.

Each Employee covered by this Agreement will be furnished with a copy of the Agreement by the Union upon request. All letters of warning or suspension shall be rescinded twelve (12) months from the date of occurrence.

## ARTICLE 17 BEREAVEMENT

Employees will be granted up to a maximum of three (3) consecutive days off for time lost with pay in the event of death in an Employee's immediate family (immediate family shall mean; mother,

father, wife, children, brother, sister, grandchildren, and current mother-in-law and current father-in-law).

## ARTICLE 18 WORKMENS COMPENSATION INSURANCE

The Company shall provide Workmen's Compensation protection for all Employees as required by law.

## ARTICLE 19 SOLICITATION AND PARKING OF CARS

Under no circumstances shall an Employee engage in solicitation, directly or indirectly. No Employee shall ever accept responsibility of any kind for a passenger's automobile. This shall include accepting keys or agreeing to inform others of the whereabouts of the driver while he is away from his car. Any Employee who violates these rules is subject to discharge.

## ARTICLE 20 DISCRIMINATION

The Company will not interfere with, restrain, or coerce the Employees covered by this Agreement because of membership in, or activity on behalf of, the Union. The Company will not discriminate with respect to hire, tenure of employment, or any term or condition of employment against any Employee covered by this Agreement because of membership in, or activity on behalf of the Union. The provisions of the Agreement shall apply to all Employees covered by this Agreement, without discrimination on account of race, color, national origin, sex or creed. Any Employee member of the Union acting in any official Union capacity whatsoever shall not be discriminated against for his acts on behalf of the Union so long as such acts do not interfere with the conduct of the Company's business, nor shall there by any discrimination against any Employee because of Union membership or activities.

## ARTICLE 21 WAGES

In Year 2004
Sky cap Wages: $3.80 per hour.
Captain Wages: $3.45 per hour.

In Year 2005 and in Year 2006
Minimum Tipped Wage
Minimum Tipped Wage plus $ .15

In the event the minimum wage is increased, Prospect Airport Services, Inc. employees covered by this agreement will receive the increase without any further negotiations between the Union and the Company.

Prospect Airport Services - Page 16

## ARTICLE 22 NO STRIKES AND NO LOCKOUTS

The Union will not call or sanction any strike or concerted work stoppage during the term of this Agreement except for the Company's failure to abide by the Arbitration Clause of this Agreement, or the Company's failure to comply with any decision of the (Arbitrator) (Arbitration Board) established hereunder within five (5) working days after such decision.

Should a strike or concerted stoppage of work by Employees of the Company other than those permitted above hereof occur during the term of this Agreement, the Union, within forty-eight (48) hours after receipt of written notice from the Company, shall be obligated to do the following things only:

1. Advise the Company in writing that the strike or stoppage has not been called or sanctioned by the Union.
2. Advise the workers that, inasmuch as no such strike or stoppage has been called or sanctioned by the Union, they are engaged in an illegal strike or stoppage and will instruct the workers to return to work immediately.
The obligation of the Union shall be limited to the performance of the acts required above and upon compliance by the Union with the provisions of this Article of this Agreement, the Union and its officers, agents, and members shall have no further liability during the term of this contract or thereafter, for any damage suffered by the Company arising from or out of any stoppage or strike. The Company will not lock out any or all of its Employees during the term of this Agreement.

## ARTICLE 23 TERM OF THE AGREEMENT

This Agreement shall become effective February 13, 2004 and shall remain in full force and effect through the last day of February 2007. This Agreement shall remain in effect from year to year thereafter unless either party gives written notice to the other party of termination ( and request to negotiate a new agreement) or a desire to modify the Agreement not less than sixty (60) days prior to the last day of February 12, 2007 or the expiration of any subsequent yearly period.

Either party may, within sixty (60) days prior to the expiration date of this Agreement, notify the other party of its desire to reopen this Agreement for the purpose of amending or renegotiating this Agreement.

In witness whereof, the parties hereto have set their hands and seals as of the day and year indicated.

FOR THE UNION:

District Lodge NO. 8
IAM & AW

Karl D. Sarpolis, Jr.
Business Representative
Date: Feb. 26, 2004

FOR THE COMPANY:

Prospect Airport Services, Inc.
2130 South Wolf Road
Des Plaines, IL 60018

Vicki L. Strobel,
President
Date: 2/26/04

Prospect Airport Services - Page 17

# EXHIBIT 4

SECOND WEEK

BARREDA, ALLAN

Week Ending 8/11/2007

SERVICES

**Wednesday 8/8/2007**
DELTA SKYCAP 6 3/4  12:45 - 21:30

**Thursday 8/9/2007**
DELTA SKYCAP 8 3/4  12:45 - 21:30

**Friday 8/10/2007** 8 1/2
DELTA BASEMENT 13:30 - 23:30

**Saturday 8/11/2007** 8 2 1/2
DELTA BASEMENT 13:30 - 23:30

(37)

| | SUN | | |
|---|---|---|---|
| In | | | |
| Yes | Lunch No | | |
| Out | | | |

| | MON | | |
|---|---|---|---|
| In | | | |
| Yes | Lunch No | | |
| Out | | | |

| | TUE | | |
|---|---|---|---|
| In | | | |
| Yes | Lunch No | | |
| Out | | | |

| | WED | | |
|---|---|---|---|
| In | 8 AUG PM 12:43 | | |
| Yes | Lunch No | | |
| Out | 9 AUG PM 7:37 | | LE |

DL

| | THURS | | |
|---|---|---|---|
| In | 9 AUG PM 12:45 | | |
| Yes | Lunch No | | |
| Out | 2130m | | |

| | FRI | | |
|---|---|---|---|
| In | 10 AUG PM 1:23 | | |
| Yes | Lunch No | | |
| Out | 0-30 M RL | | |

| | SAT | | |
|---|---|---|---|
| In | 11 AUG PM 1:36 | | |
| Yes | Lunch No | | |
| Out | 0001 m | | |

REG. HRS. WORKED _____
O.T. HRS. WORKED _____

001

---

# 1

BARREDA, ALLAN

Week Ending 8/4/2007

SERVICES

**Sunday 7/29/2007**
IDL TRAINING 6 1/2  23:30 - 23:30

**Monday 7/30/2007** 4 1/2
USAIR-TRAINING 15:30 - 0:00

**Tuesday 7/31/2007**
DL TRAINING 6 1/2  12:00 - 20:30

**Wednesday 8/1/2007**
DL TRAINING 6 1/2  12:00 - 20:30

**Thursday 8/2/2007** 4 1/4
USAIR-TRAINING 12:30 - 18:00

1230 - 1900 M
6/2 DL TRAINING

(36 3/4)

DL 25
US 11 3/4

SERVICES

| | SUN | | |
|---|---|---|---|
| In | 13 M | | |
| Yes | Lunch No | | |
| Out | 1900 ok M | | |

| | MON | | |
|---|---|---|---|
| In | 30 JUL PM 3:27 | | |
| Yes | Lunch No | | |
| Out | 30 JUL PM 8:35 | | |

| | TUE | | |
|---|---|---|---|
| In | 1200 M | | |
| Yes | Lunch No | | US |
| Out | 31 JUL PM 6:25 | | |

| | WED | | |
|---|---|---|---|
| In | 1 AUG PM 12:02 | | RL |
| Yes | Lunch No | | U |
| Out | 1 AUG PM 6:35 | | |

| | THURS | | |
|---|---|---|---|
| In | 2 AUG AM 10:11 | | MW |
| Yes | Lunch No | | |
| Out | 2 AUG PM 6:00 | | |

| | FRI | | |
|---|---|---|---|
| In | 3 AUG PM 12:2 | | |
| Yes | Lunch No | | |
| Out | 3 AUG PM 7:06 | | |

| | SAT | | |
|---|---|---|---|
| In | | | |
| Yes | Lunch No | | |
| Out | | | |

