## IN THE UNITED STATE DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ALLAN BARREDA, and all other Plaintiffs similarly situated known and unknown, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | Case No. 08-CV-3239 |
| PROSPECT AIRPORT SERVICES, INC., | ) ) | Hon. Judge Kennelly |
| Defendant. | ) | Magistrate Judge Nolan |

## DEFENDANT'S LOCAL RULE 56.1(a)(2) MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, PROSPECT AIRPORT SERVICES, INC. ("Prospect"), by and through its attorneys, Arthur M. Holtzman and Lauren Blair of Pedersen & Houpt, submits this Memorandum of Law in support of its Motion for Summary Judgment.

## I.     INTRODUCTION

Plaintiff, Allan Barreda ("Mr. Barreda"), attempts to bring a collective action on behalf of himself and other unionized skycaps claiming that Prospect has violated the Fair Labor Standards Act ("FLSA") by allegedly failing to pay minimum and overtime wages.  Mr. Barreda brings tag-along state claims under the Illinois Minimum Wage Law ("IMWL") and the Illinois Wage Payment and Collection Act ("IWPCA") on the same alleged facts.  Prospect moves for summary judgment on all claims.

Prospect is entitled to summary judgment on Mr. Barreda's purported collective action claims under Section 216(b) of the FLSA because they are nothing more than individualized claims of a heterogeneous group of skycaps for alleged breaches of the wage and overtime provisions of a

483569

collective bargaining agreement ("CBA") that governs Prospect skycaps. The Seventh Circuit has made clear that such claims must be addressed pursuant to the CBA's mandatory grievance procedures, and not through a Section 216(b) collective action. Moreover, summary judgment is warranted as to Mr. Barreda's individual FLSA claims because Prospect's records prove that he was paid the proper minimum tipped wage for all hours worked. Finally, Prospect is entitled to summary judgment on Mr. Barreda's state claims because they, too, arise out of the wage and overtime provisions of the CBA and, therefore, are preempted in accordance with the Labor Management Relations Act ("LMRA").

## II.     SUMMARY OF FACTS NOT IN DISPUTE[1]

From July 29, 2007 until July 31, 2008[2], Mr. Allan Barreda, the plaintiff in the above-captioned case, was employed by Prospect as a skycap at O'Hare International Airport ("O'Hare") to service Delta Air Lines ("Delta") and US Airways ("USAir"). (SOF ¶1.) He was one of fifteen Prospect skycaps who worked with Delta and/or USAir at O'Hare during that time (collectively referred to herein as "Skycaps"). (SOF ¶2.) Of those fifteen Skycaps, four worked primarily with Delta, three worked primarily for USAir, and the remaining eight, including Mr. Barreda, worked with both Delta and USAir. (SOF ¶2.)

The Skycaps are unionized employees belonging to District 8 of the International

---

[1] References to Defendants' Rule 56.1(a)(3) Statement of Material Facts As To Which There Are No Genuine Issues ("Statement of Facts") are cited herein as "(SOF ¶__)."

[2] USAir recently announced its decision to discontinue its use of skycaps nationwide. On July 31, 2008, USAir ceased using skycaps at O'Hare airport. Prospect offered to skycaps who serviced USAir at O'Hare several employment options. On or about July 24, 2008, Mr. Barreda notified Prospect that he had elected to change his position and work as a USAir baggage runner. That position change is set to occur on August 16, 2008. (SOF ¶3.)

Association of Machinists and Aerospace Workers AFL-CIO ("Union").  (SOF ¶7.)  On or about February 13, 2004, Prospect and the Union entered into the CBA that, among other things, provides their agreement with respect to hours of work and overtime, wages, and mandatory grievance procedures.  (SOF ¶7.)  The Skycaps are also subject to Prospect's Job Orientation Guide and Work Rules ("Employee Handbook") that contains the company's policies concerning, among other things, work and overtime hours, break and meal periods, and tip reporting requirements.  (SOF ¶11.)