REG. HRS. WORKED _____

O.T. HRS. WORKED _____

TOTAL REG HRS WORKED _____

TOTAL O.T. HRS. WORKED _____

002

---

**EXHIBIT**

tabbies®

4

**FIRST WEEK**

P # 1
BARREDA, ALLAN

Week Ending 8/25/2007

**Sunday 8/19/2007**
USAIR 8|1|2 15:30 - 0:00

**Monday 8/20/2007**
USAIR 4|4 12:30 - 18:00

**Thursday 8/23/2007**
INT 8|2 3/4 12:00 - 20:30

**Friday 8/24/2007**
INT 8 12:00 - 20:30

**Saturday 8/25/2007** 8|2 1/2
DELTA BASEMENT 13:30 - 23:30

'S SERVICES

SUN
In 15 30 M
Yes Lunch No
Out 01 30 M

MON
In 12 30 M
Yes Lunch No
Out 26 AUG PM 5:38 ok M

TUE
In
Yes Lunch No
Out

WED
In
Yes Lunch No
Out

40|3 1/2

US 14|4
INT 18 3/4
DL 7|8 1/2

THURS
In 23 AUG AM 11:54
Yes Lunch No
Out 23.15 15

FRI
In 1200
Yes Lunch No
Out 24 AUG PM 8:29

SAT
In 25 AUG PM 1:26
Yes Lunch No
Out 2400 M

REG. HRS. WORKED _____
O.T. HRS. WORKED _____

001

---

**SECOND WEEK**

P # 1
BARREDA, ALLAN

Week Ending 8/18/2007

**Sunday 8/12/2007** 8|2
DELTA BASEMENT 13:30 - 23:30

**Wednesday 8/15/2007** M
DELTA SKYCAP 5 12:45 - 21:30

**Thursday 8/16/2007** 6 1/4
DELTA SKYCAP 12:45 - 21:30

**Friday 8/17/2007** 8|2
USAIR 15:30 - 0:00

**Saturday 8/18/2007**
USAIR 8 15:30 - 0:00

39 1/2

US 18
DL 2 1/2

'S SERVICES

SUN
In 13 30 M6
Yes Lunch No
Out 23 30 M

MON
In
Yes Lunch No
Out

TUE
In
Yes Lunch No
Out

WED
In M 13.5
Yes Lunch No
Out 15 AUG PM 6:35

THURS
In 16 AUG PM 12:45
Yes Lunch No
Out 16 AUG PM 7:00

FRI
In 15.30 M
Yes Lunch No
Out 0200

SAT
In 15 30 M
Yes Lunch No
Out 0001 R

TOTAL REG. HRS. WORKED _____
REG. HRS. WORKED _____
O.T. HRS. WORKED _____
TOTAL O.T. HRS. WORKED _____

001







# FIRST WEEK

**# 1**

BARREDA, ALLAN

Week Ending 10/6/2007

**Sunday 9/30/2007**
DELTA SKYCAP    6    12:45 - 21:30

**Monday 10/1/2007**
USAIR    5    12:30 - 18:00

**Tuesday 10/2/2007**
USAIR    8|2    15:30 - 0:00

**Wednesday 10/3/2007**
INT    7    12:00 - 20:30

**Saturday 10/6/2007**
DELTA BASEMENT    13:30 - 23:30

Week Ending 9/29/2007

**Sunday 9/23/2007**
USAIR    8½    15:30 - 0:00

**Monday 9/24/2007**
USAIR    4½    12:30 - 18:00

**Tuesday 9/25/2007**
DELTA BASEMENT    13:30 - 23:30

**Wednesday 9/26/2007**
US AIRWAYS WES    12:30 - 21:00

**Thursday 9/27/2007**
USAIR    8½    15:30 - 0:00

REG. HRS. WORKED

O.T. HRS. WORKED

REG. HRS. WORKED

O.T. HRS. WORKED

TOTAL REG. HRS. WORKED

TOTAL O.T. HRS. WORKED

001    001



# 1

BARREDA, ALLAN

Week Ending 10/20/2007

SERVICES

**Monday 10/15/2007**
USAIR   8|2   15:30 - 0:00

**Tuesday 10/16/2007**
USAIR   8|2   15:30 - 0:00

**Thursday 10/18/2007**
USAIR   4|4   12:30 - 18:00

**Friday 10/19/2007**
US AIRWAYS WES   12:30 - 21:00

**Saturday 10/20/2007**   8|    13:30 - 23:30
DELTA BASEMENT

37¹/₄

US 21¹/₄
USW 7
DL 9

REG. HRS. WORKED _____
O.T. HRS. WORKED _____

---

# 1

BARREDA, ALLAN

Week Ending 10/13/2007

SERVICES

**Sunday 10/7/2007**
US AIRWAYS WES   12:30 - 21:00

**Monday 10/8/2007**
DELTA BASEMENT   13:30 - 23:30

**Tuesday 10/9/2007**
DELTA SKYCAP   12:45 - 21:30

**Wednesday 10/10/2007**
USAIR   12:30 - 18:00

**Saturday 10/13/2007**
USAIR   8   15:30 - 0:00

40|13/4

OS.W 7³/₄

DL 21¹/₄
US 11|1⁸/₄

REG HRS WORKED _____
O T HRS WORKED _____

TOTAL REG HRS WORKED _____
TOTAL O.T. HRS WORKED _____



**FIRST WEEK**

BARREDA, ALLAN

Week Ending 11/3/2007

| Sunday 10/28/2007 | US AIRWAYS WES | 12:30 - 21:00 |
| Monday 10/29/2007 | USAIR | 12:30 - 18:00 |
| Tuesday 10/30/2007 | DELTA BASEMENT | 13:30 - 23:30 |
| Wednesday 10/31/2007 | DELTA BASEMENT | 13:30 - 23:30 |
| Thursday 11/1/2007 | USAIR | 15:30 - 0:00 |

US.W8
US 10
DL 22

REG. HRS. WORKED
O T HRS. WORKED

001

**SECOND WEEK**

BARREDA, ALLAN

Week Ending 10/27/2007

| Sunday 10/21/2007 | USAIR | 12:30 - 18:00 |
| Tuesday 10/23/2007 | DELTA BASEMENT | 13:30 - 23:30 |
| Thursday 10/25/2007 | USAIR | 15:30 - 0:00 |
| Friday 10/26/2007 | DELTA SKYCAP | 12:45 - 21:30 |
| Saturday 10/27/2007 | DELTA SKYC | 12:45 - 21:30 |

DL: 18½
US: 13

CUST TR: 1

REG. HRS. WORKED
O T HRS. WORKED

TOTAL REG HRS WORKED
TOTAL O T HRS. WORKED

00





**FIRST WEEK**

# 1
BARREDA, ALLAN

Week Ending 12/1/2007

**Sunday 11/25/2007** 6
DELTA SKYCAP    12:45 - 21:30

**Monday 11/26/2007**
USAIR    8½    15:30 - 0:00

**Tuesday 11/27/2007**    6/4
US AIRWAYS WES    12:30 - 21:00

X

**Thursday 11/29/2007**
MORNING-B  7    5:00 - 13:30

**Friday 11/30/2007**    8 2/2
DELTA BASEMENT    13:30 - 23:30

X

(39¾)

DL 16½
US 10
US,W 6¼
INT 7

SUN    In  12:45 PM
Yes   Lunch No
Out  25 NOV 18:51
LE

MON    15:30 04 PM
Yes   Lunch No
Out  02 AM

TUE    In  12:30
Yes   Lunch No
Out  27 NOV 13:12
LE

WED    In
Yes   Lunch No
Out

THURS    In 29 NOV 5:07    RL
Yes   Lunch No
Out 29 NOV 12:28    LE

FRI    In 30 NOV 13:20
Yes   Lunch No
Out  24:00

SAT    In
Yes   Lunch No
Out

REG. HRS WORKED _____
O.T. HRS WORKED _____

001

# 1
BARREDA, ALLAN

Week Ending 11/24/2007

**Monday 11/19/2007**    4¾
DELTA SKYCAP    12:45 - 21:30

**Tuesday 11/20/2007**
USAIR    8    15:30 - 0:00

X

**Thursday 11/22/2007**    7/4
DELTA BASEMENT    13:30 - 23:30

**Friday 11/23/2007**  5    12:45 - 21:30

**Saturday 11/24/2007**    8
US AIRWAYS WES    12:30 - 21:00

DL 17
US 8
US,W 8

(33)