The CBA and the Employee Handbook both provide that all work performed in excess of forty hours in one week shall be paid at the rate of time and one-half.  (SOF ¶12.)  Skycaps assigned to Delta have morning shifts that are either 7.25 hours or 8 hours, and afternoon shifts that are either 5.5 hours, 6.25 hours or 10 hours.  The morning and afternoon shifts for USAir Skycaps were 8.5 hours.  (SOF ¶15.)  For employees assigned to work for Delta, their eight (8) hours includes a thirty (30) minute _paid_ lunch.  (SOF ¶16.)  For Skycaps assigned to USAir, their shifts of seven and one-half hours or more included one half-hour _unpaid_ meal period.  (SOF ¶17.)

In November 2004, prior to Mr. Barreda's employment, Prospect implemented a time card policy to ensure that employees are taking and recording their meal periods accurately.  Prospect's time cards have spaces designated "Yes __ Lunch No __."  Employees are required to indicate on their time card prior to punching out for the day whether they have or have not received their meal period.  (SOF ¶19.)  Prospect disseminated its written policy concerning meal periods to Mr. Barreda when he was hired.  The policy clearly states employees are responsible for reporting when they take their meal period, or when they have to work in lieu of a meal period, so that all time worked will be paid.  (SOF ¶20.)  The policy states, in pertinent part:

To ensure that employees are taking their meal period, there is an

area on the time card where you place **your initial** (no check mark, etc) when you punch-out each work day.  A 30-minute deduction will be taken and [it] is therefore mandatory you initial your card "Yes" acknowledging receiving your meal period.  Failure to initial your time card each workday can lead to disciplinary action.

\*\*\*     \*\*\*           \*\*\*     \*\*\*           \*\*\*     \*\*\*

If for any acceptable/passenger services reason you do not get your meal period, initial your timecard "No" and bring to the attention of a member of the leadership team for their signature before you leave work.  This action will ensure that all time worked will be paid.

(SOF ¶21.)

Based on Mr. Barreda's time cards, for every instance in which his time card was clearly marked "Lunch No" to indicate that he worked a shift without taking a meal period, he was paid for that time.[3]  (SOF ¶22.)

In accordance with the CBA, Skycaps' wages are based on the minimum tipped wage.  (SOF ¶24.)  At the time Mr. Barreda filed his Complaint, Skycaps assigned to Delta earned $4.50 per hour plus tips, and Skycaps assigned to USAir earned $5.50 per hour plus tips.  (SOF ¶25.)  The Employee Handbook sets forth Prospect's policy with regard to tip reporting, and states in full:

If you are being paid less than $5.50 per hour, ($6.50 effective Jan. 2005) your wage is based on the minimum wage for tipped employees.  The remainder of your wage is to be made up in tips and declared as such by law.  IRS Publication 1244 is available to you through the office, which explains the rules and the use of Form 4070 and Form 4070A provided to report tips to your employer.  We will automatically figure the minimum tip amount on your paycheck and make this claim on your behalf unless you fill out an alternate amount

---

[3]  Mr. Barreda's time cards show only two occasions when both "Yes" and "No" were checked.  In both instances, he was servicing USAir.  In one instance, both "Yes" and "No" were checked, but the "Yes" was also circled, so a 30-minute deduction was taken.  In the other instance, both "Yes" and "No" were checked, but neither entry was circled, so a 30-minute deduction was *not* taken.  (SOF ¶23.)

on a tip report form and submit it to the office prior to the last Sunday
of the two-week payroll period.  Tip reporting is your responsibility.

(SOF ¶26.)[4]  Throughout Mr. Barreda employment with Prospect, he has never submitted a tip report

form or any other evidence of the tips he receives.  (SOF ¶28.)

In addition to wage and overtime provisions, the CBA contains detailed grievance procedures

up to and including arbitration.[5]  The grievance procedures are mandatory and govern all disputes

arising out of the CBA.  Specifically, the CBA's grievance provisions state, in part:

> The Union and the Company agree that there shall be no strike,
> lockout, tie-up or legal proceedings without first using all possible
> means of a settlement as provided for in this Agreement, for any
> controversy that might arise.
>
> All grievances or disputes arising under the terms of this Agreement
> shall be handled in the manner provided by this Article.