SUN    In
Yes   Lunch No
Out

MON    In  RL
19 NOV 7:46
Yes   Lunch No
Out  19 NOV 18:2

TUE    15:30
Yes   Lunch No
Out  0001

WED    In
Yes   Lunch No
Out

THURS    In  CLD RL
22 NOV 16:1
Yes   Lunch No
Out  23 30 AM

FRI    In 12.45 PM
Yes   Lunch No
Out 23 NOV 17:3
LE

SAT    In 12.30 MG
Yes   Lunch No
Out  21 00

TOTAL REG. HRS WORKED
REG. HRS WORKED _____
O.T. HRS WORKED _____    TOTAL O.T. HRS WORKED

00



**# 12**
BARREDA, ALLAN
Week Ending 12/15/2007

SECOND WEEK
**# 1**
BARREDA, ALLAN
Week Ending 12/8/2007

SERVICES

Monday 12/10/2007
USAIR    15:30 - 0:00

Tuesday 12/11/2007
USAIR    12:30 - 18:00

Wednesday 12/12/2007
DELTA BASEMENT    13:30 - 23:30

Thursday 12/13/2007
DELTA SKYCAP    12:45 - 21:30

Friday 12/14/2007
USAIR    12:30 - 18:00

Sunday 12/2/2007
USAIR    12:30 - 18:00

Monday 12/3/2007
MORNING-D    4:00 - 12:00

Tuesday 12/4/2007
DELTA BASEMENT    13:30 - 23:30

Thursday 12/6/2007
DELTA SKYCAP    12:45 - 21:30

Saturday 12/8/2007
USAIR    15:30 - 0:00

REG. HRS WORKED
O T HRS. WORKED

REG. HRS WORKED
O T HRS. WORKED

TOTAL REG. HRS. WORKED
TOTAL O T. HRS. WORKED

001                                001



**B**

**# 1**

BARREDA, ALLAN

Week Ending 12/29/2007                    SERVICES

Sunday 12/23/2007
USAIR    8|3    15:30 - 0:00

Monday 12/24/2007
USAIR    5    12:30 - 18:00

Tuesday 12/25/2007
DELTA BASEMENT    13:30 - 23:30    8|4

Wednesday 12/26/2007
US AIRWAYS WES    12:30 - 21:00    7|2

Thursday 12/27/2007
DELTA SKYCAP    12:45 - 21:30    6³/4

MON
In    15³⁰ₘ
Yes    Lunch No
Out    03:00 pm

TUE
In    12³⁰ₚₘ
Yes    Lunch No
Out    18ₘ

WED
In    13³⁰ₘₑ
Yes    Lunch No
Out 26DEC 0:59

40|2|4

THURS
In    1230ₘ
Yes    Lunch No
Out 26DEC20:31    LE

US 16
DX 16|2|2|4
US.W 7|2

In    10ᵘ⁵ᵃ
Yes    Lunch No
Out 27DEC19:34    LE

FRI
Yes    Lunch No
Out

SAT
Yes    Lunch No
Out

REG. HRS. WORKED

O.T. HRS. WORKED

001

**B**

**# 1**

BARREDA, ALLAN

Week Ending 12/22/2007                    SERVICES

Monday 12/17/2007
MORNING-B    5|4    5:00 - 13:30

Tuesday 12/18/2007
USAIR    5    12:30 - 18:00

Wednesday 12/19/2007
INT    6|2    12:00 - 20:30

Thursday 12/20/2007
US AIRWAYS WES    12:30 - 21:00    8|3|2

Friday 12/21/2007
DELTA BASEMENT    13:30 - 23:30    8|4

MON
In
Yes    Lunch No
Out    0L

TUE
In 17DEC 5:23
Yes    Lunch No
Out 17DEC 1:03    LE

In    1230 ᵖ
Yes    Lunch No
Out    18 00 ₚₘ

40|3|4

WED
In    12.0:04
Yes    Lunch No
Out 19DEC 19:07    LE

INT 12|4
US 5
US.W 11|2
DL 11|4 |3|4

THURS
In    1230ₘ
Yes    Lunch No
Out    030 ₘ

FRI
In    13³⁰ ᵖ
Yes    Lunch No
Out    01³⁰ ₘ

SAT
In
Yes    Lunch No
Out

TOTAL REG. HRS. WORKED

TOTAL O.T. HRS. WORKED

001

## FIRST WEEK

**# 1**

BARREDA, ALLAN

Week Ending 1/26/2008

'S SERVICES

| Monday 1/21/2008 | 6½ | 12:30 - 21:00 |
| US AIRWAYS WES | | |
| Tuesday 1/22/2008 | 5 | 12:30 - 18:00 |
| USAIR | | |
| Thursday 1/24/2008 | 5 | 12:30 - 18:00 |
| USAIR | | |
| Friday 1/25/2008 | 8 | 15:30 - 0:00 |
| USAIR | | |
| Saturday 1/26/2008 | 5 | 12:00 - 20:30 |
| INT | | |

**SUN** — In / Yes Lunch No / Out

**MON** — In 12.30 / Yes Lunch No / Out 21 JAN 19:25 LE

**TUE** — In 1230 / Yes Lunch No / Out 18:00 mg

**WED** — In / Yes Lunch No / Out

**THURS** — In 1230 / Yes Lunch No / Out 18:00

**FRI** — In 1530 / Yes Lunch No / Out 01:00 mg

**SAT** — In 12:00 mg / Yes Lunch No / Out 26 JAN 17:33 LE

( 30 42 )

US.N 6 42

US 19
INT 5

REG. HRS. WORKED _____

O.T. HRS. WORKED _____

---

## SECOND WEEK

**# 1**

BARREDA, ALLAN

Week Ending 1/19/2008

T SERVICES

| Monday 1/14/2008 | 5 | 12:30 - 18:00 |
| USAIR | | |
| Tuesday 1/15/2008 | 5 | 12:30 - 18:00 |
| USAIR | | |
| Wednesday 1/16/2008 | 7¼ | 12:45 - 21:30 |
| DELTA SKYCAP | | |
| Thursday 1/17/2008 | 5 | 12:00 - 20:30 |
| INT | | SUSP |
| Friday 1/18/2008 | 8½ | 15:30 - 0:00 |
| USAIR | | |

**SUN** — In / Yes Lunch No / Out

**MON** — In 12:30 MG / Yes Lunch No / Out 1800 mg

**TUE** — In 1230 / Yes Lunch No / Out 1800 LE

**WED** — In 16 JAN 12:47 / Yes Lunch No / Out 16 JAN 19:03 LE

**THURS** — In SUSP / Yes Lunch No / Out

**FRI** — In 1530 mg / Yes Lunch No / Out 01:30 mg

**SAT** — In / Yes Lunch No / Out

( 26 ¾ )