(SOF ¶31.)

According to the Union representative, although Mr. Barreda is subject to the grievance

provisions of the CBA, he has not followed any of the grievance procedures.  (SOF ¶32.)  Nor have

any of the other Skycaps asked the Union representative to submit a grievance on their behalf.

(SOF ¶.)

## III.    STANDARD OF REVIEW

---

[4]  IRS Publication 1244 is entitled "Employee's Daily Record of Tips and Report to
Employer."  The publication includes a copy of Form 4070 (Employee's Report to Tips to
Employer) and Form 4070A (Employee's Daily Record of Tips).  Prospect has a sign located
directly next to the time clock in Prospect's O'Hare offices notifying employees that Publication
1244 and Forms 4070 and 4070A are available.  (SOF ¶27.)

[5]  The grievance procedures require dispute resolution efforts first between the Union
representative and the company representative, then between the Union and the company, then
between the Union's Business Representative and the Local Manager, then through a Joint
Grievance Committee, and finally through arbitration.

The granting of summary judgment under Fed. R. Civ. P. 56 serves an important purpose and is not to be regarded as a disfavored procedure, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action. Summary judgment should be granted as a matter of law when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c). A genuine issue of fact exists only when, based on the evidence presented, a reasonable trier of fact could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-252, 106 S. Ct. 2505, 2510-2512 (1986). Once a moving party has met its burden, the nonmoving party, in order to survive summary judgment, must make a showing sufficient to establish any essential element for which the nonmovant will bear the burden of proof at trial. *Freundt v. Allied Tube & Conduit Corp.*, 2007 U.S. Dist. LEXIS 87852 (N.D. Ill. Nov. 29, 2007) (Cox, J.).

## IV. ARGUMENT

### A. Mr. Barreda's Wage and Overtime Claims Cannot Be Maintained as an FLSA Collective Action Because They Are Purely Individualized Claims that Must Be Arbitrated Pursuant to the CBA

In Count I of the Amended Complaint, Mr. Barreda seeks to advance wage and overtime claims on behalf of himself and a purported class of "similarly situated" employees under the FLSA. Mr. Barreda alleges that Prospect's wage and overtime compensation policies violate the FLSA, and that "all [skycaps] have been and/or are presently being denied proper compensation as required by the FLSA." (Am. Complt., ¶¶12-28, 31, 35-37.) Mr. Barreda cannot maintain his wage and overtime claims as a collective action under the FLSA because (1) the CBA provides wage and overtime policies that comply with the standards set forth in the FLSA, and also provides grievance

procedures capable of resolving disputes as to whether those policies are being followed; and (2) the purported class is "hopelessly heterogeneous" in that it includes skycaps who, pursuant to the collective bargaining agreement, are subject to different rates of pay, hours of work and overtime standards. The Seventh Circuit has repeatedly ruled that, under such circumstances, claims as to whether certain employees received proper compensation must be addressed through the grievance procedures of the governing collective bargaining agreement. *See Jonites v. Exelon Corp.*, 522 F.3d 721 (7th Cir. 2008) pet. for cert. filed Jul. 2, 2008, No.08-30; *Leahy v. City of Chicago*, 96 F.3d 228 (7th Cir. 1996) cert. denied 520 U.S. 1228, 117 S. Ct. 1818 (1997).

      1.    <u>The CBA Complies with FLSA Standards for Minimum Tipped Wages, Hours of Work, and Overtime, and Contains Grievance Procedures Capable of Deciding Compensation Disputes</u>