US 19½
DL 7¼
INT —

REG. HRS. WORKED _____      TOTAL REG. HRS. WORKED _____

O.T. HRS. WORKED _____      TOTAL O.T. HRS. WORKED _____

001

001



**B**

**# 1**

BARREDA, ALLAN

Week Ending 1/12/2008

Monday 1/7/2008
USAIR  12.30 - 18:00

Tuesday 1/8/2008
US AIRWAYS WES  12:30 - 21:00

Wednesday 1/9/2008
INT  12:00 - 20:30

Thursday 1/10/2008
USAIR  15:30 - 0:00

Friday 1/11/2008
US AIRWAYS WES  12:30  21:00

**B**

**# 1**

BARREDA, ALLAN

Week Ending 1/5/2008

Sunday 12/30/2007
US AIRWAYS WES  12:30 - 21:00

Tuesday 1/1/2008
DELTA BASEMENT  13:30 - 23:30

Thursday 1/3/2008
USAIR  12:30 - 18:00

Friday 1/4/2008
DELTA SKYCAP  12:45 - 21:30

Saturday 1/5/2008
DELTA BASEMENT  13:30 - 23:30



**#3 BARREDA, ALLA**

Sunday 02/03/2008
Off

Monday 02/04/2008
Off

Tuesday 02/05/2008
USAIR WEST 12:30 21:00

Wednesday 02/06/2008
INT 12:00 20:30

Thursday 02/07/2008
DELTA BASE 13:30 23:30

Friday 02/08/2008
USAIR EAST 12:30 18:00

Saturday 02/09/2008
DELTA SKYC 12:45 21:30

REG. HRS. WORKED _____

O T HRS. WORKED _____

BARREDA, ALLAN

Week Ending 2/2/2008

Tuesday 1/29/2008
DELTA SKYCAP 12:45 - 21:30

Wednesday 1/30/2008
DELTA SKYCAP 12:45 - 21:30

Thursday 1/31/2008
DELTA BASEMENT 13:30 - 23:30

Friday 2/1/2008
INT 12:00 - 20:30

Saturday 2/2/2008
USAIR 12:30 - 18:00

REG. HRS. WORKED _____

O T HRS. WORKED _____

TOTAL REG. HRS. WORKED _____

TOTAL O T HRS. WORKED _____



#4 BARREDA, ALLAN

**Sunday 02/17/2008** Off

**Monday 02/18/2008** US EAST SKYCAP 15:30 00:00

**Tuesday 02/19/2008** DL BASEMENT 13:30 23:30

**Wednesday 02/20/2008** US EAST SKYCAP 12:30 18:00

**Thursday 02/21/2008** DL SKYCAP 12:45 21:30

**Friday 02/22/2008** US WEST SKYCAP 12:30 21:00

**Saturday 02/23/2008** Off

US.E 13 3/4
DL 16
US.W 8

#4 BARREDA, ALLEN

**Sunday 02/10/2008** US EAST SKY 12:30

**Monday 02/11/2008** Off

**Tuesday 02/12/2008** US WEST SK 12:30 21:00

**Wednesday 02/13/2008** Off

**Thursday 02/14/2008** DL BASEMEN 13:30 23:30

**Friday 02/15/2008** DL SKYCAP 12:45 21:30

**Saturday 02/16/2008** US EAST SKY 15:30 00:00

USE 14
USW 6
DL 17 1/4

RE3 HRS. WORKED
O.T HRS. WORKED

001





**BARREDA**
**#1**
ALLAN (R00600)
Week Ending: 3/22/2008

| Day | | In | Lunch | Out |
|---|---|---|---|---|
| Sun 03/16/08 | Off | In | Yes  Lunch  No | Out |
| Mon 03/17/08 | US WEST SKYCAP  12:30 21:00  8½ | In  17:00 | Yes  Lunch  No | Out  2130 ph |
| Tue 03/18/08 | US EAST SKYCAP  15:30 00:00  8/1 | In  15:30 ma | Yes  Lunch  No | Out  0100 |
| Wed 03/19/08 | DL BASEMENT  8/1½ | In  19 MAR 13:25 | Yes  Lunch  No | Out  0300 |
| Thu 03/20/08 | US EAST SKYCAP  12:30 18:00  6½ | In  1230 | Yes  Lunch  No | Out  20 MAR 19:30 |
| Fri 03/21/08 | Off | In | Yes  Lunch  No | Out |
| Sat 03/22/08 | HO  12:00 12:00 | In  HO | Yes  Lunch  No | Out |

REG HRS WORKED: 33½  OT HRS WORKED: ___

US 15½
USW 8½
DL 9½

Hol 8

**BARREDA**
**#1**
ALLAN (R00600)
Week Ending: 3/15/2008

| Day | | In | Lunch | Out |
|---|---|---|---|---|
| Sun 03/09/08 | Off | In | Yes  Lunch  No | Out |
| Mon 03/10/08 | Off | In | Yes  Lunch  No | Out |
| Tue 03/11/08 | US EAST SKYCAP  12:30 18:00  5 | In  1230 | Yes  Lunch  No  11 MAR 17:45 | Out |
| Wed 03/12/08 | US EAST SKYCAP  15:30 00:00  8½ | In  1530 | Yes  Lunch  No | Out  0030 |
| Thu 03/13/08 | DL SKYCAP  12:45 21:30  5¾ | In  1245 | Yes  Lunch  No  13 MAR 19:56 LE | Out |
| Fri 03/14/08 | US EAST SKYCAP  12:30 18:00  4½ | In  1230 | Yes  Lunch  No  14 MAR 17:57 LE | Out |
| Sat 03/15/08 | DL BASEMENT  13:30 23:30  8  3¾ | In  15 MAR 13:27 | Yes  Lunch  No | Out  0130 ph |

REG HRS WORKED: 35½  OT HRS WORKED: ___

US E 18
DL 17½

**B**

## FIRST WEEK

### BARREDA

PAY ENDING

**#1 ALLAN**

NAME

Week Ending: 4/5/2008

PROSPECT AIRPORT SERVICES

| | | | In | Out | Lunch |
|---|---|---|---|---|---|
| 03/30/2008 | DL SKYCAP 12:45 18:15 | SUN | 30 MAR 12:57 | 30 MAR 18:24 | 5\|2 / Yes / No RZ / RW |
| 03/31/08 | Off | MON | | | Yes / No (X) |
| 04/01/08 | US WEST SKYCAP 12:30 21:00 | TUE | 12:30 | 1 APR 18:51 | 5 3/4 / Yes / No / LE |
| 04/02/08 | Off INT 12:00 20:30 | WED | 2 APR 11:58 | 2 APR 15:22 | 3 1/4 / Yes / No / LE |
| 04/03/08 | US EAST SKYCAP 12:30 18:00 | THURS | 3 APR 12:24 | 3 APR 18:28 | 5\|2 / Yes / No / MW |
| 04/04/08 | US WEST SKYCAP 12:30 21:00 | FRI | 12:30 | 4 APR 19:20 | 6 1/4 / Yes / No / LE |
| 04/05/08 | Off | SAT | | | Yes / No (X) |

REG. HRS. WORKED   26 1/4

O.T. HRS. WORKED _____

DL SKYCAP 5\|2
US WEST SKYCAP 12
INT 3 1/4
US EAST SKYCAP 5\|2 (00)

---

**B**

### BARREDA

PAY ENDING

**#1 ALLAN (R0060**

NAME

Week Ending: 3/29/2008

PROSPECT AIRPORT SERVICES

| | | | In | Out | Lunch |
|---|---|---|---|---|---|
| 03/23/2008 | US EAST SKYCAP 12:30 18:00 | SUN | 12:30 MG | 18:00 MG | 5 / Yes / No |
| 03/24/08 | US EAST SKYCAP 15:30 00:00 | MON | 15:30 MG | 2400 MW | 8 / Yes / No |
| 03/25/08 | Off | TUE | | | Yes / No (X) |
| 03/26/08 | Off 12-20:30 INT | WED | 1200 p. | 2030 m | 8 / Yes / No |
| 03/27/08 | DL SKYCAP 12:45 21:30 | THURS | 12:45 m | 27 MAR 18:37 | 5 3/4 / Yes / No / LE |
| 03/28/08 | Off | FRI | | | Yes / No (X) |
| 03/29/08 | DL BASEMENT 13:30 23:30 | SAT | 29 MAR 13:56 | 2330 m | 8 1\|2 / Yes / No / RL |

REG. HRS. WORKED   36 1/2

O.T. HRS. WORKED _____

DL 15 1/4
INT 8
USE 13

(00)