In the case of *Leahy v. City of Chicago*, the Seventh Circuit held that where a collective bargaining agreement contains FLSA-compliant compensation provisions along with grievance procedures capable of resolving disputes as to whether those provisions have been breached in certain circumstances, then as a matter of law "the collective bargaining agreement can and does outright preclude the plaintiffs' [FLSA] claim." *Id.*, 96 F.3d at 232. In *Leahy*, the plaintiffs were police officers claiming that the city's meal period policy caused them to work during all or part of their meal periods, thus rendering that time compensable work. *Id.*, at 230, 231. The police officers were subject to a collective bargaining agreement between their union and the city, which explicitly stated that officers were entitled to an overtime pay rate of time and one-half for hours worked in excess of the eight-hour workday. *Id.*, at 231. The collective bargaining agreement also established a grievance procedure that required arbitration; the plaintiffs, however, never filed a grievance in accordance with those procedures. *Id.*, at 232. Instead, they filed an action under the FLSA seeking

relief for all officers who worked during their meal periods. *Id.*, at 231. The city moved for summary judgment asserting, among other arguments, that the collective bargaining agreement was a complete defense to an FLSA suit because the agreement contained overtime standards that, at a minimum, met the standards of the FLSA. *Id.*

> The District Court granted summary judgment, and the Seventh Circuit affirmed stating:

>> [I]f the collective bargaining agreement's guarantee of overtime compensation for time worked in excess of eight hours in an eight-and-one-half hour tour of duty protects Chicago police officers' FLSA rights to overtime compensation, then the agreement is a defense to liability under the FLSA and the plaintiffs' suit cannot succeed.

*Id.*, at 232. The *Leahy* court held that the collective bargaining agreement at issue was sufficient to ensure that the employer "will pay overtime rates for the excess work time. The FLSA requires no more." *Id.* The *Leahy* court also indicated that the FLSA is not the proper forum to resolve disputes as to whether certain employees were actually being made to work during their meal periods in breach of the collective bargaining agreement. Indeed, the *Leahy* court stated that "the individual inquiry facilitated by the grievance process is the most efficient way to determine whether an officer's meal period should be compensable work time." *Id.*

Here, the CBA between Prospect and the Union provides that employees who work "in excess of forty (40) hours in one (1) week and eight (8) hours per bid shift shall be paid at the rate of time and one-half (1½)." (SOF ¶12.) Thus, the CBA is compliant with the minimum overtime standards of the FLSA[6]. The CBA also contains detailed, mandatory grievance procedures, up to

---

[6] As a general standard, section 7(a) of the FLSA provides 40 hours as the maximum number of hours that an employee subject to its provisions may work for an employer in any workweek without receiving additional compensation at not less than the statutory rate for overtime which is one and one-half times the regular rate at which the employee is actually

and including arbitration, that are capable of deciding overtime disputes. In accordance with *Leahy*, the CBA-mandated grievance process is the only proper forum in which to raise Skycaps' disputes. Therefore, in accordance with *Leahy*, the FLSA claims raised by Mr. Barreda in Count I are barred by the CBA.

2.    The Purported Class of Similarly Situated Plaintiffs Are Not Homogeneous

Additionally, Mr. Barreda's attempt to bring a collective action under the FLSA must fail because the purported class is not made up of "similarly situated" members, but rather would necessarily involve skycaps who are subject to different hours of work, overtime standards and rates of pay. In the very recent case of *Jonites v. Exelon Corp.*, the Seventh Circuit rejected a similar attempt at a collective action.

In *Jonites*, the purported plaintiff class of linemen claimed that their employer, Com Ed, had violated the FLSA by, among other things, forcing them to work during their lunch break without paying them overtime wages. *Id.*, 522 F.3d at 722. Like the plaintiffs in *Leahy* and the Mr. Barreda herein, the plaintiffs in *Jonites* were subject to an FLSA-compliant collective bargaining agreement that defined the basic workday and workweek, and the terms under which employees receive overtime compensation. *Id.*, at 726. The nature of the plaintiffs' claims was that "because some Com Ed employees may sometimes do some work during lunch, all Com Ed employees are entitled to pay during their lunch break." *Id.*, at 725. Com Ed moved for summary judgment on the overtime claim arguing that the grievance and arbitration provisions of the collective bargaining agreement were the only remedy for the alleged mealtime violations. *Id.*, at 722. The District Court granted summary judgment relying on the holding and rationale of *Leahy*. On appeal, the Seventh

---

employed. 29 C.F.R. 778.101, 778.107.