**BARREDA** B

PAY ENDING  #1 ALLAN
Week Ending: 4/19/2008
NAME

## PROSPECT AIRPORT SERVICES

| | | |
|---|---|---|
| Off 04/13/08 | SUN | In ___ / Yes ___ Lunch No ___ / Out ___ |
| US EAST  16:30 00:00 SKYCAP  04/14/08  8/1 | MON | In 15:30 pm / Yes Lunch No ___ / Out 0100 M |
| US WEST  12:30 21:00 SKYCAP  04/15/08  6 | TUE | In 12:30 M / Yes Lunch No ___ / Out 15 APR PM 7:07 |
| Off 04/16/08  12--15  5⁴  INT | WED | 16 APR AM 11:58 In / Yes Lunch No ___ / Out 16 APR PM 5:57 |
| DL SKYCAP  12:45 18:15  04/17/08  5⁴ | THURS | In 17 APR PM 12:42 / Yes Lunch No ___ / Out 17 APR PM 6:10 |
| Off 04/18/08  X | FRI | In 19 APR PM 12:29 / Yes Lunch No ___ / Out 19 APR PM 1:47 |
| US EAST SKYCAP 12:30 18:00  04/19/08  1¼ | SAT | In / Yes Lunch No ___ / Out |

REG. HRS. WORKED  27⁴⁴
O.T. HRS  WORKED  ___

DL 5½    INT 5½
US 10¼
USW 6

001

---

**BARREDA** B

PAY ENDING  #1 ALLAN
Week Ending: 4/12/2008
NAME

## PROSPECT AIRPORT SERVICES

| | | |
|---|---|---|
| Off 04/06/08 | SUN | In ___ / Yes Lunch No ___ / Out |
| DL BASEMENT  13:30 23:30  04/07/08  8/2 | MON | In 7 APR 13:24 / Yes Lunch No ___ / Out 2330 M |
| US EAST SKYCAP 12:30 18:00  04/08/08  5 | TUE | In 12:30 M / Yes Lunch No ___ / Out 8 APR 18:18 |
| Off 04/09/08  X | WED | In 10 APR 12:39 / Yes Lunch No ___ / Out 10 APR 17:56 |
| US EAST SKYCAP 12:30 18:00  04/10/08  4³⁄⁴ | THURS | In / Yes Lunch No ___ / Out 10 APR 17:57 |
| US WEST  12:30 21:00 SKYCAP  04/11/08  8² | FRI | In 12:30 M / Yes Lunch No ___ / Out 21:30 M |
| US EAST SKYCAP 15:30 00:00  04/12/08  8 | SAT | In 15:30 M / Yes Lunch No ___ / Out 00:00 M |

REG. HRS. WORKED  36¼
O.T. HRS. WORKED  ___

DL 1C
USN 8/12
USE 17³⁄₁

00

FIRST WEEK

**BARREDA**

PAY ENDING   **#1 ALLAN**

NAME   Week Ending: 4/26/2008

**B**

## PROSPECT AIRPORT SERVICES

| | | | |
|---|---|---|---|
| **DL SKYCAP** 12:45 18:15 | | | RL |
| 04/20/08 | 5|4 | SUN | In 20 APR PM 12:56 |
| | | | Yes   Lunch No |
| | | | O 20 APR PM 6:15 |
| **DL BASEMENT** 13:30 23:30 | | | LW |
| 04/21/08 | 8|3|4 | MON | In 21 APR PM 1:43  CH (TRAIN) |
| | | | Yes   Lunch No |
| | | | Out 2330  MP |
| **US EAST SKYCAP** 15:30 00:00 | | | |
| 04/22/08 | 8|1 | TUE | In 22 APR PM 3:30  LW |
| | | | Yes   Lunch No |
| | | | Out 0100 |
| **US WEST SKYCAP** 12:30 21:00 | | | RL |
| 04/23/08 | 6|2 | WED | In 23 APR PM 12:35 |
| | | | Yes   Lunch No |
| | | | Out 23 APR PM 7:28  LE |
| Off | | | |
| 04/24/08 | INT 12-18  (5|2) | THURS | In 12.00 w |
| | | | Yes   Lunch No |
| | | | Out 18.00 w |
| Off | | | |
| 04/25/08 | | FRI | In |
| | | | Yes   Lunch No |
| | | | Out |
| Off | | | |
| 04/26/08 | | SAT | In |
| | | | Yes   Lunch No |
| | | | Out |

REG HRS WORKED   36   DL 15
O T HRS WORKED        US E 8
                      US W 6|2
                      INT 5|2

001

## Left Card

**FIRST WEEK**
*BARREDA*  R00600
**PAY ENDING**  *#1 ALLAN*
**NAME**  Week Ending: 5/10/2008

**B**

### PROSPECT AIRPORT SERVICES

| Day | Location | Hours | In / Yes / Out |
|---|---|---|---|
| SUN 05/04/08 | DL SKYCAP 12:45 18:15 | 6½ | In 6 2 45 pM / Lunch No ✓ / Out 4 MAY PM 6:42 |
| MON 05/05/08 | Off | | In / Lunch No / Out ✗ |
| TUE 05/06/08 | US EAST SKYCAP 15:30 00:00 | 8 | In 1530 / Lunch No / Out 24.00 M |
| WED 05/07/08 | Off | | In / Lunch No / Out ✗ |
| THURS 05/08/08 | DL BASEMENT 13:30 23:30 | 8/4 | In 8 MAY PM 1:28 / Lunch No / Out 0130 M RL |
| FRI 05/09/08 | US EAST SKYCAP 12:30 18:00 | 5 | In 9 MAY PM 12:36 RL / Lunch No / Out 9 MAY 18:00 RW |
| SAT 05/10/08 | US EAST SKYCAP 15:30 00:00 | 8 | In 10 MAY 15:23 / Lunch No / Out 24.00 RW |

REG. HRS. WORKED 39½   DL 18½   USE 21
O.T. HRS. WORKED _____

001

## Right Card

**FIRST WEEK**
*BARREDA*  R00
**PAY ENDING**  *#1 ALLAN*
**NAME**  Week Ending: 5/3/2008

**B**

### PROSPECT AIRPORT SERVICES

| Day | Location | Hours | In / Yes / Out |
|---|---|---|---|
| SUN 04/27/08 | US WEST SKYCAP 12:30 21:00 | 7½ | In 12 30 MG / Lunch No / Out 20 30 M |
| MON 04/28/08 | DL SKYCAP 12:45 18:15 | 5½ | In 12 45 MM / Lunch No / Out 28 APR PM 6:15 M |
| TUE 04/29/08 | DL BASEMENT 13:30 23:30 | 8/2 | In 29 APR PM 1:29 / Lunch ½ ⊗ / Out 2330 |
| WED 04/30/08 | Off | | In / Lunch No / Out ✗ |
| THURS 05/01/08 | US EAST SKYCAP 12:30 18:00 | 5 | In 1 MAY 12:38 RL / Lunch No / Out 1 MAY PM 6:10 RW |
| FRI 05/02/08 | Off | | In / Lunch No / Out |
| SAT 05/03/08 | US EAST SKYCAP 15:30 00:00 | 8 | In 15 30 MT / Lunch No / Out 0001 PM |

REG. HRS. WORKED 36   USE 13  USW 7½  DL 15½
O.T. HRS. WORKED —

001



**FIRST WEEK**

**BARREDA**
**#1 ALLAN**

**PAY ENDING**

**NAME** — Week Ending: 5/17/2008

R00600

**B**

### PROSPECT AIRPORT SERVICES

| | | |
|---|---|---|
| Off 05/11/08 | SUN | In ✗ / Yes ✗ Lunch No / Out |
| US EAST SKYCAP 12:30 18:00 — 5 05/12/08 | MON | In 12³⁰ ᴍ / Yes Lunch No / Out 1800 |
| US EAST SKYCAP 15:30 00:00 05/13/08 | TUE | In clol / Yes Lunch No / Out 5k |
| Off 05/14/08 | WED | In / Yes Lunch No / Out |
| Off 05-13³⁰ (T5) 6³/4 05/15/08 | THURS | In 0500 ✓ / Yes Lunch No / Out 5 MAY 12:21 LE |
| US EAST SKYCAP 12:30 18:00 5³/4 05/16/08 | FRI | In 1230 / Yes Lunch No / Out 6 MAY 18:39 |
| DL BASEMENT 13:30 23:30 8/2 05/17/08 | SAT | In 7 MAY 13:23 / Yes Lunch No / Out 2330 |