Circuit affirmed.

The *Jonites* court found that its plaintiffs, like the plaintiffs in *Leahy*, were "hopelessly heterogeneous," as opposed to similarly situated. Because the plaintiffs lacked homogeneity, they could not form a collective action, and were instead relegated to follow the grievance and arbitration procedures in the collective bargaining agreement. *Jonites*, at 725-26. Specifically, the Court stated:

> The plaintiffs in *Leahy* wanted us to rule that "since some [police] officers on some days miss all or part of their meal periods" because they are required to work then, "all meal periods [are] compensable work." 96 F.3d at 232. The plaintiffs in this case want us to rule that because some Com Ed employees may sometimes do some work at lunch, all Com Ed employees are entitled to pay during their lunch break (overtime pay at that, because the half-hour lunch break is on top of an eight-hour workday). It is that argument, rather than the rejection of the same argument in *Leahy*, that is preposterous. As in *Leahy*, the plaintiff class here is hopelessly heterogeneous.

*Jonites*, at 725.

The *Jonites* court also issued a strong disapproval of plaintiffs pursuing individualized claims under the guise of section 216(b) collective actions. The Court admonished:

> in regard to the mealtime claim, the abuse of the class-action device (or "collective action," as class suits under 29 U.S.C. § 216(b) are more commonly referred to) is even more egregious; the class includes workers who have no conceivable mealtime claim because they do not work the day shift. The plaintiffs and the other members of the class, or some of them, may have an FLSA claim that they could press in an individual suit, but the filing of this class action suggests that they have no stomach for proceeding case by case. If they are unwilling to file individual suits, or create homogeneous classes in order to bring proper class actions, then, since an essential condition of maintaining an FLSA class action--that the members of the class be "similarly situated" to one another, 29 U.S.C. § 216(b)--is not satisfied, their only recourse is to ask the union to file grievance proceedings under the collective bargaining agreement. We assume that this route remains open, since the mealtime issue was not raised

in the previous arbitration.

*Id.*, at 725-26.

Here, Mr. Barreda's collective overtime claims are similar to those present in *Leahy* and *Jonites* in that he claims that "all [skycaps] have been and/or are presently being denied proper compensation" because he and certain other members of the purported class were allegedly directed to work before and after their regularly-scheduled shifts and during their unpaid meal breaks without overtime compensation. (Am. Complt., ¶¶18-23, 31, 35.) Despite Mr. Barreda's general and blanket allegations that all skycaps are similarly situated, the following facts are not in dispute. Skycaps assigned to Delta worked different shifts and earned a different base wage than Skycaps assigned to USAir. (SOF ¶¶8, 15, 25.) Moreover, all Delta shifts include a 30-minute *paid* meal period, whereas USAir shifts included a 30-minute *unpaid* meal period. (SOF ¶¶16, 17.) This last fact is the most damning to the purported class because the Skycaps who service Delta automatically get a 30-minute paid meal break per the CBA. As such, the Skycaps who serviced Delta cannot claim that they were not paid for meal periods. These facts significantly reduce the potential universe of purported "similarly situated" class members. It has been held that purported collective actions with such anemic members have failed to make even a modest showing of a common policy or plan that violated the FLSA for class notice purposes. *See Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042 (N.D. Ill. 2003) (Norgle, J.) (demonstrating that two out of fifty employees, *i.e.*, 4% of the defendant's workforce, does not rise to the level of a modest showing of a common policy or plan to violate the FLSA).

Here too, the purported class is "hopelessly homogeneous" because it is comprised of Skycaps who have different rates of pay, hours of work, and overtime standards. According to

*Jonites*, these types of discrepancies between the alleged class members are fatal to a Section 216(b)

collective action.

**B.    Prospect Is Entitled to Summary Judgment on Mr. Barreda's Individual Wage and Overtime Claims Because There Is No Genuine Issue that He Was Paid Minimum Tipped Wage for All Hours Worked**

Mr. Barreda's individual claims must fail because there is no genuine dispute that Prospect

paid Mr. Barreda the minimum tipped wage for all hours worked.