REG. HRS. WORKED 27¹/2  USE 10³/4
O.T. HRS. WORKED ___  T5 6³/4  DL 10

001

**FIRST WEEK**

**BARREDA**
**#1 ALLAN**

**PAY ENDING**

**NAME** — Week Ending: 5/24/2008

R00600

**B**

### PROSPECT AIRPORT SERVICES

| | | |
|---|---|---|
| US WEST SKYCAP 12:30 21:00 WALTON 8 05/18/08 | SUN | In 12³⁰ ᴍ / Yes Lunch No / Out 2100 |
| US WEST SKYCAP 12:30 21:00 8¹/4 05/19/08 | MON | In 18 MAY 12:25 / Yes Lunch No ✓ / Out 18 MAY 22:50 |
| DL SKYCAP 12:45 18:15 5⁴/2 05/20/08 | TUE | In 1245 ᴍ / Yes Lunch No / Out 20 MAY 18:16 |
| Off 05/21/08 | WED | In ✗ / Yes Lunch No / Out |
| US EAST SKYCAP 15:30 00:00 8⁴/2 05/22/08 | THURS | In 1530 ʜʟ / Yes Lunch No / Out 0030 |
| DL SKYCAP 12:45 18:15 5⁴/4 05/23/08 | FRI | In 23 MAY 13:01 / Yes Lunch No / Out 23 MAY 18:16 |
| Off 05/24/08 | SAT | In ✗ / Yes Lunch No / Out |

REG. HRS. WORKED 35⁴/2  USW 16⁴/4
O.T. HRS. WORKED ___  DL 10³/4  USE 8⁴/2

001



**Left card:**

FIRST WEEK
*BARREDA*
PAY ENDING
#1 ALLAN
NAME
Week Ending: 5/31/2008

**B**

PROSPECT AIRPORT SERVICES

| | | | In | Out | |
|---|---|---|---|---|---|
| US EAST SKYCAP | 15:30 00:00 | 8 1/2 | 15³⁰ MT | 0³⁰ MI | SUN Yes ✓ Lunch No |
| US WEST SKYCAP | 12:30 21:00 | 7 1/4 | 12³⁰ MI | 26 MAY 20:16 | MON Yes ✓ Lunch No MT LE |
| DL SKYCAP | 12:45 18:15 | 5 1/2 | 27 MAY 12:45 | 27 MAY 18:15 MT | TUE Yes ✓ Lunch No |
| Off | | X | | ✓ | WED Yes Lunch No |
| DL BASEMENT | 13:30 23:30 | 8 1/2 | 13,30 AW | 23:00 LE | THURS Yes ✓ Lunch No |
| US EAST SKYCAP | 12:30 18:00 | 5 | 12:30 AW | 26 MAY 18:00 | FRI Yes ✓ Lunch No |
| Off | | X | | X | SAT Yes Lunch No |

REG. HRS. WORKED  35 3/4
O.T. HRS. WORKED  X

US E   13 1/2
US W   7 1/4
DL   15

001

**Right card:**

FIRST WEEK
*BARREDA*
PAY ENDING
#1 ALLAN
NAME
Week Ending: 6/7/2008

**B**

PROSPECT AIRPORT SERVICES

| | | | In | Out | |
|---|---|---|---|---|---|
| DL SKYCAP | 12:45 18:15 | 5 4/4 | 1 JUN 12:43 | 1 JUN 18:05 LE | SUN Yes Lunch No |
| US WEST SKYCAP | 12:30 21:00 | 6 3/4 | 12.30 AW | 2 JUN 19:43 LE | MON Yes ✓ Lunch No |
| US EAST SKYCAP | 12:30 18:00 | 5 | 12:30 | 3 JUN 17:54 | TUE Yes Lunch No |
| Off | | X | | | WED Yes Lunch No |
| Off | | X | | | THURS Yes Lunch No |
| US EAST SKYCAP | 15:30 00:00 | 8 1/2 | 15³⁰ MG | 24³⁰ MG RC | FRI Yes Lunch No |
| DL BASEMENT | 13:30 23:30 | 8 13/4 | 7 JUN 13:40 | 23:30 AW | SAT Yes Lunch No |

REG. HRS. WORKED  35 1/4
O.T. HRS. WORKED

DL 15
US W 6 3/4
US E 13 1/2

001

## BARREDA
#1 ALLAN

**PAY ENDING**

**NAME**   Week Ending: 6/14/2008

### PROSPECT AIRPORT SERVICE

| Location / Times | Day | In/Out | Entry |
|---|---|---|---|
| US EAST SKYCAP   15:30 00:00   8 1½ | SUN | In | 15 30 MA |
| | | Yes ✓ Lunch No | |
| | | Out | 01 30 MG |
| US WEST SKYCAP   12:30 21:00   8 | MON | In | 9 JUN 12:28 |
| | | Yes ✓ Lunch No | |
| | | Out | 2100 |
| DL BASEMENT   13:30 23:30   8 3 | TUE | In | 10 JUN 13:28 |
| | | Yes ✓ Lunch No | |
| | | Out | 0030 |
| DL SKYCAP   12:45 18:15   5 ½ | WED | In | 11 JUN 12:44 |
| | | Yes ✓ Lunch No | |
| | | Out | 11 JUN 18:15 MG |
| Off | THURS | In | X |
| | | Yes Lunch No | |
| | | Out | |
| DL SKYCAP   12:45 18:15   CLO Shry | FRI | In | |
| | | Yes Lunch No | |
| | | Out | |
| Off | SAT | In | X |
| | | Yes Lunch No | |
| | | Out | |

REG. HRS. WORKED   34       USE  9 2
O.T. HRS. WORKED   —        USW  8
                            DL   16 ½

001

## BARREDA
#1 ALLAN

**PAY ENDING**

**NAME**   Week Ending: 6/21/2008

### PROSPECT AIRPORT SERVICE

| Location / Times | Day | In/Out | Entry |
|---|---|---|---|
| APO   23:45 23:45 | SUN | In | APO |
| | | Yes Lunch No | |
| | | Out | |
| US WEST SKYCAP   12:30 21:00   7 ½ | MON | In | 1230 ME |
| | | Yes Lunch No | |
| | | Out | 2030 |
| DL BASEMENT   13:30 23:30   8 2 | TUE | In | 17 JUN 13:31 |
| | | Yes Lunch No | |
| | | Out | 2330 |
| DL SKYCAP   12:45 18:15   1 ¼   SUSPENDED | WED | In | 1245 |
| | | Yes Lunch No | |
| | | Out | 1400 |
| US EAST SKYCAP   15:30 00:00   8 1½ | THURS | In | 19 JUN 15:00 |
| | | Yes Lunch No | |
| | | Out | 01.00 |
| US EAST SKYCAP   12:30 18:00   5 ¼ | FRI | In | 12.30 |
| | | Yes Lunch No | |
| | | Out | 24 JUN 18:10 |
| Off | SAT | In | X |
| | | Yes Lunch No | |
| | | Out | |