1.    <u>Prospect Has Complied With Minimum Wage Requirements for Tipped Employees</u>

Under the FLSA, an employer may be eligible for a "tip credit," which allows it to pay tipped

employees an hourly rate less than the minimum wage.  29 U.S.C. §203(m).  The tip credit allows

employers to credit a portion of the actual amount of tips received by the employee against the

required hourly minimum wage.  *Id.*  An employer is eligible for a tip credit if it has informed the

employee of the statutory requirements related to the tip credit, and all tips received by the employee

have been retained by the employee.  *Id.*

The basis of Mr. Barreda minimum wage claim is that "many airlines that Prospect provides

sky cap services for have instituted a service fee for curbside check-in," and that he "received fewer

tips as a result of the airlines' respective service charge."  (Am. Complt., ¶¶ 12-16.)  Mr. Barreda's

claim is based on the faulty premise that the fees for curbside check-in are akin to tips.  Presumably,

Mr. Barreda takes that position in order to assert that Skycaps are not permitted to retain all of their

tips in accordance with section 203(m) of the FLSA.

The fees associated with curbside checked baggage, however, are not tips; they are

mandatory administrative fees imposed by the airlines.  (SOF ¶29.)  A tip is a voluntary gift or a

gratuity for services performed, and whether it is given and its amount are matters entirely

determined by the customer.  29 C.F.R. §531.52.  On the other hand, a compulsory charge for service imposed on a customer by an employer's establishment is not a tip.  29 C.F.R. §531.55.  By definition, therefore, the airline-imposed mandatory administrative fees for curbside checked baggage are not tips, and they are irrelevant to whether a skycap is receiving the minimum tipped wage.  The issue of whether a skycap is receiving the minimum tipped wage can only be resolved by looking at the amount of tips reported by an employee.

Prospect's Employee Handbook clearly states that Prospect "will automatically figure the minimum tip amount on your paycheck and make this claim on your behalf unless you fill out an alternate amount on a tip report form and submit it to the office prior to the last Sunday of the two-week payroll period."  (SOF ¶26.)  The Employee Handbook also clearly states that tip reporting is the employee's responsibility.[7]  (SOF ¶26.)  Prospect even has a sign displayed next to the time clock where employees punch in and out on a daily basis, stating that it has available copies of IRS Publication 1244, which explains the IRS rules on tip reporting and the use of Form 4070 (Employee's Report to Tips to Employer) and Form 4070A (Employee's Daily Record of Tips). (SOF ¶27.)

Since the time Mr. Barreda began his employment with Prospect, he has never submitted a tip report form.  (SOF ¶28.)  Thus, in accordance with its policy and the law, Prospect figured the minimum tip amount.  Mr. Barreda cannot claim Prospect failed to pay him minimum wage based

---

[7]  Federal law also obligates Mr. Barreda to truthfully and accurately report his tips to Prospect.  Section 6053 of the Federal Insurance Contribution Act ("FICA"), 26 USCS 3101 *et seq.*, provides: "An employee who receives, in the course of employment by an employer, tips that constitute wages as defined in section 3121(a) or section 3401, or compensation as defined in section 3231(e), must furnish to the employer a statement, or statements, disclosing the total amount of the tips received by the employee in the course of employment by the employer."  26 CFR 31.6053-1(a).

on his own failure to accurately and truthfully report tips. *See Harrison v Terminal R. R. Ass'n*, 126 F2d 421 (8th Cir. 1942) (Where terminal company had system whereby red caps were required to report tips received, and it was guaranteed that compensation including tips would equal minimum wage required by Fair Labor Standards Act, employer satisfied its minimum wage obligation under Act); s*ee also Townsend v. New York C. R. Co.*, 141 F.2d 483, 484-85 (7th Cir. 1944).