REG. HRS. WORKED   33 ½    USW  7 ½
O.T. HRS. WORKED          DL   11 ¼
                          USE  14 ¾

0

## FIRST WEEK

### BARREDA
### #1 ALLAN

**B**

R00600

PAY ENDING

NAME — Week Ending: 6/28/2008

#### PROSPECT AIRPORT SERVICES

| DL SKYCAP | 12:45 18:15 | | | |
|---|---|---|---|---|
| 5\|4 | SUN | In 22 JUN 12:54 | | |
| | | Yes | Lunch No | |
| | | Out 22 JUN 18:09 | | |
| US EAST SKYCAP | 15:30 00:00 | MON | In 15³⁰ org | |
| 8\|1½ | | Yes | Lunch No | |
| | | Out 0130 prF | | |
| Off | | TUE | In | |
| X | | Yes | Lunch No | |
| | | Out | | |
| US WEST SKYCAP | 12:30 21:00 | WED | In 1230 p | |
| 8\|2 | | Yes | Lunch No | |
| | | Out 2130 | | |
| US EAST SKYCAP | 12:30 18:00 | THURS | In 26 JUN 12:37 RL | |
| 5 | | Yes | Lunch No | |
| | | Out 26 JUN 18:02 | | |
| DL BASEMENT | 13:30 23:30 | FRI | In 27 JUN 13:28 | |
| 8\|2 | | Yes | Lunch No | |
| | | Out 23:39 p | | |
| Off | | SAT | In X | |
| X | | Yes | Lunch No | |
| | | Out | | |

REG. HRS. WORKED 38\|4   DL 15\|4
O.T. HRS. WORKED        USE 14½
                        USW 8½

001

## FIRST WEEK

### BARREDA
### #1 ALLAN

**B**

R00600

PAY ENDING

NAME — Week Ending: 7/5/2008

#### PROSPECT AIRPORT SERVICES

| Off | | SUN | In | |
|---|---|---|---|---|
| X | | Yes | Lunch No | |
| | | Out | | |
| US EAST SKYCAP | 15:30 00:00 | MON | In 30 JUN 17:49 RL | |
| 6\|4 | | Yes | Lunch No | |
| | | Out 24:30 | | |
| US WEST SKYCAP | 12:30 21:00 | TUE | In 1 JUL 12:25 | |
| 8 | | Yes | Lunch No | |
| | | Out 2:00 p | | |
| Off | | WED | In | |
| X | | Yes | Lunch No | |
| | | Out | | |
| DL BASEMENT | 13:30 23:30 | THURS | In 3 JUL 13:40 RL | |
| 8\|1¾ LATE | | Yes | Lunch No | |
| (ecc) | | Out 2330 p | | |
| DL SKYCAP | 12:45 18:15 | FRI | In 4 JUL 12:48 | |
| 4 | | Yes | Lunch No | |
| | | Out 4 JUL 18:49 | | |
| DL BASEMENT | 13:30 23:30 | SAT | In 1300 p | |
| 8\|3 | | Yes | Lunch No | |
| | | Out 2400 prF | | |

REG. HRS. WORKED 39   DL 24¾
O.T. HRS. WORKED      USE 6\|4
                      USW 8

00



**FIRST WEEK**

BARREDA **B**

PAY ENDING
NAME    #1 ALLAN
Week Ending: 7/12/2008

PROSPECT AIRPORT SERVICES

| | | | | In | | |
|---|---|---|---|---|---|---|
| Off 07/06/08 | ✗ | | SUN | Yes | Lunch No | Out |
| DL BASEMENT 13:30 23:30 07/07/08 | 8\|2 | | MON | In 7 JUL 13:30 / Yes | Lunch No | Out 23 30 |
| DL SKYCAP 12:45 18:15 07/08/08 | 5³/₄ | | TUE | In 1245 / Yes | Lunch No | Out |
| Off 07/09/08 | ✗ | | WED | In Yes | Lunch No | Out |
| US EAST SKYCAP 15:30 00:00 07/10/08 | 8\|1¹/₂ | | THURS | In 15 30 / Yes | Lunch No | Out 0130 may |
| DL SKYCAP 12:45 18:15 07/11/08 | 5\|2 | | FRI | In 1245 may / Yes | Lunch No | Out JUL 18:15 |
| DL BASEMENT 13:30 23:30 07/12/08 | 8\|2 | | SAT | In JUL 13:24 Yes | Lunch No | Out 2330 |

REG. HRS. WORKED  40  DL 30¹/₂ (³/₄)
O.T. HRS. WORKED  ³/₄  USE 9¹/₂

001

**SECOND WEEK**

BARREDA **B**    R00600

PAY ENDING
NAME    #1 ALLAN
Week Ending: 7/19/2008

PROSPECT AIRPORT SERVICES

| | | | | In | | |
|---|---|---|---|---|---|---|
| Off 07/13/08 | | | SUN | Yes | Lunch No | Out |
| US EAST SKYCAP 15:30 00:00 07/14/08 | 8\|1 | | MON | In 1530 pm / Yes | Lunch No | Out 0100 |
| DL SKYCAP 12:45 18:15 07/15/08 | 5\|2 | | TUE | In 15 JUL 12:40 / Yes | Lunch No | Out 15 JUL 18:15 |
| DL SKYCAP 12:45 18:15 07/16/08 | 5\|2 | | WED | In 16 JUL 12:40 / Yes | Lunch No | Out 16 JUL 18:05 |
| Off 07/17/08 | | ✗ | THURS | In Yes | Lunch No | Out |
| US EAST SKYCAP 15:30 00:00 07/18/08 | 8 | | FRI | In 1530 M / Yes | Lunch No | Out 24.00 |
| DL BASEMENT 13:30 23:30 07/19/08 | 8\|³/₄ | | SAT | In JUL 13:39 Yes | Lunch No | Out 2330 |

REG. HRS. WORKED  37³/₄  USE 17
O.T. HRS. WORKED  —  DL 20³/₄

00

# EXHIBIT 5

**Department of the Treasury**
**Internal Revenue Service**

## Publication 1244
(Rev. July 1996)

# Employee's Daily Record of Tips and Report to Employer

**This publication contains:**

**Form 4070A,** Employee's Daily Record of Tips

**Form 4070,** Employee's Report of Tips to Employer

For the period

beginning ......................, 19 ....... and

ending .........................., 19 .......

Name and address of employee

Publication 1244 (Rev. 7-96)          Cat. No. 44472W

EXHIBIT

tabbies

5

## Instructions

You must keep sufficient proof to show the amount of your tip income for the year. A daily record of your tip income is considered sufficient proof. Keep a daily record for each workday showing the amount of cash and credit card tips received directly from customers or other employees. Also keep a record of the amount of tips, if any, you paid to other employees through tip sharing, tip pooling or other arrangements, and the names of employees to whom you paid tips. Show the date that each entry is made. This date should be on or near the date you received the tip income. You may use **Form 4070A**, Employee's Daily Record of Tips, or any other daily record to record your tips.

**Reporting Tips to Your Employer.—**If you receive tips that total $20 or more for any month while working for one employer, you must report the tips to your employer. Tips include cash left by customers, tips customers add to credit card charges, and tips you receive from other employees. You must report your tips for any one month by the 10th day of the next month. If the 10th day falls on a Saturday, Sunday, or legal holiday, you may give the report to your employer on the next business day that is not a Saturday, Sunday, or legal holiday.

You must report tips that total $20 or more every month regardless of your total wages and tips for the year. You may use **Form 4070**, Employee's Report of Tips to Employer, to report your tips to your employer. See the instructions on the back of Form 4070.

You must include all tips, including tips not reported to your employer, as wages on your income tax return. You may use the last page of this publication to total your tips for the year.

Your employer must withhold income, social security, and Medicare (or railroad retirement) taxes on tips you report. Your employer usually deducts the withholding due on tips from your regular wages.

*(continued on inside of back cover)*

**Instructions** *(continued)*

Use this space to total your tips for the year

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

✪ *Printed on recycled paper*
*U.S. Government Printing Office: 1998 - 620-833/93256

**Instructions** (continued)

**Unreported Tips.—**If you received tips of $20 or more for any month while working for one employer but did not report them to your employer, you must figure and pay social security and Medicare taxes on the unreported tips when you file your tax return. If you have unreported tips, you **must** use Form 1040 and **Form 4137,** Social Security and Medicare Tax on Unreported Tip Income, to report them. You may **not** use Form 1040A or 1040EZ. Employees subject to the Railroad Retirement Tax Act **cannot** use Form 4137 to pay railroad retirement tax on unreported tips. To get railroad retirement credit, you must report tips to your employer.