> 2.    Mr. Barreda's Time Cards Establish that He Was Paid for All Missed Meal Periods

Mr. Barreda also alleges that he was not paid for work he performed during his meal period in violation of the FLSA. (Am. Complt., ¶¶ 20-23.) However, since at least November 2004, Prospect requires employees to mark their time cards "yes" or "no" to verify when they have worked in lieu of taking a meal period. (SOF ¶19.) Mr. Barreda received this policy when he began working with Prospect. (SOF ¶19.) Prospect's time cards evidence that Mr. Barreda was paid each time he verified that he did not take a lunch due to authorized work. (SOF ¶22.) Therefore, there can be no genuine dispute that Mr. Barreda was paid for all missed meals.

## C.    Mr. Barreda's State Claims Must Be Dismissed As Preempted by Section 301 of the Labor Management Relations Act

Mr. Barreda has brought state claims under the IMWL (Count II) and the IWPCA (Count III) based on the same alleged minimum wage and overtime violations plead in support of his purported FLSA claims in Count I. Count III also claims that Prospect's Accountability Policy violates the IWPCA. Prospect is entitled to summary judgment that Mr. Barreda's state claims are preempted by Section 301 of the LMRA because  because they arise out of the terms of the CBA.

It is well-settled that:

> Federal labor policy provides that when resolution of a state law

483569                                          14

> claim depends on an analysis of the terms of the agreement, the claim must either be arbitrated as required by the collective bargaining agreement or dismissed as preempted under section 301 of the Labor Management Relations Act (29 U.S.C. § 185(a) (2000)), which grants federal district courts exclusive jurisdiction over disputes involving collective bargaining agreements.

*Kostecki v. Dominick's Finer Foods, Inc. of Illinois*, 361 Ill. App. 3d 362, 368, 836 N.E.2d 837, 842 (1st Dist. 2005). This principle applies to state wage claims arising out of the terms and conditions of a collective bargaining agreement. *See Freundt v. Allied Tube & Conduit Corp.*, 2007 U.S. Dist. LEXIS 87852 at *15 (N. D. Ill. Nov. 29, 2007) (Cox, J.) *citing Gelb v. Air Con Refrigeration and Heating, Inc.*, 356 Ill. App. 3d 686, 826 N.E.2d 391 (1st Dist. 2005). The District Court in *Freundt* recognized that preemption would required even if the only issue is whether certain employees were being paid overtime at the rate of time and one-half because:

> The court would be required to calculate the pay scale for the plaintiff, the deductions to which plaintiff objected, and the amount of overtime plaintiff worked in the relevant time period. The *Gelb* court found that those tasks are better left to an arbitrator as set forth in the collective bargaining agreement.

*Freundt*, at *15. Indeed, the *Gelb* court held that where a collective bargaining agreement establishes a grievance and arbitration procedure for disputes arising out of the agreement, an employee alleging a violation of the agreement must exhaust his contractual remedies before seeking judicial relief. *Gelb*, 356 Ill. App. 3d at 695, 826 N.E.2d at 396.

Here, Mr. Barreda's minimum wage and overtime claims are inextricably linked to the CBA in that the resolution of those claims cannot be done independently of an interpretation and analysis of the CBA's wage and overtime provisions. Consequently, Counts II and III of the Amended Complaint must be dismissed because the claims raised therein are preempted by federal law. Mr. Barreda is required to present those claims pursuant to the mandatory grievance procedures set forth

in the CBA prior to bringing them in federal court. Since he has failed to do so, he cannot proceed here.

**V.**     <u>**CONCLUSION**</u>

For all of the foregoing reasons, Prospect is entitled to summary judgment as to all of Mr. Barreda's claims, and as such, the First Amended Complaint should be dismissed in its entirety.

Respectfully submitted,

PROSPECT AIRPORT SERVICES, INC.

By:    <u>/s/ Lauren Blair</u>
         One of Its Attorneys

Arthur M. Holtzman (A.R.D.C. #1252844)
Lauren Blair (A.R.D.C. #6224489)
PEDERSEN & HOUPT
161 North Clark Street
Suite 3100
Chicago, Illinois  60601
(312) 641-6888

483569

16