If you do not report tips to your employer as required, you may be charged a penalty of 50% of the social security and Medicare taxes (or railroad retirement tax) due on the unreported tips unless there was reasonable cause for not reporting them.

**Additional Information.—**Get **Pub. 531,** Reporting Tip Income, and Form 4137 for more information on tips. If you are an employee of certain large food or beverage establishments, see Pub. 531 for tip allocation rules.

**Recordkeeping.—**If you do not keep a daily record of tips, you must keep other reliable proof of the tip income you received. This proof includes copies of restaurant bills and credit card charges that show amounts customers added as tips.

Keep your tip income records for as long as the information on them may be needed in the administration of any Internal Revenue law.

**Form 4070**
(Rev. July 1996)
Department of the Treasury
Internal Revenue Service

## Employee's Report
## of Tips to Employer

► For Paperwork Reduction Act Notice, see back of form.

OMB No. 1545-0065

| Employee's name and address | Social security number |
|---|---|
| Employer's name and address (include establishment name, if different) | 1 Cash tips received |
| | 2 Credit card tips received |
| | 3 Tips paid out |
| Month or shorter period in which tips were received<br>from                     , 19        , to                              , 19 | 4 Net tips (lines **1 + 2 - 3**) |
| Signature | Date |

| Form **4070A** (Rev. July 1996) Department of the Treasury Internal Revenue Service | **Employee's Daily Record of Tips** This is a voluntary form provided for your convenience. See instructions for records you must keep. | | OMB No. 1545-0065 |
|---|---|---|---|

| Employee's name and address | Employer's name | Month and year |
|---|---|---|
| | Establishment name (if different) | |

| | Date tips rec'd. | Date of entry | **a.** Tips received directly from customers and other employees | **b.** Credit card tips received | **c.** Tips paid out to other employees | **d.** Names of employees to whom you paid tips |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| **Subtotals** | | | | | | |

For Paperwork Reduction Act Notice, see Instructions on the back of Form 4070. Page 1

# EXHIBIT 6

Please sign and present to the Employer Representative

## ACCOUNTABILITY POLICY

## FEE-BASED SKYCAP MONIES

Skycaps will be responsible for collecting the designated per bag checked via curbside. The obligation for collection and accountability of these monies requires strict and timely compliance.

The integrity of this program must not be compromised in any way.   Misappropriation of company funds will result in quick and serious consequences.  Reimbursement if applicable is mandated.  Violation of this policy is grounds for termination of employment and/or criminal prosecution.

Signature below acknowledges understanding of Prospect's policy on accountability of company funds and the action that will be taken should there be a failure to comply.

_Allan Barreda_
**PRINTED NAME**

_[signature]_
**EMPLOYEE SIGNATURE**                                    7·15·08
                                                          **DATE**

_[signature]_
**EMPLOYER REPRESENTATIVE SIGNATURE**        7.15.08
                                                          **DATE**

AUG 2007

**EXHIBIT**
6

# SUPPLEMENTAL DECLARATION OF

# RONALD E. CLAYPOOL

## IN THE UNITED STATE DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ALLAN BARREDA, and all other Plaintiffs similarly situated known and unknown, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | Case No. 08-CV-3239 |
| PROSPECT AIRPORT SERVICES, INC., | ) ) | Hon. Judge Kennelly |
| Defendant. | ) ) | Magistrate Judge Nolan |

## SUPPLEMENTAL DECLARATION OF RONALD E. CLAYPOOL

The undersigned, Ronald E. Claypool, declares and states as follows:

1.     I am above the age of 21 years old and under no disability. If called to a hearing before the Court, I am capable of competently testifying to the facts stated herein based upon personal knowledge.

2.     I am the Human Resources Manager for Prospect Airport Services, Inc. ("Prospect"), the named defendant in the above-captioned case. I make this declaration to supplement the declaration I signed on or about July 31, 2008, in connection with the above-captioned case.

3.     From July 29, 2007 until July 31, 2008, Mr. Allan Barreda, the plaintiff in the above-captioned case, was employed by Prospect as a skycap at O'Hare International Airport to service Delta Air Lines ("Delta") and US Airways ("USAir").

4.     At some point during Mr. Barreda's employment with Prospect, USAir decided to discontinue its use of skycaps nationwide. On July 1, 2008, USAir ceased using skycaps at those

484928.3

U.S. airports that it services, with the exception of skycaps working out of the Phoenix Sky Harbor and Chicago O'Hare airports, which were given a 30-day extension. Thus, on July 31, 2008, Mr. Barreda and the other skycaps who serviced USAir at O'Hare would no longer do so.

5.    In anticipation of the foregoing, Prospect offered to skycaps who serviced US Air at O'Hare the following employment options: Delta skycap and T-5 skycap; US Air baggage handler; US Air baggage runner; Delta and T-5 baggage handler; wheelchair pusher for terminals 2, 3, and 5; and Delta or American cabin service.

6.    On or about July 24, 2008, Mr. Barreda notified Prospect that he had elected to change his position and work as a US Air baggage runner. To date, Mr. Barreda is still working Delta skycap due to a shortage of employees as a result of vacations of qualified personnel. Mr. Barreda is scheduled to work Delta skycap though August 16, 2008.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION.

_____
RONALD E. CLAYPOOL

Dated: _____, 2008

# DECLARATION OF

# THEODORE PAPPAS

IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALLAN BARREDA, and all other Plaintiffs similarly situated known and unknown, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | Case No. 08-CV-3239 |
| PROSPECT AIRPORT SERVICES, INC., | ) ) | Hon. Judge Kennelly |
| Defendant. | ) | Magistrate Judge Nolan |

## DECLARATION OF THEODORE PAPPAS

The undersigned, Theodore Pappas, declares and states as follows:

1. I am above the age of 21 years old and under no disability. If called to a hearing before the Court, I am capable of competently testifying to the facts stated herein based upon personal knowledge.

2. I am the Union Representative for District 8 of the International Association of Machinists and Aerospace Workers AFL-CIO ("Union"). I am employed as a skycap for Prospect Airport Services, Inc. ("Prospect"), the defendant in the above-captioned case, at O'Hare International Airport, in Chicago, Illinois. I work primarily as a skycap for Delta Air Lines ("Delta"). I have been employed by Prospect since 1990. I have been a Union Representative for the Union for approximately the past five years.

3. Mr. Allan Barreda, the plaintiff in the above-captioned case, is employed by Prospect as a skycap at O'Hare International Airport. As a member of the Union, Mr. Barreda and the other unionized skycaps are subject to the terms and provisions of the collective

484160      Page 1 of 2

bargaining agreement between Prospect and the Union ("Collective Bargaining Agreement").

4.    As Union Representative, my duties, generally speaking, include presenting grievances on behalf of unionized employees to the company's representatives in an effort to reach a mutually satisfactory resolution of the grievance, including grievances concerning hours of work, overtime, break/meal periods, and wages.

5.    Mr. Barreda approached me in or around March 2008. He said he was not getting personal time off. He also said that he thought Prospect skycaps who work for Delta should be paid $5.50 per hour like the Prospect skycaps who work for USAir in Terminal 2. He also said that he thought he was not getting overtime, but did not explain what he meant by "not getting overtime." I told Mr. Barreda to put his concerns on paper so that I could fill out the Union's grievance form and present it, if that was what he wanted me to do. Mr Barreda never gave me anything in writing and never discussed any of these issues with me again. To my knowledge, Mr. Barreda has not followed the grievance procedures set forth in the Collective Bargaining Agreement.

6.    None of Prospect's other skycaps ever gave me any grievances in writing or asked me to submit a grievance on their behalf.

7.    It is my understanding that Prospect's policy is that skycaps are paid for all time worked. It is also my understanding that Prospect's policy is that skycaps are not to deposit the collected administrative fees before or after their shift.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND RECOLLECTION.

Dated: July 2-9 2008

_Theodore Pappas_
THEODORE PAPPAS

484160                          Page 2 of 2